```
 1                  IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF MARYLAND
 2

 3

 4    JASMINE RITTERSBACHER,

 5            Plaintiff,          CIVIL ACTION NO.:

 6    v.                         ELH-20-2800

 7    FOOD LION, LLC, et al.,

 8            Defendant.
      _____
 9

10

11            Deposition of LOGAN FOX, taken on behalf of

12    the plaintiff, on December 13, 2021, at 3:00 p.m.,

13    pursuant to Notice of Taking Deposition, via Zoom,

14    before Lakesha Jackson, Professional Court Reporter,

15    in and for the State of Maryland at Large.

16

17                              ---

18

19

20

21

22

23

24

25
```

EXHIBIT
D

Deposition of Logan Fox                          Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1              A P P E A R A N C E S

 2    Counsel for the Plaintiff:

 3          LAWRENCE S. GREENBERG, Esquire

 4              GREENBERG LAW OFFICE

 5              6 East Biddle Street

 6              Baltimore, Maryland 21202

 7              Telephone: 410.539.5250

 8              E-mail: Larry@greenberglawyers.com

 9

10    Counsel for the Defendants:

11          MATTHEW M. DAVEY, Esquire

12              KIERNAN TREBACH

13              1233 20th Street, NW 8th Floor

14              Washington, DC 20036

15              Telephone: 202.712.7000

16              E-mail: MDavey@KiernanTrebach

17

18          JAMES P. O'BRIEN, Esquire

19              ANDERSON|COE|KING

20              7 Saint Paul Street, Suite 1600

21              Baltimore, Maryland 21202

22              Telephone: 410.752.0085

23              E-mail: obrien@acklaw.com

24    ALSO PRESENT:

25              Michele, Paralegal at Greenberg Law Office
```

Deposition of Logan Fox                                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1                     I N D E X

 2

 3   WITNESS:                                    PAGE

 4   LOGAN FOX

 5      Examination by Mr. Greenberg................5

 6

 7

 8

 9                   E X H I B I T S

10                (No Exhibits marked.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              S T I P U L A T I O N
 2           It was stipulated and agreed by and between
 3      counsel for the respective parties and the witness that
 4      the reading and signing of the deposition by the witness
 5      not be waived.
 6           THE REPORTER:  The attorneys participating in
 7         this deposition acknowledge that I am not physically
 8         present in the deposition room, and that I will be
 9         reporting this deposition remotely.
10           They further acknowledge that, in lieu of an
11         oath administered in person, I will administer the
12         oath remotely.
13           The parties further agree that if the witness
14         is testifying from a state where I am not a Notary,
15         that the witness may be sworn in by an out-of-state
16         Notary.  If any party has an objection to this
17         manner of reporting, please state now.
18           MR. GREENBERG:  No objection.
19           MR. DAVEY:  No objection.
20           MR. O'BRIEN:  No objection.
21                    -   -   -
22                LOGAN FOX,
23      having been produced and first duly sworn as a witness,
24      testified as follows:
25                EXAMINATION
```

Deposition of Logan Fox                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1   BY MR. GREENBERG:

 2        Q    Mr. Fox, my name is Lawrence Greenberg.

 3             MR. GREENBERG:  And actually, just for the

 4        record, Michele, you can turnoff your camera if you

 5        want.

 6   BY MR. GREENBERG:

 7        Q    All right.  Mr. Fox, my name is an Lawrence

 8   Greenberg, and I represent Jasmine Rittersbacher in the

 9   lawsuit which she filed in this case for the injuries

10   she sustained when she fell in the Food Lion store.

11             Do you recall that?

12        A    Yes.

13        Q    And for the record, that occurred on June

14   18th, 2019.

15             Does that sound about right?

16        A    Yes.

17        Q    And we're here today in response to a notice

18   of deposition that was filed.  You don't have to tell me

19   what you spoke about with counsel, but have you seen it?

20        A    Yes.

21        Q    Okay.  And I am going to show you -- Mr. Fox,

22   can you see that?

23        A    Yes.

24        Q    Okay.  And -- let me move this, bear with me.

25   And that is an amended notice of deposition for today,
```

Deposition of Logan Fox                                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1    December 13th, 2021 at 3:00 p.m.

 2            Can you see that?

 3        A   Yes.

 4        Q   Okay.  I'm going to close it and go back to

 5    the screen.  Please state your full name for the record.

 6        A   Logan Alexander Fox.

 7        Q   And -- thank you.  This is not new to me, but

 8    I am -- okay.

 9            And have you ever had your deposition taken

10    before?

11        A   No, sir.

12        Q   Okay.  I'm going to give you ground rules.

13    But what is your address where you live now?

14        A   3905 Jay Court East, New Market, Maryland

15    21631.

16        Q   Okay.  And is that where you were living back

17    in June of 2019?

18        A   Yes.

19        Q   All right.  Have you ever testified in court?

20    Not a deposition, but actually gone to court and

21    testified?

22        A   No.

23        Q   Okay.  So let me go ahead and give you some

24    ground rules.  Because so far you've been doing great,

25    but if you are new to the process.
```

1         So a deposition is my ability to, essentially,

2    find out what you know.  And we do that by question and

3    answer period.  And when I'm done, Counsel -- I don't

4    know if you can see them, or if you're looking only at

5    me, but there's two other attorneys.  One who represents

6    Food Lion and Kellermeyer, and the other one who

7    represents Vane.

8         Do you understand that?

9    **A**    **Yes.**

10   Q    And, you know, obviously, Food Lion, you work

11   for them?

12   **A**    **Yes.**

13   Q    And do you know Kellermeyer?

14   **A**    **No.**

15   Q    Okay.  And how about Vane?

16   **A**    **No.**

17   Q    All right.  So let's go back to the ground

18   rules.  There is a court reporter.  Her picture is off,

19   which is why she is not on the screen, but she is taking

20   down and recording every word.  And as I told you, we're

21   also videotaping this for your record, and I will

22   provide it to counsel as well.

23        So it is important -- it's important that you

24   -- I will ask a question.  And presuming you understand

25   it, hopefully, you will respond.  I do not want you to

1    guess.  I do not want you to say something because you

2    feel compelled just to open up your mouth and speak.

3    Wait, listen, and then answer.

4          Does that sound fine?

5      **A    Yes.**

6      Q    Okay.  If -- as I commonly do in my life, if I

7    say something that is not something that either you

8    don't understand, because it's unintelligible or because

9    I speak too fast, just stop me and say Mr. Greenberg, or

10   Larry, I don't understand that.  Can you repeat it, for

11   whatever reason?

12     **A    Yes, sir.**

13     Q    For whatever reason.  As long as we don't

14   repeat or speak over each other, we'll do fine.  Let me

15   finish the question, and I'll let you finish the answer,

16   alright?

17     **A    Yes, sir.**

18     Q    I don't expect this.  But in the event I use a

19   phrase or a word that you don't understand, for whatever

20   reason -- lawyers, we talk sometimes, and Lord knows why

21   we speak that way, but if I say something just say,

22   please explain.  And I will gladly give you, you know, a

23   further explanation.

24         If at any time you need a break, just please

25   let me know.  This is not an endurance race.  This is

```
 1    just something I'm hoping will be relatively quick.  I'm

 2    going to ask you questions, hopefully, you give me the

 3    answers, we don't have a lot of objections, and we're

 4    done.

 5            Do you understand?

 6       A    Yes.

 7       Q    If you need a break, the only time I suggest

 8    that the rules don't allow you to take a break is if I

 9    have a question pending.  I don't want you to say, well,

10    let me talk to my lawyer first, and then I -- you know,

11    let me take a break so I can talk to my lawyer, and then

12    I'll come back and answer.  Alright?

13       A    Yes.

14       Q    Is there anything that would prevent you,

15    today, right now, from testifying truthfully?

16       A    No.

17       Q    Is there anything either physical or emotional

18    or mental condition which would prohibit you from

19    testifying honestly and fairly?

20       A    No.

21       Q    And is there any reason, absolutely any reason

22    you think that you're not ready to testify?

23       A    No.

24       Q    Do you understand the court reporter placed

25    you under oath?
```

Deposition of Logan Fox                          Jasmine Rittersbacher vs. Food Lion, LLC, et al.

 1      **A**      **Yes.**

 2      Q      And -- all right.  You are sitting here today

 3   representing -- at least for the questions that I'm

 4   going to ask -- regarding your working for Food Lion on

 5   the date of the fall.

 6           Do you understand that?

 7      **A**      **Yes.**

 8      Q      And do you recall that date?

 9      **A**      **Yes.**

10      Q      And tell me, just briefly, what you did to

11   prepare for today's deposition?

12      **A**      **Just mentally prepare myself.  Just try to**

13   **think back at the best -- you know, what happened, where**

14   **I was, what I did.**

15      Q      Okay.  Did you -- I don't want you to tell me,

16   but did you talk to counsel before today about the

17   deposition?

18      **A**      **Can you rephrase that?**

19      Q      The lawyer on -- well, on my bottom right, at

20   least, who is representing Food Lion, did you talk to

21   him about the incident?

22      **A**      **If you're referring to Matt, then yes.**

23      Q      Right.  So part of that is, did counsel

24   provide you any documents to review?  Whether it be

25   something called answers to interrogatories?  Or

Deposition of Logan Fox                     Jasmine Rittersbacher vs. Food Lion, LLC, et al.

1    response to requests for production of documents?  Or

2    even a video?  Did you go over any of that?

3         A    **Awhile back, I believe.**

4         Q    Okay.  And what specifically did you review?

5         A    **At the time the video wasn't able to be**

6    **reviewed because we got new camera systems.**

7         Q    Okay.  Have you seen the video?

8         A    **I did initially after the incident happened.**

9         Q    Okay.  And you saw her fall?

10        A    **Yes.**

11        Q    And when I say "her," it's Jasmine

12   Rittersbacher?

13        A    **Yes.**

14        Q    Do you know Ms. Rittersbacher other than this

15   fall?

16        A    **No.**

17        Q    Have you ever seen her in the store, but for

18   that date?

19        A    **No.**

20        Q    All right.  And did you speak to any other

21   witnesses who may have seen her fall, or assisted after

22   she fell?

23        A    **No.  Because nobody else saw her really fall.**

24        Q    Okay.  We'll talk about that in a second, how

25   you know that.

1          Okay.  So I know that there has been changes

2     in the store.  And one of the changes was the changing

3     of the video recording machines, the cameras, correct?

4          **A    Yes.**

5          Q    And did you prepare, like, a list of talking

6     points to help you today?

7          **A    No.**

8          Q    Okay.  You just -- you know what you know, and

9     you're here to talk about it?

10         **A    Yes.**

11         Q    All right.  Where were you born?

12         **A    Easton, Maryland.**

13         Q    And how long have you worked at Food Lion?

14         **A    Combined, it will be going on 14 years.**

15         Q    Okay.  Let's break it down, because you said

16    combined.

17         There was a gap in there, I assume?

18         **A    Yes.  I left for a year to go -- I lived in**

19    **Florida for a year and went to college, and then I came**

20    **back.  And it was about a six or seven months interval**

21    **until I came back to the company.**

22         Q    Okay.  So just give me an idea.  When did you

23    start working for Food Lion?  What year?

24         **A    2007.**

25         Q    And when did you go to Florida?

Deposition of Logan Fox                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1      A    2010 -- yeah, 2010.

 2      Q    Okay.  And then you returned, maybe, '11 or

 3   '12?

 4      A    2011.

 5      Q    Okay.  And then you went back to working for

 6   Food Lion here?

 7      A    Yes.

 8      Q    And you've been with them since?

 9      A    Yes.

10      Q    Okay.  So give me a breakdown from when you

11   started up until now what your positions at Food Lion

12   have been.

13      A    I was a bagger.  Then I became a stocker.  Then

14   I was a full-time lead stocker.  And then I was a

15   full-time grocery manager.  Now I'm assistant manager.

16      Q    Okay.  On the date -- when I keep saying "the

17   incident," I'm talking the date that she walked, she

18   slid on that mat and fell, okay?

19           Do you mind if I just keep calling it

20   incident?  Instead of repeating the date and repeating,

21   you know, the fall, can I just call it "the incident"?

22      A    Yes.

23      Q    Okay.  What was your -- you were an assistant

24   manager at the time?

25      A    Yes.
```

Deposition of Logan Fox                                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

1      Q    And what were your duties as assistant manager

2    for Food Lion?

3      **A    On that day?**

4      Q    Well, do they differ per day?

5      **A    No.**

6      Q    Oh, okay.  So as an assistant manager, what

7    are your duties?

8      **A    I manage the store, make sure Departments are**

9    **ran correctly.  Make sure customers have a good shopping**

10   **experience.**

11     Q    All right.  I assume, originally -- and that

12   was back in 2007 -- you had filled out an employment

13   application?

14     **A    Yes.**

15     Q    Okay.  And do you know if -- or have you seen

16   recently your employment application?

17     **A    No.**

18     Q    Okay.  Do you know -- I was given two

19   employment applications of two people, but neither one

20   were you.  And I'm looking for their names.  Well, it's

21   not important.

22          Were you required to fill out applications in

23   2007, and then again on '11 when you returned?

24     **A    No.  In 2007, I fill one out.  When I returned,**

25   **I don't believe I did.**

Deposition of Logan Fox                          Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1        Q    Okay.  And I imagine your background hasn't
 2   changed?
 3             Have you ever been convicted of any crimes?
 4             MR. DAVEY:  Objection.  Go ahead.
 5   BY MR. GREENBERG:
 6        Q    So Mr. Fox, when -- Mr. Fox can you hear me?
 7        A    Yes.
 8        Q    Okay.  When your lawyer objects, but he says,
 9   "go ahead," you can answer the question.  If he objects
10   and he says, "don't answer," well, then, Mr. Davey and
11   I are going to have a conversation about that
12   objection.  And I don't anticipate that's going to
13   happen.
14        A    Okay.  I don't know if you necessarily say it
15   was convicted, I got in a physical altercation with
16   somebody in 2003.  And I don't -- I can't remember, to
17   be honest, if they had charges against me or not.
18        Q    Okay.  And so you didn't go to court?
19        A    I did.
20        Q    Oh.  Well, then, there were charges?  But you
21   weren't found guilty?
22        A    I pleaded guilty.
23        Q    Oh, okay.  Yeah, don't worry about that.
24             So that was in 2003?
25             Other than that, any other charges you can
```

Deposition of Logan Fox                           Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1 │  think of?
 2 │           MR. DAVEY:  Objection.  Go ahead.
 3 │           THE WITNESS:  No, sir.
 4 │  BY MR. GREENBERG:
 5 │      Q    And where were those charges?
 6 │      A    Dorchester County.
 7 │      Q    So in Cambridge?  You went to the District
 8 │  Court in Cambridge?
 9 │      A    Yes.
10 │      Q    All right.  And -- okay.  So let's go back to
11 │  '07.
12 │           You filled out an application?
13 │      A    Yes.
14 │      Q    And you were required to sign a pledge of
15 │  honesty with the company?
16 │      A    I don't recall on that one.
17 │      Q    Right.  Okay.  But if I would like to suggest,
18 │  the documents I received for other people who applied
19 │  for a job there, if they signed what's called a "pledge
20 │  of honesty," you don't have an opinion one way or
21 │  another if you did, or recollection?
22 │      A    I don't have any recollection.
23 │      Q    Okay.  Do you recall what training you
24 │  received -- as you worked your way up, what training you
25 │  received from Food Lion?  Or Kellermeyer?  Well, let's
```

Deposition of Logan Fox                                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1    start at Food Lion?

 2             MR. DAVEY:  All training, Larry?  Or anything

 3        more specific than that?

 4    BY MR. GREENBERG:

 5        Q    Well, for now, let's stick to what training

 6    you recall working on.

 7        A    Multiple.  You know, as a bagger, learn how to

 8    clean.  You know, when I was a stocker, learn how to

 9    stock.  Becoming a manager, how to manage.  I mean,

10    there's multiple aspects that go into that.

11        Q    Okay.  So one of the things --

12             MR. GREENBERG:  Hey, Matt, while I recall, I

13        was going through all the discovery, and I don't see

14        his application.

15             Any idea why I was sent other people's

16        applications and not his?

17             MR. DAVEY:  I have no idea.

18             MR. GREENBERG:  Okay.  Can I get that, by the

19        way?

20             MR. DAVEY:  Yeah, if they have it.

21             MR. GREENBERG:  Thank you.

22    BY MR. GREENBERG:

23        Q    So, Mr. Fox, the reason I ask -- and I'm basing

24    it off of others, but I have to imagine they're similar.

25    Because for these other people, they're both -- they're
```

Deposition of Logan Fox                          Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1   identical.  So I'm going to guess you signed the same
 2   sort of thing.  It was a pledge of honesty.  It was
 3   instructing about working off the clock, respecting the
 4   workplace.  There was a company union statement, a
 5   workplace violence statement, a statement about gifts
 6   and gratuity, and food safety.  Open-door and appeal
 7   policy, acceptable use, performance counseling,
 8   something about personal behavior and equal opportunity,
 9   Family Medical Leave Act, attendance and punctuality,
10   shoplifting, and use of a telephone.  All of those
11   things, it appears that Food Lion requested their staff
12   to sign before getting hired.
13          Does that sound about right?
14      A    Yes, that sounds about -- that sounds like the
15   Onboarding process.
16      Q    Okay.  And you would also know that as
17   assistant manager.
18          Do you also now partake in hiring people?
19      A    I hire people, but I do not onboard them.
20      Q    Okay.  So explain the difference between
21   Onboarding and hiring?
22      A    So hiring is I interview.  I will suggest a pay
23   rate.  And then my front end manager, she would onboard
24   them, which is essentially get the -- you know, put the
25   employee in the system and sign those documents.
```

Deposition of Logan Fox                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

1    Q    Okay.  So let me ask you a question.  Were you

2    -- since you were an assistant manager back on the date

3    of the incident, was your duty back then the same as you

4    just described?

5    **A    Yes.**

6    Q    Okay.  So let's go back, because I don't have

7    anything -- at least that I can see -- from 2019.

8         So all of those -- I think it was 16.  It

9    wasn't -- I don't think -- it was 16 things that I just

10   read.

11        Would you agree that none of them involve a

12   safe workplace or protecting the staff or customers from

13   injury?

14        MR. DAVEY:  Objection.  Go ahead.

15        THE WITNESS:  Can you repeat that, please?

16   BY MR. GREENBERG:

17   Q    Sure.  So I just read you 16 things that I saw

18   other people sign.  And it's just --

19        MR. GREENBERG:  Counsel, if you need to know,

20        it's Exhibit ZAI0109.  And it's just a list of 16

21        things I just read.  And none specifically involves

22        a safe workplace or protecting staff or customers

23        from injury.

24   BY MR. GREENBERG:

25   Q    Do you have an independent recollection that

Deposition of Logan Fox                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

1   there's a particular document that talks about how to

2   prevent injuries to staff members or  the customers who

3   come into Food Lion?

4          MR. DAVEY:  Objection.

5          THE WITNESS:  Not a physical copy.  We take

6      computer-based trainings that cover this.

7          MR. GREENBERG:  Okay.  So, Counsel, can I get

8      that computerized safety training manual, please?

9          MR. DAVEY:  Sure.

10         MR. GREENBERG:  Thank you.

11  BY MR. GREENBERG:

12     Q    There were -- Mr. Fox, there were two

13  documents that I saw.  And again, not for you, but at

14  least for two people within the last six years.  One is

15  ZAI.  And let me pull that up -- well, strike that.

16  Let me just tell you what it is.  One was called unsafe

17  acts.  And bear with me.  It's so much easier when we

18  are sitting across from each other.

19         So I'm going to show you one such document.

20         Can you see this?

21     **A    Yes.**

22     Q    Okay.  And this is titled "Manager Checklist

23  Signoff Sheet."

24         Do you sill use this document when you hire

25  people?

Deposition of Logan Fox                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1      A    I don't -- I'm not sure to be honest with you.

 2      Q    Because that's part of the onboarding process?

 3      A    Yes.

 4      Q    Okay.  And just so that -- are you -- you're

 5   using an iPad?

 6      A    Yes.

 7      Q    Is it large enough on your screen?  Let me see

 8   if I can make it larger?

 9      A    It's large enough.

10      Q    Okay.  So the reason I say -- I'm going

11   through -- now this is 16 as well.

12           Can you see the 16 items that -- the following

13   items have been discussed and reviewed and a manager

14   needs to signoff on it?

15      A    Yes.

16      Q    Okay.  Do you see anything on here that deals

17   with safety in -- other than this thing that says, "job

18   safety" -- that deals with safety to staff and/or

19   customers in the store?

20           MR. DAVEY:  Objection.  Go ahead.

21           THE WITNESS:  No.

22   BY MR. GREENBERG:

23      Q    All right.  Tell me about the training aids

24   that you indicate the people go through regarding safety

25   in the store?
```

Deposition of Logan Fox                          Jasmine Rittersbacher vs. Food Lion, LLC, et al.

1      A     They're called CBTs, computer-based trainings.

2   Every new hire and every associate, there's multiple

3   videos regarding multiple -- I don't want to say issues

4   or situations -- I don't know how to word it correctly.

5      Q     Just explain it.  This is not -- this isn't an

6   English test, or whatever.  Just tell me what you're

7   thinking, so I understand where you're coming from?

8      A     So they help you with, you know, how to clean

9   up messes.  They know how to clean up, like, blood or

10   something in that manner.  They explain how to work a

11   pallet jacket, how to work a baylor, the proper way to

12   stock, the proper way the use a U-boat, a box cutter.

13   They help new front end associates with how to do

14   cashiering.  If you get hired into a certain department,

15   they have certain CBT's for those departments itself, as

16   in market, produce, deli.

17      Q     Is there anything regarding the placement of

18   mats?

19      A     No.

20      Q     Floor safety?

21      A     Keeping the floors clean, you know, if there's

22   a spill.

23      Q     Okay.  Reporting issues of a leaking machines?

24      A     That would be in the same category.

25      Q     Okay.  Do you have any idea?  Because I don't

Deposition of Logan Fox                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1    have these videos, these CBTs.

 2            Computer-based technology, is that what you

 3    said?

 4        A    Training.

 5        Q    Computer-based training, sorry.  Any regarding

 6    the fixing of these machines that are leaking?

 7        A    When you say "machines"?

 8        Q    Okay.  So you know where Ms. Rittersbacher

 9    fell, correct?

10        A    Yes.

11        Q    Okay.  And it was right in front of that

12    machine where at the time there were flowers and a

13    refrigerated unit?

14        A    Yes.

15        Q    Okay.  And now I believe it's a whole bunch

16    of, like, sodas and other things, correct?  In that same

17    area?

18        A    We have an enclosed salad case, salad bags.

19        Q    Okay.  And it's the same unit, correct?

20        A    Same type of unit, yes.

21        Q    Okay.  And that unit, on the day of June 18th,

22    2019, was leaking, correct?

23            MR. DAVEY:  Objection.  Go ahead.

24    BY MR. GREENBERG:

25        Q    You can answer.
```

Deposition of Logan Fox                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1        A     If it was, I don't know.  It could have been

 2   sweating.  It was, you know, summertime.

 3        Q     Right.  Let me take a step back.  So maybe on

 4   that particular day.

 5              You've had issues with that machine sweating

 6   or leaking prior to June 18th, 2019, correct?

 7              MR. DAVEY:  Objection.  Go ahead.

 8   BY MR. GREENBERG:

 9        Q     You can answer.

10        A     Not that one in particular, but others.

11        Q     Okay.  And specifically, when you have

12   problems, it's best to repair the unit, not just put a

13   mat down, correct?

14              MR. DAVEY:  Objection.  Go ahead.

15              THE WITNESS:  We put a work order in, and a

16         maintenance guy comes out.

17   BY MR. GREENBERG:

18        Q     Okay.  And you would agree with me -- well,

19   strike that.

20              What is -- do you believe that -- now that

21   you're an assistant manager, do you believe that safety

22   is everyone's job?  It's not just the manager's job,

23   correct.

24              MR. DAVEY:  Objection; calls for an opinion.

25         Go ahead.
```

Deposition of Logan Fox                          Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1    BY MR. GREENBERG:
 2         Q     You can answer.
 3         A     Yes, I believe that.
 4         Q     And you agree that employees are supposed to
 5    follow the rules and be mindful of the training from
 6    these CBTs or other types of training they get?
 7              MR. DAVEY:  Objection.  Go ahead.
 8              THE WITNESS:  Yes.
 9    BY MR. GREENBERG:
10         Q     And you agree that employees should speak up
11    about any hazards they observe in the store?
12              MR. DAVEY:  Objection.  Go ahead.
13              THE WITNESS:  Yes.
14    BY MR. GREENBERG:
15         Q     And do you believe -- you know, the
16    expression, "I own it?  You know, to take ownership of
17    something?
18         A     Yes.
19         Q     Okay.  Do you believe that employees should
20    own the safety, and not just the manager or Corporate
21    Safety Department?
22              MR. DAVEY:  Objection.  Go ahead.
23              THE WITNESS:  In a sense, yes.  But also as a
24         manager, you don't want to risk employees hurting
25         themselves as well.
```

Deposition of Logan Fox                                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1    BY MR. GREENBERG:

 2        Q    Well, sure.  I'm not necessarily saying --

 3    well, okay.  What do you mean by that?  Risk it?

 4             MR. DAVEY:  Objection to the form; go ahead.

 5             THE WITNESS:  You know, just in case they could

 6         hurt themselves, as the manager on duty or their

 7         superior or supervisor, make sure that they're doing

 8         it correctly, give and assist.

 9    BY MR. GREENBERG:

10        Q    I got it.  So an employees sees a danger.  You

11    don't want them taking it under their own to go and try

12    to fix it; you'd rather them come to a manager and say,

13    hey, listen, there's a spill on aisle five.  What should

14    I do?

15             Is that what you mean?

16             MR. DAVEY:  Objection.  Go ahead.

17             THE WITNESS:  Yes.

18    BY MR. GREENBERG:

19        Q    All right.  And does that normally happen?

20        A    Not normally.

21        Q    Okay.  How does it normally happen?

22        A    Can you be more specific?

23        Q    Well, sure.  In this case, there is a unit --

24    and I'm going to call it a unit, right?  Refrigerated

25    unit?  What do you call it?
```

Deposition of Logan Fox                                   Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1        A    A cooler.

 2        Q    A cooler.  There's a cooler that's either

 3   leaking or sweating.  But either way -- and I understand

 4   what you mean, but what do you mean by sweating?

 5        A    Condensation.  Like, in the summertime, you

 6   know, our bodies get hot, and we sweat.

 7        Q    Okay.  So what does the unit do when it

 8   sweats?

 9             MR. DAVEY:  Objection.  Go ahead.

10   BY MR. GREENBERG:

11        Q    If you know?

12        A    I don't know really.

13        Q    Water comes out of it?

14        A    It would come from the bottom sometimes.

15        Q    Right.  And what's on the bottom?  What's it

16   resting on?

17        A    The floor.

18        Q    Okay.  So the water would come out, and it

19   would go on the floor, correct?

20        A    Yes.

21        Q    All right.  Just so that I know, because I've

22   seen the video.  And I don't have tons of pictures.  I

23   have some.  And we'll go over the pictures in a second.

24             Did you have mats in front of every single

25   cooler throughout the store?
```

1    **A    No.**

2    Q    Why?

3    **A    They are only designated for the produce area.**

4    Q    Okay.  Did you have mats in front of every

5    single cooler in the produce department?

6    **A    They stretch -- they're long mats, so they**

7    **stretch.  There may be a couple of small sections that**

8    **are not covered.**

9    Q    Okay.  And that's because these units sweat?

10    **A    No.**

11    Q    Why?  Sorry.  Why do you have the mats?

12    **A    So we take out -- so the process of crisping a**

13    **wet wall, we're dealing with wet produce -- the floral**

14    **is right there -- they do sit in water.**

15    Q    So explain -- oh, so it's there because you

16    know water will come out?

17    **A    Not necessarily know that it will come out, but**

18    **just in case it does.**

19    Q    Okay.  Just based on experience, doing this

20    day in and day out, you know that it can come out, and

21    therefore you put the mat there?

22    **A    Yes.**

23    Q    I got it.  Do you agree that if a piece of

24    equipment has an issue -- hypothetically, you know, has

25    a sharp edge on it that poses a risk to the workers or

Deposition of Logan Fox                                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1    to customers -- that it's the job of the store
 2    management to communicate the problem to --  not only
 3    the staff, not only possibly corporate, or you said
 4    submit a work order, do you believe that they also have
 5    a duty to the customers to be mindful so as not to hurt
 6    themselves?
 7        A    Yes.
 8             MR. DAVEY:  Objection; calls for speculation go
 9        ahead.
10    BY MR. GREENBERG:
11        Q    I'm sorry, say your answer.
12        A    Yes.
13        Q    Okay.  And do you agree that a key principle
14    of a company safety structure is an operator's EEA?
15    Have you ever of that?  Education, expectation, and
16    accountability?
17             MR. DAVEY:  Objection.  Go ahead.
18             THE WITNESS:  I'm not sure really what that is.
19    BY MR. GREENBERG:
20        Q    Okay.  Well, you educate people, right?
21        A    Yeah.
22             MR. DAVEY:  Objection.
23    BY MR. GREENBERG:
24        Q    You create expectation?  You let them know
25    what is expected of the staff?
```

Deposition of Logan Fox                                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1              MR. DAVEY:  Objection.

 2    BY MR. GREENBERG:

 3         Q    Mr. Fox?

 4         A    Yes.

 5         Q    Do you agree that, as a manager, as a

 6    corporate structure, you should create expectations of

 7    your employees?  Know what's expected of them, sorry?

 8         A    Yes.

 9         Q    And accountability?  If they fail to do

10    something, how they may be held accountable?

11              MR. DAVEY:  Objection.  Go ahead.

12              THE WITNESS:  Yes.

13    BY MR. GREENBERG:

14         Q    And do you agree you shouldn't hold people

15    accountable for safety unless they're educated?

16              MR. DAVEY:  Objection.

17    BY MR. GREENBERG:

18         Q    Mr. Fox?

19         A    Yes.

20         Q    And you do you agree that managers should

21    assist in identifying problems -- in the case as of you

22    described, you know, setting a work order -- you should

23    research possible solutions and play a role in repairing

24    the troubled product, correct?

25              MR. DAVEY:  Objection.  Go ahead.
```

Deposition of Logan Fox                                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1              THE WITNESS:  I will not repair a cooler.
 2    BY MR. GREENBERG:
 3         Q    No, no.  I said assist in putting in a repair
 4    order?
 5         A    Yes.
 6         Q    Okay.  And at the time, what company did you
 7    use to repair these coolers?
 8         A    I have -- I do not recall.
 9         Q    Tell me that structure.  Tell me that process.
10    How it goes?  You see this floral cooler is sweating, or
11    is leaking, tell me the process.  What do you do, other
12    than putting a mat down?
13              MR. DAVEY:  Objection.  Go ahead.
14              THE WITNESS:  So the mats are already down.  We
15         don't put them down ourselves.
16    BY MR. GREENBERG:
17         Q    Who puts the mat down?
18         A    What's that?
19         Q    Who puts the mat down if you don't?
20         A    So they're there.  If we need new mats, we
21    contact -- I believe it's Uni-First that bring them.
22         Q    Oh, so you have a third-party vendor who comes
23    in on a regular basis, or should be at a regular
24    interval?
25              MR. DAVEY:  Objection.
```

Deposition of Logan Fox                          Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1            THE WITNESS:  Yes.
 2    BY MR. GREENBERG:
 3        Q    Okay.  Who's in charge of determining how
 4    often?  Would you say Universal?
 5        A    Uni-First.
 6        Q    Universe.  How often does Universe comes to
 7    replace the mat that is lying in front of the cooler?
 8            MR. DAVEY:  Objection.  Go ahead.
 9            THE WITNESS:  Well, first, it's Uni --
10        U-N-I-F-I-R-S-T, Uni-First.
11    BY MR. GREENBERG:
12        Q    Oh, sorry.  And do you know where Uni-First is
13    based out of?
14        A    No.
15        Q    Tell me how -- walk me through the process.
16    You come up.  You see this mat has curled edges.  You
17    see this mat is sliding.  You see this mat is not the
18    appropriate mat because it doesn't have -- you know
19    those mats that have like holes it where, you know,
20    water can get underneath, but it doesn't slip the way
21    this one did?  Who makes that determination this is the
22    wrong mat, or this mat needs to be replaced?
23            MR. DAVEY:  Objection.  Go ahead.
24            THE WITNESS:  If the mat needs to be replaced
25        -- if a produce associate notices it curling, they
```

Deposition of Logan Fox                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1          will tell management.  If a member of management
 2          sees it for ourselves, we will talk to the Uni-First
 3          rep when he comes in.
 4          Q    Okay.  At this particular time -- and again, I
 5   know it's been a year and a half, or whatever, or two
 6   years -- do you recall when Ms. Rittersbacher fell?
 7          A    Yes.
 8          Q    Do you recall if at any time within a week or
 9   a few weeks before you looked and you said this isn't
10   the right mat, or this matter mat needs to be changed
11   out?
12          A    No.
13          Q    Okay.  And if you had done that, how would
14   that have occurred?  Like, what process?  Would that
15   have been a written change order?  Would that have been
16   you going to another manager or somebody up in corporate
17   and saying, look, this is dangerous.  I've seen this
18   thing slide.
19               How does that work?
20               MR. DAVEY:  Objection.  Go ahead.
21               THE WITNESS:  I would let my store manager
22          know.  And then when we see the Uni-First rep, we
23          would ask him for a new mat.
24   BY MR. GREENBERG:
25          Q    Do you know who the Uni-First rep was?
```

Deposition of Logan Fox                                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

1       **A      No.**

2       Q    Who was your manager at the time?

3       **A      His name was Keith Parlier.**

4       Q    Parlier, yeah.  Okay.  You indicated that you

5    had learned to clean the floors on your way up the ranks

6    at Food Lion.

7       **A      Yes.**

8       Q    Okay.  And part of that, did it involve just

9    one particular area of the store, or was it all over the

10   store?

11      **A      The entire store.**

12      Q    Okay.  Had you ever cleaned in this particular

13   area in this produce section in front of the -- in front

14   of the floral cooler at the time.

15      **A      At the time of the incident?**

16      Q    No.  I know it's a different type of cooler

17   now.  It's against the law.  But what I'm saying is, when

18   it was a cooler back on June 18th that had flowers in

19   it, had you ever cleaned that general area for the years

20   before?

21      **A      Yes.**

22      Q    And had you experienced dampness on the floor

23   during that time, all the years you worked there, from

24   sweating or leaking or people, you know, dropping water,

25   you know, pulling up flowers?

Deposition of Logan Fox                                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

1        **A      At some point I probably have, sure.**

2        Q      Do you recall on those occasions, when it was

3    damp there, filling out a -- some type of notice that I

4    was in front of the cooler, and it was wet in front of

5    it?

6        **A      No, I wouldn't fill anything out like that.**

7        Q      Okay.  Do you recall telling any managers, or

8    assistant managers at the time, yeah, there was some

9    water over by that cooler?

10       **A      I don't recall.**

11       Q      Okay.  Do you remember that you would make a

12   point to tell other people in the store -- other workers

13   in the store -- yeah, there's -- watch out in front of

14   the cooler, the floral cooler, there's is a bunch of

15   water?  Or there's water over there?

16       **A      I don't recall.**

17       Q      Okay.  So that's cleaning the floor.

18           When you would clean it, what would you do?

19   How would you clean the floor specifically in that area

20   when there would be water either on the mat or under the

21   mat, or if there was no mat at the time?  How would you

22   clean it?

23           MR. DAVEY:  Objection.  Go ahead.

24           THE WITNESS:  If there was no matter there, I

25       would use the floor machine.

Deposition of Logan Fox                                      Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1    BY MR. GREENBERG:
 2         Q    Okay.  And what is that?
 3         A    It's a push machine that sucks up water.
 4         Q    Okay.  And did you do that often?
 5         A    I would.
 6         Q    Is that like one of those wet vacs?  Is that
 7    what it is?
 8         A    It's --
 9         Q    It's not a buffer, is it?  I didn't mean to
10    cut you off.  You're talking an actual, somewhat, vacuum
11    that would pullup the water off the ground?
12         A    Yes.  So it have two pads on the front that
13    would disperse water, and they would rotate and clean
14    the floor.  And then right behind it, there's a squigi
15    (ph) with a vacuum hose that would suck up the water
16    that you're making.
17         Q    Okay.  And then what would you do after you
18    use that machine?
19         A    Take it to the back, empty it, and clean it
20    out.
21         Q    Okay.  Anything else?
22         A    No.
23         Q    Okay.  Did you ever, as you were moving up,
24    examine these -- I'm not going to call it appliances.
25    Examine the cooler to determine why it was leaking?  You
```

Deposition of Logan Fox                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

1    know, whether it was by sweating or actual just -- you

2    know, how sometimes machines they got a leak in it, and

3    the water comes out at the bottom?

4        **A    Yes.**

5        Q    Did you ever make a determination why that

6    particular machine kept leaking?

7            MR. DAVEY:  Objection.  Go ahead.

8            THE WITNESS:  I don't recall, to be honest with

9        you.

10   BY MR. GREENBERG:

11       Q    Okay.  Would anyone else who was employed by

12   Food Lion, would that have been their job to determine

13   why it kept leaking?

14           MR. DAVEY:  Objection.  Go ahead.

15           THE WITNESS:  No.

16   BY MR. GREENBERG:

17       Q    Not even the manager?

18           MR. DAVEY:  Objection.  Go ahead.

19           THE WITNESS:  We could try to figure out, but

20       it's not our job to really narrow down the cause.

21   BY MR. GREENBERG:

22       Q    I got it.  So I don't want to put words in

23   your mouth, because you seem like a decent guy, so just

24   please understand my question when I say I know it's not

25   your duty.  But you see this machine is leaking or

Deposition of Logan Fox                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1   sweating, or whatever, you would go.  You would use this
 2   wet vac.  You would pickup the water.
 3           And you then you would just leave it?
 4           MR. DAVEY:  Objection; misstates prior
 5       testimony.  Go ahead.
 6           THE WITNESS:  No, I wouldn't just leave it.  We
 7       would try to, you know, hold back the water in some
 8       capacity.
 9   BY MR. GREENBERG:
10       Q    Sure that's what I'm asking.  How would you do
11   that?
12       A    At times, we would put some paper towels down
13   to soak up the water, which would work.
14       Q    Okay.  I want to show you a picture.  Bear
15   with me.
16           Can you see the screen picture?
17       A    Yes.
18       Q    Okay.  And I'm showing you what's been marked
19   as -- well, whatever exhibit number it is now.  The
20   caption is area one, 10.1.21.jpg.
21           Is this what you're talking about?
22       A    Something like that.
23       Q    And you would put up a caution sign, I assume?
24   Not to put word in your mouth?
25       A    Yes.
```

Deposition of Logan Fox                            Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1        Q    Okay.  And let me make sure I understand.
 2             Do you recognize this area?
 3        A    Yes.
 4        Q    Okay.  And this is the exact area where the
 5   floral unit used to be, which is now -- I can't see
 6   what's on there, but it looks like some cheeses or
 7   something like that?
 8        A    Tofu and all that fun stuff.
 9        Q    Okay.  That's the identical cooler, correct?
10        A    Yes.
11             MR. DAVEY:  Objection.
12   BY MR. GREENBERG:
13        Q    All right.  So there's no mat here, correct?
14        A    No.
15        Q    And instead, somebody -- this (indicating)
16   white stuff, I assume those are paper towels?
17        A    Yes.
18        Q    So do you know who would put the paper towels
19   up there to try to stop the water from leaking out of
20   this thing?
21        A    It could have been a produce associate.  It
22   could have been a QA associate.  It could have -- I
23   don't know who exactly.
24        Q    Okay.  And whose decision on this particular
25   day was it not to put a mat down?
```

Deposition of Logan Fox                                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
1                  MR. DAVEY:  Objection.

2       BY MR. GREENBERG:

3            Q    I mean, if you know?

4                  MR. DAVEY:  Do you have any idea of what day

5            this is?

6                  MR. GREENBERG:  Yeah.  My guess is, by the

7            title, is October 1st, 2021.

8                  MR. DAVEY:  So you're asking him on that day if

9            he knows why a mat's not down.

10                 MR. GREENBERG:  Well, sure.

11      BY MR. GREENBERG:

12           Q    Whose decision would it be to put the mat

13      down?  When you know the unit is still leaking, whose

14      decision is it to put the mat down?

15                 MR. DAVEY:  Objection.  Go ahead.

16      BY MR. GREENBERG:

17           Q    Or would it be to put the mat down?

18                 MR. DAVEY:  Same objection.

19                 THE WITNESS:  Am I allowed to answer?

20                 MR. DAVEY:  Yeah.

21      BY MR. GREENBERG:

22           Q    Yeah.

23           A    I don't know whose decision, to be honest with

24      you.

25           Q    Okay.
```

Deposition of Logan Fox                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

1      **A      The mat might have been rolled up to -- for the**
2      **-- whoever to come in there and maybe fix it.**
3      Q     What do you mean?
4      **A      We when we put a work order in, sometimes they**
5      **will come in and they'll -- sometimes they'll roll the**
6      **mat up to get underneath there.**
7      Q     Okay.
8      **A      But I don't recall this.**
9      Q     Sure, sure.  Well, so let me ask you a
10     question:  Obviously, this happened a month plus ago --
11     or two months, sorry.
12            Have you seen this area, this unit, the same
13     cooler, have you seen it look in this similar condition
14     over the past three or four years where there's paper
15     towels there to stop the water from coming out of this
16     unit?
17            MR. DAVEY:  Objection.  Go ahead.
18            THE WITNESS:  Maybe not in that area.  I will
19        tell you, though -- now, this is my store, correct?
20     BY MR. GREENBERG:
21     Q     Yes.
22     **A      Okay.  I can tell you that there is no mat**
23     **there.**
24     Q     Right, I know.
25     **A      So no, there's no mat there period.  That's**

Deposition of Logan Fox                              Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
1   where the mat placement -- there's no mat there period.

2   I'm trying to -- because I'm trying to figure out the

3   layout here.

4        Q    Okay.

5        A    There is no mat placement there, right there

6   currently.

7        Q    Okay.

8        A    There's one --

9        Q    Yeah, go on, I'm sorry.

10       A    There's one before that that's in front of the

11  -- where the floral is now.  And there's one after that,

12  because that's where our wet wall is.

13       Q    What does that mean?  First of all, what's wet

14  wall?

15       A    So where all the fresh vegetables, greens are.

16       Q    Okay.  Is that the type of mister machine

17  where water comes out and sprays what's in the

18  container?

19            MR. DAVEY:  Objection to form.

20            THE WITNESS:  Yes.

21  BY MR. GREENBERG:

22       Q    Okay.  And that's similar to when you have

23  flowers in there, you've got a mister that keeps them

24  wet?

25            MR. DAVEY:  Objection.  Go ahead.
```

Deposition of Logan Fox                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1              THE WITNESS:  No, there's no mister for the
 2         flowers.
 3    BY MR. GREENBERG:
 4         Q    Okay.  It's just the flowers are sitting in
 5    water?
 6         A    Yes.
 7         Q    Okay.  Why would you keep a mat in front of
 8    the floral?
 9         A    In case somebody would pick flowers out and a
10    little bit of water would drip out, or when we change
11    out the flowers themselves.
12         Q    Okay.  So this unit which I'm talking about,
13    directly behind this yellow cone, do you know how many
14    years you've had problems with it leaking like this?
15              MR. DAVEY:  Objection.  Go ahead.
16              THE WITNESS:  No.
17    BY MR. GREENBERG:
18         Q    Has it been more than five years?
19              MR. DAVEY:  Objection.  Go ahead.
20              THE WITNESS:  I don't even remember how many
21         time I recall it leaking, I mean, other than this
22         picture.
23         Q    Well, and the day Ms. Rittersbacher fell, it
24    was wet underneath.
25              MR. DAVEY:  Objection.  Go ahead.
```

Deposition of Logan Fox                          Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1   BY MR. GREENBERG:

 2       Q   I'm talking before -- this happened -- if this

 3   picture is accurate and there's a date on there, so I

 4   take it to be.  This is in '21.  We know

 5   Ms. Rittersbacher fell in '19, in June of 2019.

 6           I'm asking before then, how many times are you

 7   aware that this particular cooler had problems where

 8   stuff, whether through sweating or other, water came

 9   out?

10           MR. DAVEY:  Objection.  Larry, to be honest, I

11       don't know --

12           MR. GREENBERG:  Matt, Matt, Matt, Matt, let --

13   BY MR. GREENBERG:

14       Q   Mr. Fox, if you can answer that first?

15           MR. DAVEY:  Objection.  Go ahead.

16   BY MR. GREENBERG:

17       Q   All right.  Okay.  You had said that when you

18   have an issue with a cooler, for example, you would

19   contact this Uni-First, correct?

20           MR. DAVEY:  Objection; that's not what he said.

21   BY MR. GREENBERG:

22       Q   Okay.  Tell me how you go about getting

23   somebody to come in and fix it.

24       A   We would submit a work order on the computer.

25       Q   Oh, I got it.  Who submits the order?
```

Deposition of Logan Fox                                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1        A     It could be any member of management.

 2        Q     All right.  And you're part of that?

 3        A     Yes.

 4        Q     Okay.  You would submit the electronic order.

 5              Who helps schedule with the vendor to come in

 6    to fix it?

 7        A     I don't know who it is particularly.

 8        Q     Or do they just come?  And when they're

 9    available, they come out and fix it?

10        A     Well, somebody schedules it, and then they'll

11    come out whenever.

12        Q     Okay.  Now that's fixing.  Let's talk about

13    cleaning.

14              Is there a separate party, a separate company,

15    that Food Lion uses to come in, whether it's once a day

16    or twice a day, to come in and clean the store?

17              MR. DAVEY:  Objection.

18    BY MR. GREENBERG:

19        Q     That you know?

20        A     Yes.

21        Q     Okay.  And do you know if the company's name

22    is Vane, V-A-N-E?

23        A     I don't know if that's still their name.

24        Q     Okay.  But back in 2019, do you know if that's

25    who it was?  Vane?
```

Deposition of Logan Fox                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

1        **A      The only name I know of about cleaning floors**

2    **was Bergensons.**

3        Q     Okay.  All right.  So Kellermeyer Bergensons?

4        **A     I believe so.  I guess that's who that is.**

5        Q     All right.  So you don't know if they have a

6    deal -- if Bergensons has a deal with a company called

7    Vane?

8        **A     No.**

9        Q     Okay.  And likewise, were you or management

10   ever in charge of creating a time to come in and clean

11   the floors?

12       **A     No.  They would come in on their own.**

13       Q     All right.  Are you aware if Food Lion was

14   required to provide to this -- whether it's Vane or

15   another cleaner, the following:  A floor scrubber, a

16   stripper finisher, cleaning pads, mop pads, floor

17   scrapers and other cleaning chemicals?  Was it Food

18   Lion's responsibility to give it to the cleaning

19   company, or did the cleaning company bring their own, do

20   you know?

21            MR. DAVEY:  Objection.  Go ahead.

22            THE WITNESS:  The company -- the people that

23        would come in from the other company would bring

24        their own scrapers.  We would have the floor machine

25        at the store.  They -- it's their buffer, but they

Deposition of Logan Fox                        Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1        leave it at the store.
 2    BY MR. GREENBERG:
 3        Q    I got.  So it's left in back.  They come out
 4    whenever they're there.  And it's typically overnight,
 5    correct?  They'll come in after the store closes?
 6        A    No.
 7        Q    When do they come?
 8        A    Late at night.  I want to say nine o'clock,
 9    9:30-ish.
10        Q    What time does the store close?
11        A    11 o'clock.
12        Q    Okay.  So they would come in while customers
13    were still there, and they would come clean and buff the
14    floors?
15        A    Yes.
16        Q    All right.  Do you know if the cleaners -- I'm
17    just going to call them cleaners, if you don't know the
18    name.
19             Do you know if the cleaners ever -- did they
20    have permission to try to fix a cooler if it was broken?
21             MR. DAVEY:  Objection.  Go ahead.
22             THE WITNESS:  No.
23    BY MR. GREENBERG:
24        Q    Do you know if they had permission to try to,
25    like, putdown mats?  Was it their responsibility -- if
```

```
 1    they saw, like, this cooler leaking, did they have

 2    permission to go putdown mats or additional towels or

 3    paper towels?

 4              MR. O'BRIEN:  Objection.

 5              MR. DAVEY:  Objection.  Go ahead.

 6              THE WITNESS:  No.

 7    BY MR. GREENBERG:

 8        Q    Okay.  Are you aware if it was Food Lion's

 9    responsibility to conduct what I'll an audit, to look

10    over the cleaning company to make sure they were doing a

11    good job?

12              MR. O'BRIEN:  Objection.  Go ahead.

13              THE WITNESS:  I don't know really how to answer

14        that.

15    BY MR. GREENBERG:

16        Q    Okay.  Well, you said they come about

17    nine o'clock at night.

18              Did you ever work late night?

19        A    They used to come -- they come nine o'clock

20    now.  Because back when the incident happened, we used

21    to close at 10:00.  So they would come about eight

22    o'clock.

23        Q    Okay.  This incident didn't occur at night,

24    correct?  When Ms. Rittersbacher fell?

25        A    Correct.
```

Deposition of Logan Fox                                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1        Q    Okay.  So my guess is, they were there the
 2   night before, not the day of?
 3             MR. DAVEY:  Objection.  Go ahead.
 4   BY MR. GREENBERG:
 5        Q    If you know?
 6        A    They might have been.  I'm not sure.
 7        Q    Okay, that's fine.  What I'm asking is, the
 8   cleaning company -- the cleaning crew comes.
 9             Is it up to Food Lion's management or Food
10   Lion's staff to look and say, you did a good job and
11   signoff on it?
12             MR. DAVEY:  Objection.  Go ahead.
13             MR. O'BRIEN:  Objection.
14             THE WITNESS:  Yes, we would have to -- so when
15        they come, we would clock them in.  And then when
16        it's time for them to leave, we would clock them out
17        and then either put satisfactory or unsatisfactory.
18   BY MR. GREENBERG:
19        Q    Okay.  And would it be typical or appropriate
20   for somebody, a Food Lion employee to say to a cleaning
21   company, hey, be careful over by that cooler?  You know,
22   it's leaking?  It's sweating?
23             MR. DAVEY:  Objection.  Go ahead.
24             MR. O'BRIEN:  I will object as well.
25             THE WITNESS:  Not to my knowledge.
```

Deposition of Logan Fox                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1   BY MR. GREENBERG:
 2        Q    Okay.  I want to go back.  You talked about
 3   Uni-First.
 4             Whose decision was it to pick that particular
 5   mat that was in front of the cooler on the day she fell?
 6   Ms. Rittersbacher fell?
 7             MR. DAVEY:  Objection.  Go ahead.
 8             THE WITNESS:  To pick that mat?
 9   BY MR. GREENBERG:
10        Q    Yeah, that type of mat?  You know what mat I'm
11   talking about, right?
12        A    Yes.
13        Q    You described it.  You saw it.
14        A    Those are the same mats that the company has
15   been using probably before I even started working there.
16        Q    Sure.  Are there any holes -- it's a plastic
17   mat that has like a fiber material on top, correct?
18        A    Correct.
19        Q    Okay.  But on the bottom, it's just straight
20   plastic, correct?
21             MR. DAVEY:  Objection.  Go ahead.
22             THE WITNESS:  Yes.
23   BY MR. GREENBERG:
24        Q    Okay.  So if there's something wet underneath,
25   it becomes slippery?
```

Deposition of Logan Fox                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
1              Do you agree with that?

2              MR. DAVEY:  Objection; calls for speculation.

3         Go ahead.

4    BY MR. GREENBERG:

5         Q    Based on your experience of seeing those types

6    of mats?

7              MR. DAVEY:  Same objection; calls for an expert

8         opinion.  Go ahead.

9              THE WITNESS:  No.

10   BY MR. GREENBERG:

11        Q    Okay.  So if there was water under there or a

12   soapy substance under there because it doesn't have

13   aerated holes, you don't think that on a hard floor it

14   would just slide?

15             MR. DAVEY:  Objection; asked and answered.

16   BY MR. GREENBERG:

17        Q    You can answer.

18        A    In a perfect circumstance, it may.

19        Q    Well, you got me there.

20             What do you mean a perfect circumstance?

21             MR. DAVEY:  Same objection.  Go ahead.

22   BY MR. GREENBERG:

23        Q    Yeah, go on.

24        A    So during the incident, Ms. Rittersbacher

25   explained how she fell.
```

Deposition of Logan Fox                          Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1        Q     Correct.
 2        A     And I tried to recreate how she did it.  And I
 3   couldn't move the mat the way she did it.
 4        Q     Okay.  I'd like to show you -- bear with me --
 5              For some reason, this is not working.  Hold
 6   on.  Bear with me.  I'd like to show you what's marked
 7   as floor photo 2.
 8              Can you see that?
 9        A     Yes.
10        Q     Do you see this foot right here (indicating)?
11        A     Yes.
12        Q     Do you know if that's you?
13        A     No.
14        Q     Okay.  And do you know if this is the area
15   where Ms. Rittersbacher fell?
16              MR. DAVEY:  Objection.  Go ahead.
17              THE WITNESS:  It looks about right.
18   BY MR. GREENBERG:
19        Q     Okay.  And I'd like to show thank you the next
20   -- do you see that?  For the record, this is floor photo
21   three.
22              MR. DAVEY:  We're looking at the same photo.
23          It hasn't changed.
24              MR. GREENBERG:  You've got to love technology.
25   BY MR. GREENBERG:
```

Deposition of Logan Fox                          Jasmine Rittersbacher vs. Food Lion, LLC, et al.

1       Q    Can you see that now?

2       A    **Yes.**

3       Q    Okay.  You can see the mat has been rolled

4   back?

5       A    **Yes.**

6       Q    And there's a substance underneath?

7       A    **Yes.**

8       Q    Okay.  Is that what it looked like the day

9   Ms. Rittersbacher fell?

10      A    **I'm going to assume so.  If that's the date**

11  **from the incident, then.**

12      Q    Sure.  I don't want you to assume anything.

13           Do you have a recollection that that's what it

14  looked like when you pulled back the mat?

15      A    **I believe so.**

16      Q    Okay.  I'd like to show you the next --  do

17  you see this (indicating)?  There's a gentleman standing

18  here bent over?

19      A    **Yes.**

20      Q    Okay.  Who is this gentleman?

21      A    **That is Ryan Elliot.**

22      Q    All right.  And do you know when these

23  pictures were taken?

24      A    **No.**

25      Q    All right.  And likewise, you don't know who

Deposition of Logan Fox                           Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1    took them?

 2        A    No.

 3        Q    And if I may, see where my mouse is down here?

 4        A    Yes.

 5        Q    Okay.  After Ms. Rittersbacher fell -- and you

 6    would agree she fell like right in this corner right

 7    here (indicating)?

 8        A    Yes.

 9             MR. DAVEY:  Objection.  Go ahead.

10    BY MR. GREENBERG:

11        Q    That Ms. Rittersbacher would have been -- or

12    at least had been sitting right off to where my mouse

13    would have been?  So back behind to the right of this

14    (indicating) gentleman?

15             MR. DAVEY:  Objection.  Go ahead.

16             THE WITNESS:  I believe so.

17    BY MR. GREENBERG:

18        Q    Okay.  Please bear with me.  And again, that's

19    what it looks like backed up.  So when you indicate that

20    it was sweating, the water would come out from where my

21    cursor is, would come out like on the bottom of this

22    unit and just get underneath?

23             MR. DAVEY:  Objection.  Go ahead.

24             THE WITNESS:  Yes.

25    BY MR. GREENBERG:
```

Deposition of Logan Fox                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1        Q    Okay.  I think that was the last -- well,
 2   there's just another picture.  And that's -- I
 3   apologize.  I have now gone through floor photos 2
 4   through six.
 5             And to the best of your recollection.  I
 6   apologize, Ryan -- what was his last name?
 7        A    Elliot.
 8        Q    Elliot, right.  And after Ms. Rittersbacher
 9   fell, you were the first to approach her?
10             MR. DAVEY:  Objection.  Go ahead.
11             THE WITNESS:  Yes.
12   BY MR. GREENBERG:
13        Q    And then Mr. Elliot came to help afterwards?
14        A    He was over to the left, and I had asked him to
15   get a chair.
16        Q    Okay.  And she thanks you for that.  And
17   Ms. Rittersbacher sat down in the chair?
18        A    Yes.
19        Q    Okay.  And -- bear with me.  Were you trained
20   with -- or trained to learn OSHA?
21             MR. DAVEY:  Objection.  Go ahead.
22   BY MR. GREENBERG:
23        Q    Occupational Safety and Health Administration
24   rules?
25             MR. DAVEY:  Objection.  Go ahead.
```

Deposition of Logan Fox                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1              THE WITNESS:  Yes.  I haven't -- I remember --
 2         I know what OSHA is.  I probably did receive my
 3         training when I first started.  I can't remember
 4         everything though.
 5         Q    Sure.  And I guess now, as assistant manager,
 6    part of your duties are to enforce the OSHA laws at
 7    Food Lion, correct?
 8              MR. DAVEY:  Objection.  Go ahead.
 9              THE WITNESS:  Yes.
10    BY MR. GREENBERG:
11         Q    And you're aware -- well, forget whether
12    you're aware or not.  The CBTs that you get -- since I
13    haven't seen them, and I'd like to leave it open just in
14    case the CBTs give me additional information that I need
15    to question you on, but does the CBTs talk about the
16    OSHA laws regarding safe floors and ways to avoid
17    injuries?
18              MR. DAVEY:  Objection.  Go ahead.
19              THE WITNESS:  I believe so, yes.
20    BY MR. GREENBERG:
21         Q    Okay.  And are you aware that a floor mat
22    should only be used as a temporary floor covering?  It
23    should not be there all the time?
24              MR. DAVEY:  Objection; calls for an expert
25         opinion.
```

Deposition of Logan Fox                           Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1   BY MR. GREENBERG:

 2        Q    Do you know?

 3        A    I don't know on that answer.

 4        Q    Okay.  So that wasn't part of the CBT?

 5             MR. DAVEY:  Objection; asked and answered.

 6             THE WITNESS:  No.

 7   BY MR. GREENBERG:

 8        Q    Okay.  Do you agree that while floor mats are

 9   a source of preventing slip and falls, it's the

10   underlying issue that would create the slippery

11   situation that should be repaired?

12             MR. DAVEY:  Objection; calls for speculation;

13        calls for hypothetical.

14             MR. O'BRIEN:  Objection.

15   BY MR. GREENBERG:

16        Q    You can answer?

17        A    Can you repeat the question, please?

18        Q    Yeah, sure.  So do you agree that floor mats,

19   while their good for hoping to prevent slip and falls

20   and that exposure, that the underlying issue that

21   creates the need for a mat should be fixed?

22             MR. DAVEY:  Same objection.  Go ahead.

23             THE WITNESS:  I don't know how to answer that.

24        I mean, I believe that the mats are there so nobody

25        slips and fall, but they are also apart of the
```

Deposition of Logan Fox                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1        layout of the store.
 2     BY MR. GREENBERG:
 3        Q    Okay.  Do you know what the substance was that
 4     was under that mat?
 5             MR. O'BRIEN:  Objection.
 6             THE WITNESS:  No.
 7             MR. GREENBERG:  Wait.  I'm sorry, Mr. O'Brien
 8        said something.
 9             MR. O'BRIEN:  I was objecting.  You can answer.
10             THE WITNESS:  No, I do not.
11     BY MR. GREENBERG:
12        Q    Did you smell it?
13             MR. O'BRIEN:  Objection.
14             THE WITNESS:  I did not.
15     BY MR. GREENBERG:
16        Q    Did you touch it?  I'm not going to ask you if
17     you tasted it?
18             MR. O'BRIEN:  Objection.
19             THE WITNESS:  I don't recall.
20     BY MR. GREENBERG:
21        Q    Okay.  How long before June 18th, 2019 had
22     that mat been in front of that unit?
23             MR. DAVEY:  Objection.  Go ahead.
24             THE WITNESS:  I don't know a specific amount of
25        time.
```

Deposition of Logan Fox                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1    BY MR. GREENBERG:

 2         Q    Would there be any record of how long that mat

 3    had been there, whether it be through Uni-First or a

 4    manager or some Food Lion?  You know, I don't know if

 5    you keep track of all of that stuff in back.  I haven't

 6    seen it?

 7              MR. DAVEY:  Objection.  Go ahead.

 8              THE WITNESS:  I don't know.

 9    BY MR. GREENBERG:

10         Q    Okay.  Do you keep track of when mats are

11    placed, especially the ones that -- or the one that I

12    showed you on June 18th, 2019?

13         A    No.

14         Q    When was the last time you saw the video?

15         A    I don't recall.

16         Q    Okay.  I'm going to show you this real

17    quickly.

18              Can you see it?

19              (Video playing.)

20         A    Yeah.

21         Q    So to make sure everybody's correct, this is

22    the mat over here (indicating), correct?  Where she fell

23    in front of the floral display?

24         A    Yes.

25         Q    And this is Mr. Elliot?
```

1        **A    Yes.**

2        Q    And -- okay.  And I'm going to take us -- bear

3    with me.

4             Okay.  Did you just see Ms. Rittersbacher

5    fall?

6        **A    Yes.**

7        Q    All right.  And you have seen that before?

8    Here let me play that one more time.  Whoop, bear with

9    me.  I'm going to get it right up there.

10            And you can see Ms. Rittersbacher fell on that

11   left corner of the mat that was pulled up in the

12   picture?

13       **A    Yes.**

14            MR. DAVEY:  Objection.  Go ahead.

15   BY MR. GREENBERG:

16       Q    She fell on the left top corner?

17            MR. DAVEY:  Objection.  Go ahead.

18            THE WITNESS:  Yes.

19   BY MR. GREENBERG:

20       Q    She wasn't running?

21       **A    No.**

22       Q    All right.  And she fell -- it appears to be

23   straight down; she didn't fall backwards?

24       **A    That's what it looks like.**

25       Q    And so for the record, that is at 11 minutes

Deposition of Logan Fox

Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1   and 46 seconds -- well, about 46 seconds.
 2          Where were you at the time?  And how did you
 3   find out that she had fallen?
 4          MR. DAVEY:  Objection.  Go ahead.
 5          THE WITNESS:  I was close to the front end, and
 6      I overheard another associate saying to my front end
 7      manager at the time that a lady fell over in
 8      produce.
 9   BY MR. GREENBERG:
10      Q    Okay.  So watch, because I just want to make
11   sure.  Take a look right on the right side and see if
12   that's you walking up.
13          See how somebody with a blue shirt just walked
14   up?  Never mind, that may be Mr. Elliot.
15          Do you know if Mr. Elliot go to her first, you
16   got to her first?
17      A    I don't know.
18      Q    Yeah, I'm trying to make it bigger, but --
19      A    That's not me.
20      Q    Okay.  All right.  And at some point, you come
21   up?
22      A    Yeah.
23      Q    What, if anything, do you recall her saying
24   when you went up and talked to her?
25      A    I don't recall that conversation.
```

1       Q    Did you record it?

2       **A    No.**

3       Q    Okay.  Do you know if Mr. Elliot recorded any

4    of this on a cellphone or a video recorder or audio

5    recorder?

6       **A    No.**

7       Q    And other than this one camera that we're

8    looking at right here, do you know if there are any

9    other cameras that may have picked up this incident

10   where she fell on that mat?

11      **A    No.**

12      Q    Okay.  And at some point -- and I don't have

13   the full breakdown, but at some point I believe you do

14   come up -- I mean, it was pretty clear it was you.

15   What, if anything, did you do when you got to her?

16      **A    I asked her if she's okay.  I asked what**

17   **happened.  And I believe I asked if she need medical**

18   **attention.**

19      Q    Okay.  Let's start off -- when you asked her

20   what happened, do you remember what she said?

21      **A    No, I don't.**

22      Q    Okay.  Did you write that down anywhere?

23      **A    No.**

24      Q    As we're sitting here today, do you think she

25   said anything other than I was just walking and this mat

Deposition of Logan Fox                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1   slid out from in front of me?
 2           MR. DAVEY:  Objection.  Go ahead.
 3           THE WITNESS:  She might have, but I don't
 4      recall.
 5   BY MR. GREENBERG:
 6      Q    No.  What I'm kind of getting at is, she
 7   didn't tell you like a weird story?  She just said --
 8   you know, or else you probably would have written that
 9   down, right?
10           MR. O'BRIEN:  Objection.
11           MR. DAVEY:  Objection.  Go ahead.
12           THE WITNESS:  No, she didn't -- no, nothing
13      like that.  I know I don't -- I have a fairly decent
14      memory, but it wasn't nothing crazy.
15   BY MR. GREENBERG:
16      Q    Sure.  And likewise, if she tried saying, you
17   know, boxes fell on her or something other than the mat
18   just sliding out from under her, you would've written
19   that, right?
20           MR. DAVEY:  Objection.  Go ahead.
21           THE WITNESS:  I probably wouldn't have written
22      that down, but I would have remembered that.
23   BY MR. GREENBERG:
24      Q    Got you.  So what it appears -- and I can let
25   this play, but I can tell you that this goes -- this
```

Deposition of Logan Fox                              Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1   goes until -- where the video cuts off is about 60

 2   minute, and we're only at 14 minutes and 53 seconds.

 3          During the time that she fell, do you remember

 4   picking up the mat and removing it?

 5      A    I don't recall.

 6      Q    Okay.  If the video -- and it's not a trick

 7   question.  It happened two plus years ago.

 8          If the video doesn't show that the mat moved,

 9   you know, that anybody picked it up and took it out,

10   does that sound about right that nobody moved it?

11          MR. DAVEY:  Objection.  Go ahead.

12          THE WITNESS:  The video tells the truth.

13   BY MR. GREENBERG:

14      Q    Okay.  So that's number one.  Number two, do

15   you have a specific recollection that anybody even

16   cleaned that gunk out from under it.

17          MR. DAVEY:  Objection.

18          MR. O'BRIEN:  Objection.

19          THE WITNESS:  I don't have any recollection.

20   BY MR. GREENBERG:

21      Q    Okay.  Likewise, there are people in the

22   store, correct?

23      A    Yes.

24      Q    I mean, literally, you can see now there are

25   just people walking all up and down in this area, even
```

Deposition of Logan Fox                          Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1   near the floral -- this floral cooler, correct?
 2       A    Correct.
 3       Q    Okay.  You would agree with me that nobody put
 4   down a sign until much later?  You know, one of those
 5   yellow cones?
 6            MR. DAVEY:  Objection.  Go ahead.
 7            THE WITNESS:  I don't have any recollection.
 8   BY MR. GREENBERG:
 9       Q    Okay.  Let me do this, because I never want to
10   lie.  If I take you to -- bear with me.
11            So right here (indicating), 20 minutes and 38
12   seconds was the first time somebody put a cone down?
13   About nine minutes plus?
14       A    Yes.
15       Q    That's a cone right there, correct?  I think
16   you saw a little better as they brought it out?
17       A    Yes.
18       Q    All right.  Do you have an independent
19   recollection -- you said the next question you asked
20   her, "Do you need any medical help," correct?
21       A    Correct.
22       Q    Do you remember if she told you she was hurt?
23       A    I believe she -- I don't remember the whole
24   conversation.  But the only thing I remember is she told
25   me her -- I don't even know what side knee it was --
```

Deposition of Logan Fox                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

1  her knee hurt.

2      Q    Okay.  And were you able to look to see -- she

3  was wearing shorts correct?

4      A    I don't remember.

5      Q    Okay.  If I tell you the video shows she was

6  wearing shorts and the picture afterward shows she was

7  wearing shorts, you don't have a recollection if there

8  was any, like, cut or bruise on her knee that you would

9  have seen?

10     A    No.  There was no cut or bruise.

11     Q    Okay.  Bear with me one second, and I'm going

12 to show you a picture.  Hold on one second.

13         Mr. Fox, as you were sitting there over the

14 course of about 50 minutes, do you remember her knee

15 swelling up?

16     A    Wow.  I remember it being red.

17     Q    Yeah.

18     A    I don't remember it being to that point.

19     Q    Okay.  And there's a -- that's knee photo

20 four.  That's a side view of knee photo two.

21         You would agree that's pretty swollen?

22         MR. DAVEY:  Objection; calls for speculation.

23     Go ahead.

24         THE WITNESS:  Yeah.

25 BY MR. GREENBERG:

Deposition of Logan Fox                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
1        Q     Okay.  And again, this happened a little while

2   ago, but she seemed to indicate that that happened at

3   the time she went down on her knee?

4              MR. DAVEY:  Objection.  Go ahead.

5   BY MR. GREENBERG:

6        Q     If you recall?

7              MR. DAVEY:  Same objection.

8              THE WITNESS:  I don't know.  Are you asking if

9          her knee looked like that as soon as she hit the

10         ground?

11  BY MR. GREENBERG:

12       Q     No, no.  During the 50 minutes that you were

13  sitting there with her?

14             MR. DAVEY:  Objection.  Go ahead.

15  BY MR. GREENBERG:

16       Q     And I say that to go back to the video.  We're

17  at about 23 minutes 57 seconds.  It looked like

18  Mr. Elliot -- we missed it because it was still playing

19  in the background -- went and got her a chair, and she's

20  sitting right here (indicating), correct?

21       A     Yes.

22       Q     And she sat there for a period of time until

23  the EMTs got this?

24       A     Correct.

25       Q     And they examined her, tried to get her to
```

Deposition of Logan Fox                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1    stand.  And then when she couldn't, they put her on a
 2    gurney and took her out?
 3              MR. DAVEY:  Objection.  Go ahead.
 4              THE WITNESS:  I don't remember.
 5    BY MR. GREENBERG:
 6         Q    Okay.  Let me -- those were the EMTs, I
 7    guessing, only because they have EMT big on the back of
 8    their shirts.  And you can see they brought in this
 9    stretcher.
10         A    Yes.
11         Q    Were you there until the end?  Until they put
12    her on the stretcher and took her out?
13         A    I don't remember.  I don't even see myself at
14    the moment.
15         Q    Yes.  So my guess is, only because I see you
16    pop in every now and then, I think you were off to the
17    right.  I know that Mr. Elliot was there, because he
18    walks over here a few times.  But do you remember
19    hanging around just to make sure she was okay?
20              MR. DAVEY:  Objection.  Go ahead.
21              THE WITNESS:  I remember hanging around until
22         the EMTs got there.
23    BY MR. GREENBERG
24         Q    Okay.  And then -- at this point, they take
25    her out, correct?
```

Deposition of Logan Fox                     Jasmine Rittersbacher vs. Food Lion, LLC, et al.

1        **A      It looks like it, yes.**

2        Q     Okay.  And they're taking her up to the front

3   of the store, I assume?

4        **A      Yes.**

5        Q     Okay.  They take her out, and you can see

6   she's wearing shorts.  I don't know if you noticed that,

7   but --

8            And there's a woman who is carrying what

9   appears to be my client's personal affects, her

10   pocketbook.

11           Do you know who that woman is?

12        **A      No.**

13        Q     So you don't know if she works for the store,

14   or a family member?

15        **A      No.  Because I think by this time, I was gone.**

16        Q     Oh, okay.  Why were you gone?

17        **A      I let the EMTs handle this situation.  I'm not**

18   **an EMT.**

19        Q     Okay.  So let me ask you a question, Mr. Fox:

20   On the right side, while there's a yellow cone that sit

21   right here, you would agree that the mat is still laying

22   in the same place, correct?

23           MR. DAVEY:  Objection.  Go ahead.

24           MR. O'BRIEN:  Objection.

25           THE WITNESS:  It looks like it, yes.

Deposition of Logan Fox                     Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1    BY MR. GREENBERG:
 2         Q    Okay.  And you would agree -- and I can have
 3    you literally sit through 60 minutes of this -- at no
 4    point did it look like the mat was pulled up and
 5    anything was cleaned underneath.
 6              Do you have an independent recollection that
 7    at any time that occurred?
 8              MR. DAVEY:  Objection.
 9              MR. O'BRIEN:  Objection.
10              THE WITNESS:  No.  Like I said, I have already
11         left at the this point, so I don't know what
12         happened afterwards.
13    BY MR. GREENBERG:
14         Q    Okay.  So you would agree, although you can't
15    see him right now, Mr. Elliot, at least stayed?
16              What was Mr. Elliott's position at the time?
17         A    I can't remember if -- well, he's a produce
18    associate.  I can't remember at that time if he was a
19    full-time or part-time.
20         Q    Okay.  So other than this yellow cone right
21    here, is there anything to let people know to stay away
22    from that mat?
23              MR. DAVEY:  Objection.  Go ahead.
24              THE WITNESS:  It don't look like it, no.
25    BY MR. GREENBERG:
```

Deposition of Logan Fox                          Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1        Q    Okay.  And likewise, I mean, you were gone.
 2   And I will tell you -- and I'm not sure if it's before
 3   or after this 51 minutes and 39 seconds where we are
 4   now, but I had seen Mr. Elliot a few times, and he
 5   walked over to this display unit right here
 6   (indicating).
 7        A    Okay.
 8        Q    You would agree that there's nobody standing
 9   over here telling people to watch out for this mat?
10            MR. DAVEY:  Objection.
11            MR. O'BRIEN:  Objection.
12            THE WITNESS:  No.
13   BY MR. GREENBERG:
14        Q    Okay.  Whose duty is it to warn the public
15   that there's something under this mat, and it can be
16   dangerous?
17            MR. O'BRIEN:  Objection.
18            MR. DAVEY:  Objection; calls for speculation.
19        Go ahead.
20            THE WITNESS:  The wet floor sign.  I mean, we
21        don't have someone designated to stand there and say
22        hey, don't step here.  I mean, that doesn't really
23        happen.  This type incident doesn't happen, so we
24        don't have somebody standing there.
25   BY MR. GREENBERG:
```

1      Q     Okay.  I just saw Mr. Elliot walk.  And he

2    keeps -- you know, he's doing, I guess, whatever with

3    produce.  But there people walking over into that area,

4    you would agree?

5        **A     Yes.**

6      Q     And -- okay.  And then the video ends.

7            (Video stopped. )

8    BY MR. GREENBERG:

9      Q     So during that time -- well, strike that.

10           Did you or anyone else who works for Food Lion

11   get the name of any witnesses?

12       **A     No.**

13     Q     Did you or anybody else, while she was sitting

14   there before the EMT's got there, offer her an ice pack

15   or Tylenol or anything, if you can recall?

16       **A     Yes, I offered her an ice pack.  Well,**

17   **something to put on her knee.**

18     Q     Right.  A compress?

19       **A     Yes.**

20     Q     I couldn't tell.  Do you know if she did that,

21   or if you got that for her?

22       **A     I don't remember if we got her something or**

23   **not.**

24     Q     All right.  Would you have kept track of that?

25   Are you required -- like, if you used an ice pack, or if

Deposition of Logan Fox                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1    you had to use a cold compress, or Tylenol, if you give

 2    it to a customer, are you required to document that?

 3         A    No.

 4         Q    Okay.  The entire time, do you know if Ms.

 5    Rittersbacher was in pain?

 6         A    I mean, I would --

 7              MR. DAVEY:  Objection.  Go ahead.

 8              THE WITNESS:  I believe she would be.

 9    BY MR. GREENBERG:

10         Q    Okay.  Do you recall if she was embarrassed

11    sitting there waiting for the help --

12              MR. DAVEY:  Objection; calls for speculation.

13    BY MR. GREENBERG:

14         Q    Did it appear do you that Ms. Rittersbacher

15    was embarrassing sitting there for over 48 minutes --

16              MR. DAVEY:  Objection.

17    BY MR. GREENBERG:

18         Q    -- after falling?

19              MR. O'BRIEN:  Objection.

20              THE WITNESS:  No.

21    BY MR. GREENBERG:

22         Q    No, it didn't appear so?

23         A    No.

24         Q    Did she seem upset?

25              MR. DAVEY:  Objection.
```

Deposition of Logan Fox                                   Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
1              MR. O'BRIEN:  Objection.

2              THE WITNESS:  She just seemed like she was in a

3         little bit of pain.

4    BY MR. GREENBERG:

5         Q    Okay.  Do you recall if she cried?

6         A    No.  I don't recall.  I mean --

7         Q    That's fine.  And again, it's been two plus

8    years.  What safety checks, if any, do you all -- and

9    I'm talking you all meaning Food Lion employees -- have

10   on a unit that you has sweat before or leaked before?

11   What safety checks do you have when you open up your

12   store to the public?

13             MR. DAVEY:  Objection.  Go ahead.

14             THE WITNESS:  I don't really know how to answer

15        that.

16   BY MR. GREENBERG:

17        Q    You know what a safety check is, right?

18        A    I do.

19        Q    Okay.  Do you have any safety checks for when

20   you know a particular unit has had issues to go and

21   check on it to make sure that more people don't hurt

22   themselves?

23             MR. DAVEY:  Objection.

24   BY MR. GREENBERG:

25        Q    Or you know, the staff?  The people -- the
```

Deposition of Logan Fox                                   Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1   employees of Food Lion also, not just the public?
 2            MR. DAVEY:  Objection.
 3            THE WITNESS:  So I mean, there was no safety
 4       check, no.
 5   BY MR. GREENBERG:
 6       Q    Okay.  After this, did you report the leaking
 7   unit to -- you said online, like digital.
 8            Did you put in a work repair order?
 9       A    I don't remember.
10       Q    All right.  And if you did, that would be
11   where?  I mean, how do I find that?
12       A    I couldn't tell you.
13       Q    Or how would I normally find it?  Like, if
14   today you went in to work and put in a work order, how
15   could I find that?
16       A    You personally, not being a Food Lion employee,
17   employee, you would have to call corporate.
18       Q    I'll give another step.  Well, okay.  So
19   corporate would have access if you put in a work order?
20       A    I would assume so.  I'm not 100 percent sure.
21       Q    All right.  And I'm asking you to go back in
22   time.
23            Do you recall putting in a work order for this
24   unit?
25            MR. DAVEY:  Objection; asked and answered.
```

Deposition of Logan Fox                           Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1    BY MR. GREENBERG:

 2         Q    You can answer.

 3         A    Okay.  I don't recall.

 4         Q    Okay.  Do you know if within a short period of

 5    time that that unit was fixed?  Well, I know it's not

 6    fully fixed, but it was fixed for a period of time.

 7              MR. DAVEY:  Objection.  Go ahead.

 8              MR. O'BRIEN:  Objection.

 9              THE WITNESS:  I don't recall.

10    BY MR. GREENBERG:

11         Q    Do you know if you, personally, requested

12    additional mats to replace that one that clearly had

13    something under there?

14              MR. DAVEY:  Objection.

15              MR. O'BRIEN:  Objection.

16              THE WITNESS:  No.

17    BY MR. GREENBERG:

18         Q    Would that have been your job, or somebody

19    else's?

20         A    I guess, it would have been a member of

21    management.

22         Q    I'm sorry, one more time?

23         A    A member of management.

24         Q    Okay.  At the time, you were a member of

25    management, right?
```

Deposition of Logan Fox                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

1      **A    I was, but I don't recall getting mats or**

2   **asking for mats.**

3      Q   Okay.  Listen, I'm not trying to place

4   anything on you.  Understand that.  I just want to know.

5   You see something's under this mat, whose job -- walk me

6   through if this happened right now, okay?  What would

7   you have done, right now, if you were at work.  You saw

8   this gunk underneath the mat, what would you have done

9   differently than you did on June 18th, 2019?

10          MR. O'BRIEN:  Objection.

11          MR. DAVEY:  Objection.  Go ahead.

12          THE WITNESS:  If it were to happen right now, I

13      would probably roll the mat up, run the floor

14      machine underneath of it, and put the mat back down.

15      Q   Okay.  And I assume -- and I'm not putting

16   words in your mouth -- but you would have wiped the

17   bottom of that mat because it's just plastic?

18          MR. DAVEY:  Objection.

19          THE WITNESS:  It's --

20   BY MR. GREENBERG:

21      Q   Would you have wiped it?

22      **A    It's rubber.**

23      Q   What did I say?  Plastic?

24      **A    Yes.**

25      Q   I meant rubber.  It's not a coarse material.

Deposition of Logan Fox                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1              Would you have wiped the rubber down to get
 2     the gunk off that side?
 3              MR. O'BRIEN:  Objection.
 4              MR. DAVEY:  Objection.  Go ahead.
 5              THE WITNESS:  I might have.
 6     BY MR. GREENBERG:
 7         Q    Okay.  And do you recall if you ever -- now I
 8     know you didn't do that on June 18th of 2019, but do you
 9     know if you requested different mats or better mats, not
10     just that solid rubber underneath?
11              MR. DAVEY:  Objection.  Go ahead.
12              THE WITNESS:  No.
13     BY MR. GREENBERG:
14         Q    Okay.  After the fall happened and after she
15     was removed from the storage, do you recall discussing
16     with your employer anything about the fall?
17         A    I mean, no.  I told my store manager about it,
18     but that was about it.
19         Q    I would like to show you -- and do you
20     remember what you told your store manager?
21         A    No.
22         Q    And again, that was Keith Parlier?
23         A    Yes.
24         Q    Okay, hold on one second.
25              Were you required to fill out a report?
```

Deposition of Logan Fox                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
1        A    Yes.

2        Q    Okay.  I would like to show you this thing

3    called GL initial report.

4             Is that the report you filled out?

5             Let me try to blow it up a little.  Or was

6    there a different report?  Did you handwrite it or type

7    it?

8        A    Typed it.

9        Q    Okay.  Was this the report?

10       A    I mean, it looks like it.  I mean, this looks

11   different than how I submitted.

12       Q    Okay.  Tell me how.

13       A    Well, it's a different layout.

14       Q    Oh, okay.  But the facts are the same?  The

15   date, June 18th, 2019.  Incident time 16:30, so 4:30 in

16   the afternoon reported by customer.

17       A    It looks about right.

18       Q    Okay.  So you put in those facts; it just

19   prints out differently?

20       A    We don't get a copy of it.

21       Q    No, no.  What I'm -- okay, that's fine.  But

22   what I'm saying is, you put in this information,

23   correct?

24       A    Correct.

25       Q    Okay.  And because it says right here,
```

Deposition of Logan Fox                                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

1    "reported to Logan Fox," which is you.

2         A    Yes.

3         Q    Okay.  "Nature of incident:  Mats/rugs"?

4         A    Yes.

5         Q    This is somewhere on the screen.  Yeah, I

6    think it's ZAI0001, incident report and personnel files.

7              "Type of incident:  Bodily injury."  My

8    client, her address, and your description.  Let me make

9    this wider, because it's -- now I see why.  It cutoff.

10             It says, "Customer was walking by the floral

11   section in produce.  She stepped on the mat rug, but it

12   slipped it out from under her, causing her to fall

13   straight;" is that correct?

14             MR. DAVEY:  Larry, I don't see that on my

15        screen.

16             MR. O'BRIEN:  I don't know see it either.

17             MR. GREENBERG:  See right here (indicating).

18             MR. DAVEY:  We can see that now.

19             MR. GREENBERG:  Yeah, it paused for some

20        reason.  I heard it beep, but know it's back.

21   BY MR. GREENBERG:

22        Q    So you typed in this description of the

23   incident?

24        A    Yes.

25        Q    Okay.  And then down here below, was the area

Deposition of Logan Fox                     Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1    inspected immediately?  You put yes.

 2              Was a foreign substance on the floor?  You put

 3    yes.  And you wrote, "If yes, please describe."  You

 4    wrote, "There was water underneath the mat rug, but not

 5    visible on the sales floor where they were laying."

 6              You wrote that?

 7        A    Yes.

 8        Q    Okay.  And the water was obviously from the

 9    unit.  You didn't see anybody in that video who spilled

10    anything, correct?

11              MR. DAVEY:  Objection.

12              MR. O'BRIEN:  Objection.

13              THE WITNESS:  I mean, I guess so.  That water

14        could have been from anywhere really.  But I mean --

15    BY MR. GREENBERG:

16        Q    Sure.  And can I show you the video if you

17    want for a good 20 -- or at least 12 minutes -- well,

18    strike that.  The video speaks for itself.

19              Did you have anyone come up afterwards

20    suggesting, oh, I'm so sorry, I spilled something?

21        A    No.

22        Q    Okay.  Did you have anyone -- when you

23    approached -- and it actually says it right here.  There

24    was no water anywhere outside of the mat, correct?  That

25    you saw?
```

Deposition of Logan Fox                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

1      **A      Not to my knowledge, no.  Not by looking at it.**

2   **If I typed it, it wasn't.**

3      Q    I'm sorry, say that again.

4      **A      To my knowledge, no, there was no water.  But**

5   **if I typed it, then I guess there wasn't.**

6      Q    Okay.  And then, so this second page, page

7   two, last associate to view the area.  And then it asks

8   the title, the time, the time the area was last swept.

9           How come none of this is filled out?

10     **A      Because I didn't know the answer.**

11     Q    Okay.  How would you have found out the

12  answer?

13     **A      I guess looked or asking somebody.**

14     Q    Okay.  Asking probably is the number one

15  answer.  But number two, when a customer cleans a

16  bathroom, or sweeps a floor, are they required to fill a

17  log in?

18          MR. O'BRIEN:  Objection.  Go ahead.

19          THE WITNESS:  When a customer?

20  BY MR. GREENBERG:

21     Q    No, no.  Did I say customer?  When an employee

22  cleans a bathroom or sweeps a floor, are they required

23  to document that they did it?

24          MR. DAVEY:  Objection.  Go ahead.

25          THE WITNESS:  Our QAs, our quality assurance

Deposition of Logan Fox                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

1          associates, they have a checklist that they go by.

2     BY MR. GREENBERG:

3          Q    Okay.  And part of that checklist is when some

4     regular period --

5          **A    Of daily cleaning, yes.**

6          Q    Okay.  So this is a produce department,

7     correct, where this occurred?

8          **A    Yes.**

9          Q    There's items that are --  that can fall on

10    the ground and cause tripping or slipping hazards?  Do

11    you agree?

12              MR. DAVEY:  Objection.

13              MR. O'BRIEN:  I'll object also.

14    BY MR. GREENBERG:

15         Q    Mr. Fox, you can answer.  They just both

16    objected.

17         **A    Yes.**

18         Q    Okay.  And you know, then, you've been in the

19    business a long time.

20              Is it the responsibility to have somebody go

21    through that produce section -- not once a day, but

22    multiple times a day -- to make sure that there's not

23    something on the ground where somebody could slip?

24              MR. DAVEY:  Objection.

25              MR. O'BRIEN:  Objection.

Deposition of Logan Fox                          Jasmine Rittersbacher vs. Food Lion, LLC, et al.

1          THE WITNESS:  I mean, it's their job to go

2      through the list.  But I mean, multiple -- they just

3      -- they make their way around the store multiple

4      times a day.

5      Q    And how often do they -- and you said it's a

6  quality assurance list?

7      **A    It's called a -- that's the name of the**

8  **employee's role, is that they just have a checklist.**

9      Q    And who is in charge of filling out this

10  checklist?

11     **A    They initial their name.**

12     Q    Okay.  And who is they?  The employee?

13     **A    The quality assurance associate.**

14     Q    Okay.  Let me make sure I understand this.

15  The quality assurance person is an employee of Food

16  Lion, correct?

17     **A    Yes.**

18     Q    Okay.  Are they also required to go and

19  inspect the area, or do people go and report to them and

20  say, look, I just walked around produce.  Everything's

21  good at 1:00 p.m.?  At 2:00 p.m.?  At 3:00 p.m.?

22     **A    No, nobody does that.  They have a checklist**

23  **that they go by.  And then -- you know, if there's an**

24  **incident or a spill --**

25     Q    Uh-huh.

Deposition of Logan Fox                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1        A    --  in any manner, they would be notified.  And
 2    then they would go clean it up.
 3        Q    Well, did anybody, to the best of your
 4    recollection, from quality insurance come to fix this
 5    issue?  To clean up this issue with Jasmine
 6    Rittersbacher?
 7              MR. DAVEY:  Objection.
 8              THE WITNESS:  I'm not sure.  I wasn't there.
 9    BY MR. GREENBERG:
10        Q    Whose responsibility is it to get Q and A to
11    come over to the area?  Or QA, sorry.
12              MR. DAVEY:  Objection.
13              THE WITNESS:  I mean, like I said, there's an
14         incident or a spill.  Anybody with a communicator
15         can let them know.
16    BY MR. GREENBERG:
17        Q    When you say "communicator," a radio?
18        A    Like a little walkie-talkie, yes.
19        Q    Okay.  So would that be on this report to say
20    who it was that called and who came over?
21              MR. DAVEY:  Objection to the form.  Go ahead.
22    BY MR. GREENBERG:
23        Q    Do you understand the question?
24        A    I do.
25        Q    Okay.  So go on and answer.  He already
```

Deposition of Logan Fox                        Jasmine Rittersbacher vs. Food Lion, LLC, et al.

1      objected.

2          A    No, that's not on the form.

3          Q    All right.  Do you believe -- strike that.

4               Who's required to fill out this -- what does

5      GL mean?

6          A    I have no clue.

7          Q    Okay.  Who's responsibility is it to fill out

8      a report following an injury, or an incident?

9          A    Any member of management.

10         Q    Okay.  So because you were -- well, why did

11     you fill this one out?

12         A    Well, because the front end manager that was

13     there didn't know how to do it.

14         Q    Is that Keith Parlier?

15         A    No.

16         Q    Who was the front end manager?

17         A    Her name was Kiara.

18         Q    With a K?

19         A    Yes.

20         Q    And she was -- do you know her last name, by

21     the way?

22         A    Johnson.

23         Q    Is she still employed?

24         A    No.

25         Q    Okay.  And she was front end manager?

Deposition of Logan Fox                                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

1      A      Yes.

2      Q      So when you say -- did you tell her go fill

3  out this report, and she said I don't know how to?

4      **A      She said she was going to.  And then she said**

5  **she forgot where to go, so I did it for her.**

6      Q      Explain what you mean didn't know where to go.

7      **A      She didn't know where --**

8             MR. DAVEY:  Objection.

9  BY MR. GREENBERG:

10     Q      I'm sorry, go on?

11     **A      She didn't know where on the computer to go.**

12     Q      Oh, I gotcha.  I thought you meant physically

13 a place to go?

14     **A      Oh, no.**

15     Q      Okay.  So she didn't know how to do it, so you

16 said, okay, fine I know how to do it.  I'll do it.  So

17 you filled this out.  And it's blank, so you didn't ask

18 anybody who was the last one to be in that area, right?

19     **A      I don't recall, no.**

20     Q      Okay.  The time the area was last swept?

21     **A      I don't recall.**

22     Q      Or who did it?  Who swept it?

23     **A      I don't recall, no.**

24     Q      Time it was last mopped and who did it?

25     **A      I don't recall, no.**

Deposition of Logan Fox                                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

1      Q     Okay.  And the question says, "Were warning

2   signs present?"  It says, "No."

3           It says, "Were there mats in the area?"  You

4   said, "Yes, because there was.

5           "Was the customer carrying anything?"  How did

6   you know this?

7      **A     I guess she had -- well, it says right there**

8   **she had a shopping cart.  I think she had her purse.**

9      Q     Okay.

10     **A     If she had her purse, somebody carried it out**

11  **from the video.**

12     Q     Yeah, yeah.  I was just wondering how you

13  knew.

14          And then it says, "Customer's left knee

15  started swelling up, and her kneecap was red."

16          Did you -- as we sit here now, do you remember

17  seeing that, or somebody told you that?

18     **A     I mean, if I wrote that, then I remember seeing**

19  **it.**

20     Q     I got it.  Customer -- you told us that she

21  sought medical treatment.

22          Did the customer exit with assistance?  And

23  you said unknown.  You were gone by that point?

24     **A     Yes.**

25     Q     Okay.  And you didn't ask anybody how she got

Deposition of Logan Fox                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1    out of the store?
 2        A    Well, I knew if paramedics were there, I'm
 3    pretty sure they were going take her.
 4        Q    Okay.  And here's one thing:  It says, "Were
 5    photographs taken?"
 6             Are you supposed to take photographs after
 7    somebody gets hurt in the store?
 8        A    It's not a requirement.
 9        Q    All right.  And there's -- do you remember --
10    because it kind of ends.  I mean, there's a third page.
11    It just says, "additional comments," but you didn't put
12    any.
13             Do you remember if there was anything you
14    wrote about -- and literally, I'm talking about being
15    typed or wrote with your hand -- regarding this
16    incident?
17        A    I don't recall.
18        Q    Okay.  And do you remember if there were any
19    other, like, with the days after -- well, forget that
20    question, because that was a bad one.
21             Do you remember when you typed that report?
22        A    I don't recall.
23        Q    Would it be have been within days?
24             MR. DAVEY:  Objection.  Go ahead.
25             THE WITNESS:  I would think -- yeah, yeah, yes.
```

Deposition of Logan Fox                           Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1    BY MR. GREENBERG:
 2        Q    Okay.  Did you ever get a phone call from
 3    anyone?  I'm not talking a lawyer, but anyone after she
 4    fell asking for an oral statement?  Like, where you had
 5    to tell them yeah, this is what happened.  I was
 6    standing there, and Ryan was standing there?
 7        A    I don't recall, no.
 8        Q    Okay.  And are you aware -- like, would you be
 9    aware -- I know you're an assistant manager.  Would you
10    be aware of other slip and falls that occur in your
11    store, in your Food Lion?
12             MR. DAVEY:  Objection.
13             THE WITNESS:  I mean, if one were to occur -- I
14         mean, if I wasn't there, somebody might tell me.
15    BY MR. GREENBERG:
16        Q    Right.  But there is no mechanism?  Like,
17    let's say you're not working today, right?  Because it
18    looks like you're in your house.
19        A    Yes, sir.
20        Q    So tomorrow if you went in, would somebody
21    come up to you and say, hey, man somebody fell
22    yesterday?
23             MR. DAVEY:  Objection.  Go ahead.
24             THE WITNESS:  I mean, they might.  I mean,
25         they're not required to always tell me everything,
```

Deposition of Logan Fox                                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1          because there's always another manager there.

 2          Q    Okay.  So you mentioned Uni-First.  And that

 3     is the mat company, correct?

 4               MR. DAVEY:  Objection.  Go ahead.

 5               THE WITNESS:  Aprons and mats, yes.

 6     BY MR. GREENBERG:

 7          Q    Sure.  Okay, aprons and mats.  Who is the

 8     company that would be hired to fix or to work on the can

 9     cooler?

10               MR. DAVEY:  Back in '19, Larry?

11               MR. GREENBERG:  I'm sorry, say that one more

12          time.

13               MR. DAVEY:  Back in '19?  Or now or?

14               MR. GREENBERG:  Yeah, sure.

15     BY MR. GREENBERG:

16          Q    Yeah, back in '19.

17          A    I don't know.  I don't know who it would be.

18     There's multiple, multiple companies.

19          Q    Yeah, like whether it's an HVAC unit or

20     refrigeration unit company, who would come in and fix

21     them?

22          A    Yeah.

23          Q    Okay.  Do you have any independent

24     knowledge -- like, as you're sitting here today, do you

25     recall seeing a company come out there to fix that unit,
```

Deposition of Logan Fox                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1    to work on that unit?
 2            MR. DAVEY:  Objection.  Go ahead.
 3            THE WITNESS:  Not that I recall.  Could I ask a
 4        question?  Can I get my charger?  My iPad is dying.
 5            MR. GREENBERG:  I'll do you one step better.
 6        I'm done.
 7            THE WITNESS:  Oh.
 8            Mr. Fox, if Mr. Counsel wants to ask you any
 9        questions, then yeah, you probably want to go get
10        your charger.
11            MR. O'BRIEN:  I have no questions.
12            MR. DAVEY:  I don't have any questions either.
13            Madame Reporter, we will read and sign.
14            THE REPORTER:  Counsel, are you ordering the
15        transcript?
16            MR. O'BRIEN:  Yes.  Can I get an electronic
17        copy, please?
18            THE REPORTER:  Mr. Davey, electronic for you as
19        well?
20            MR. DAVEY:  Yes, the full and the mini.
21            THE REPORTER:  And, Mr. Greenberg, you?
22            MR. GREENBERG:  Electronic as well.
23            (Witness excused.)
24            (The deposition concluded at 4:56 p.m.)
25                          -  -  -
```

Deposition of Logan Fox                                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1                        CERTIFICATE OF OATH

 2

 3

 4            I, the undersigned authority, certify that

 5    LOGAN FOX personally appeared before me and was duly

 6    sworn.

 7

 8            WITNESS my hand and official seal this 13th day

 9    of December, 2021.

10

11

12            _____

13            Lakesha Jackson

14            Notary Public, Commonwealth of Virginia

15

16

17

18

19

20

21

22

23

24

25
```

Deposition of Logan Fox                                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
1                    C E R T I F I C A T E

2

3

4          I, Lakesha Jackson, Professional Court Reporter,

5     do hereby certify that I was authorized to and did

6     stenographically report the deposition of LOGAN FOX;

7     that a review of the transcript was requested; and that

8     the transcript is a true and correct record of my

9     stenographic notes.

10

11         I further certify that I am not a relative,

12    employee, attorney or counsel of any of the parties, nor

13    am I a relative or employee of any of the parties'

14    attorney or counsel connected with the action, nor am I

15    financially interested in the action.

16

17         DATED this 11th day of January, 2022

18

19

20    _____

21         Lakesha Jackson

22         Professional Court Reporter

23

24

25
```

Deposition of Logan Fox                                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

```
 1                  E R R A T A   S H E E T

 2

 3            I, LOGAN FOX, the undersigned deponent, have

 4    read the foregoing pages of my deposition numbered

 5    1 through 94, and with the suggestions noted below, if

 6    any, these constitute a true and accurate transcription

 7    of my deposition given on the 13th day of December,

 8    2021, at the time and place stated therein.

 9

10    PAGE NO:    REMARKS

11    _____  _____

12    _____  _____

13    _____  _____

14    _____  _____

15    _____  _____

16    _____  _____

17    _____  _____

18    _____  _____

19    _____  _____

20    _____  _____

21    _____  _____

22    _____  _____

23

24                        _____

25                             LOGAN FOX
```

Deposition of Logan Fox                                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

**WORD INDEX**

**< 0 >**
07  16:*11*

**< 1 >**
1  95:*5*
1:00  84:*21*
10.1.21.jpg  38:*20*
10:00  48:*21*
100  75:*20*
11  13:*2*  14:*23*  47:*11*  60:*25*
11th  94:*17*
12  13:*3*  81:*17*
1233  2:*13*
13  1:*12*
13th  6:*1*  93:*8*  95:*7*
14  12:*14*  64:*2*
16  19:*8, 9, 17,*  20  21:*11, 12*
16:30  79:*15*
1600  2:*20*
18th  5:*14*  23:*21*  24:*6*  34:*18*  58:*21*  59:*12*  77:*9*  78:*8*  79:*15*
19  44:*5*  91:*10,*  13, 16
1st  40:*7*

**< 2 >**
2  52:*7*  55:*3*
2:00  84:*21*
20  65:*11*  81:*17*
2003  15:*16, 24*
20036  2:*14*
2007  12:*24*  14:*12, 23, 24*
2010  13:*1*
2011  13:*4*
2019  5:*14*  6:*1*  19:*7*  23:*22*  24:*6*  44:*5*  45:*24*  58:*21*  59:*12*  77:*9*  78:*8*  79:*15*

202.712.7000  2:*15*
2021  1:*12*  6:*1*  40:*7*  93:*9*  95:*8*
2022  94:*17*
20th  2:*13*
21  44:*4*
21202  2:*6, 21*
21631  6:*15*
23  67:*17*

**< 3 >**
3:00  1:*12*  6:*1*  84:*21*
38  65:*11*
39  71:*3*
3905  6:*14*

**< 4 >**
4:30  79:*15*
4:56  92:*24*
410.539.5250  2:*7*
410.752.0085  2:*22*
46  61:*1*
48  73:*15*

**< 5 >**
50  66:*14*  67:*12*
51  71:*3*
53  64:*2*
57  67:*17*

**< 6 >**
6  2:*5*
60  64:*1*  70:*3*

**< 7 >**
7  2:*20*

**< 8 >**
8th  2:*13*

**< 9 >**
9:30-ish  47:*9*
94  95:*5*

**< A >**

**ability**  7:*1*
**able**  11:*5*  66:*2*
**absolutely**  9:*21*
**acceptable**  18:*7*
**access**  75:*19*
**accountability**  29:*16*  30:*9*
**accountable**  30:*10, 15*
**accurate**  44:*3*  95:*6*
**acknowledge**  4:*7, 10*
**Act**  18:*9*
**ACTION**  1:*5*  94:*14, 15*
**acts**  20:*17*
**actual**  36:*10*  37:*1*
**additional**  48:*2*  56:*14*  76:*12*  89:*11*
**address**  6:*13*  80:*8*
**administer**  4:*11*
**administered**  4:*11*
**Administration**  55:*23*
**aerated**  51:*13*
**afternoon**  79:*16*
**afterward**  66:*6*
**ago**  41:*10*  64:*7*  67:*2*
**agree**  4:*13*  19:*11*  24:*18*  25:*4, 10*  28:*23*  29:*13*  30:*5, 14,*  20  51:*1*  54:*6*  57:*8, 18*  65:*3*  66:*21*  69:*21*  70:*2, 14*  71:*8*  72:*4*  83:*11*
**agreed**  4:*2*
**ahead**  6:*23*  15:*4, 9*  16:*2*  19:*14*  21:*20*  23:*23*  24:*7, 14,*  25  25:*7, 12, 22*  26:*4, 16*  27:*9*

29:*9, 17*  30:*11,*  25  31:*13*  32:*8,*  23  33:*20*  35:*23*  37:*7, 14, 18*  38:*5*  40:*15*  41:*17*  42:*25*  43:*15, 19, 25*  44:*15*  46:*21*  47:*21*  48:*5, 12*  49:*3, 12, 23*  50:*7, 21*  51:*3, 8,*  21  52:*16*  54:*9,*  15, 23  55:*10, 21,*  25  56:*8, 18*  57:*22*  58:*23*  59:*7*  60:*14, 17*  61:*4*  63:*2, 11,*  20  64:*11*  65:*6*  66:*23*  67:*4, 14*  68:*3, 20*  69:*23*  70:*23*  71:*19*  73:*7*  74:*13*  76:*7*  77:*11*  78:*4, 11*  82:*18,*  24  85:*21*  89:*24*  90:*23*  91:*4*  92:*2*
**aids**  21:*23*
**aisle**  26:*13*
**al**  1:*7*
**Alexander**  6:*6*
**allow**  9:*8*
**allowed**  40:*19*
**alright**  8:*16*  9:*12*
**altercation**  15:*15*
**amended**  5:*25*
**amount**  58:*24*
**and/or**  21:*18*
**ANDERSON|CO**  **E|KING**  2:*19*
**answer**  7:*3*  8:*3,*  15  9:*12*  15:*9,*  10  23:*25*  24:*9*  25:*2*  29:*11*  40:*19*  44:*14*  48:*13*  51:*17*  57:*3, 16, 23*  58:*9*  74:*14*

76:*2*  82:*10, 12,*  15  83:*15*  85:*25*
**answered**  51:*15*  57:*5*  75:*25*
**answers**  9:*3*  10:*25*
**anticipate**  15:*12*
**anybody**  64:*9,*  15  72:*13*  81:*9*  85:*3, 14*  87:*18*  88:*25*
**apart**  57:*25*
**apologize**  55:*3,*  6
**appeal**  18:*6*
**appear**  73:*14,*  22
**appeared**  93:*5*
**appears**  18:*11*  60:*22*  63:*24*  69:*9*
**appliances**  36:*24*
**application**  14:*13, 16*  16:*12*  17:*14*
**applications**  14:*19, 22*  17:*16*
**applied**  16:*18*
**approach**  55:*9*
**approached**  81:*23*
**appropriate**  32:*18*  49:*19*
**Aprons**  91:*5, 7*
**area**  23:*17*  28:*3*  34:*9, 13,*  19  35:*19*  38:*20*  39:*2, 4*  41:*12,*  18  52:*14*  64:*25*  72:*3*  80:*25*  82:*7, 8*  84:*19*  85:*11*  87:*18, 20*  88:*3*
**asked**  51:*15*  55:*14*  57:*5*  62:*16, 17, 19*  65:*19*  75:*25*
**asking**  38:*10*  40:*8*  44:*6*  49:*7*

Office (410) 821-4888
CRC Salomon, Inc.
2201 Old Court Road, Baltimore, MD 21208
www.crcsalomon.com - info@crcsalomon.com
Facsimile (410) 821-4889
Page: 1

Deposition of Logan Fox | Jasmine Rittersbacher vs. Food Lion, LLC, et al.

67:*8*  75:*21*
77:*2*  82:*13, 14*
90:*4*
**asks**  82:*7*
**aspects**  17:*10*
**assist**  26:*8*
30:*21*  31:*3*
**assistance**  88:*22*
**assistant**  13:*15,*
*23*  14:*1, 6*
18:*17*  19:*2*
24:*21*  35:*8*
56:*5*  90:*9*
**assisted**  11:*21*
**associate**  22:*2*
32:*25*  39:*21, 22*
61:*6*  70:*18*
82:*7*  84:*13*
**associates**
22:*13*  83:*1*
**assume**  12:*17*
14:*11*  38:*23*
39:*16*  53:*10, 12*
69:*3*  75:*20*
77:*15*
**assurance**
82:*25*  84:*6, 13,*
*15*
**attendance**  18:*9*
**attention**  62:*18*
**attorney**  94:*12,*
*14*
**attorneys**  4:*6*
7:*5*
**audio**  62:*4*
**audit**  48:*9*
**authority**  93:*4*
**authorized**  94:*5*
**available**  45:*9*
**avoid**  56:*16*
**aware**  44:*7*
46:*13*  48:*8*
56:*11, 12, 21*
90:*8, 9, 10*
**Awhile**  11:*3*

**< B >**
**back**  6:*4, 16*
7:*17*  9:*12*
10:*13*  11:*3*

12:*20, 21*  13:*5*
14:*12*  16:*10*
19:*2, 3, 6*  24:*3*
34:*18*  36:*19*
38:*7*  45:*24*
47:*3*  48:*20*
50:*2*  53:*4, 14*
54:*13*  59:*5*
67:*16*  68:*7*
75:*21*  77:*14*
80:*20*  91:*10, 13,*
*16*
**backed**  54:*19*
**background**
15:*1*  67:*19*
**backwards**
60:*23*
**bad**  89:*20*
**bagger**  13:*13*
17:*7*
**bags**  23:*18*
**Baltimore**  2:*6,*
*21*
**based**  28:*19*
32:*13*  51:*5*
**basing**  17:*23*
**basis**  31:*23*
**bathroom**
82:*16, 22*
**baylor**  22:*11*
**bear**  5:*24*
20:*17*  38:*14*
52:*4, 6*  54:*18*
55:*19*  60:*2, 8*
65:*10*  66:*11*
**Becoming**  17:*9*
**beep**  80:*20*
**behalf**  1:*11*
**behavior**  18:*8*
**believe**  11:*3*
14:*25*  23:*15*
24:*20, 21*  25:*3,*
*15, 19*  29:*4*
31:*21*  46:*4*
53:*15*  54:*16*
56:*19*  57:*24*
62:*13, 17*  65:*23*
73:*8*  86:*3*
**bent**  53:*18*

**Bergensons**
46:*2, 3, 6*
**best**  10:*13*
24:*12*  55:*5*
85:*3*
**better**  65:*16*
78:*9*  92:*5*
**Biddle**  2:*5*
**big**  68:*7*
**bigger**  61:*18*
**bit**  43:*10*  74:*3*
**blank**  87:*17*
**blood**  22:*9*
**blow**  79:*5*
**blue**  61:*13*
**bodies**  27:*6*
**Bodily**  80:*7*
**born**  12:*11*
**bottom**  10:*19*
27:*14, 15*  37:*3*
50:*19*  54:*21*
77:*17*
**box**  22:*12*
**boxes**  63:*17*
**break**  8:*24*  9:*7,*
*8, 11*  12:*15*
**breakdown**
13:*10*  62:*13*
**briefly**  10:*10*
**bring**  31:*21*
46:*19, 23*
**broken**  47:*20*
**brought**  65:*16*
68:*8*
**bruise**  66:*8, 10*
**buff**  47:*13*
**buffer**  36:*9*
46:*25*
**bunch**  23:*15*
35:*14*
**business**  83:*19*

**< C >**
**call**  13:*21*
26:*24, 25*  36:*24*
47:*17*  75:*17*
90:*2*
**called**  10:*25*
16:*19*  20:*16*

22:*1*  46:*6*  79:*3*
84:*7*  85:*20*
**calling**  13:*19*
**calls**  24:*24*
29:*8*  51:*2, 7*
56:*24*  57:*12, 13*
66:*22*  71:*18*
73:*12*
**Cambridge**
16:*7, 8*
**camera**  5:*4*
11:*6*  62:*7*
**cameras**  12:*3*
62:*9*
**capacity**  38:*8*
**caption**  38:*20*
**careful**  49:*21*
**carried**  88:*10*
**carrying**  69:*8*
88:*5*
**cart**  88:*8*
**case**  5:*9*  23:*18*
26:*5, 23*  28:*18*
30:*21*  43:*9*
56:*14*
**cashiering**
22:*14*
**category**  22:*24*
**cause**  37:*20*
83:*10*
**causing**  80:*12*
**caution**  38:*23*
**CBT**  57:*4*
**CBTs**  22:*1*
23:*1*  25:*6*
56:*12, 14, 15*
**CBT's**  22:*15*
**cellphone**  62:*4*
**certain**  22:*14,*
*15*
**CERTIFICATE**
93:*1*
**certify**  93:*4*
94:*5, 11*
**chair**  55:*15, 17*
67:*19*
**change**  33:*15*
43:*10*
**changed**  15:*2*

33:*10*  52:*23*
**changes**  12:*1, 2*
**changing**  12:*2*
**charge**  32:*3*
46:*10*  84:*9*
**charger**  92:*4, 10*
**charges**  15:*17,*
*20, 25*  16:*5*
**check**  74:*17, 21*
75:*4*
**Checklist**  20:*22*
83:*1, 3*  84:*8, 10,*
*22*
**checks**  74:*8, 11,*
*19*
**cheeses**  39:*6*
**chemicals**  46:*17*
**circumstance**
51:*18, 20*
**CIVIL**  1:*5*
**clean**  17:*8*
22:*8, 9, 21*  34:*5*
35:*18, 19, 22*
36:*13, 19*  45:*16*
46:*10*  47:*13*
85:*2, 5*
**cleaned**  34:*12,*
*19*  64:*16*  70:*5*
**cleaner**  46:*15*
**cleaners**  47:*16,*
*17, 19*
**cleaning**  35:*17*
45:*13*  46:*1, 16,*
*17, 18, 19*  48:*10*
49:*8, 20*  83:*5*
**cleans**  82:*15, 22*
**clear**  62:*14*
**clearly**  76:*12*
**client**  80:*8*
**client's**  69:*9*
**clock**  18:*3*
49:*15, 16*
**close**  6:*4*  47:*10*
48:*21*  61:*5*
**closes**  47:*5*
**clue**  86:*6*
**coarse**  77:*25*
**cold**  73:*1*
**college**  12:*19*

Office (410) 821-4888
CRC Salomon, Inc.

2201 Old Court Road, Baltimore, MD 21208
www.crcsalomon.com - info@crcsalomon.com

Facsimile (410) 821-4889
Page: 2

Deposition of Logan Fox                                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

**Combined**
12:*14, 16*
**come** 9:*12*
20:*3* 26:*12*
27:*14, 18* 28:*16,*
*17, 20* 32:*16*
41:*2, 5* 44:*23*
45:*5, 8, 9, 11, 15,*
*16* 46:*10, 12, 23*
47:*3, 5, 7, 12, 13*
48:*16, 19, 21*
49:*15* 54:*20, 21*
61:*20* 62:*14*
81:*19* 82:*9*
85:*4, 11* 90:*21*
91:*20, 25*
**comes** 24:*16*
27:*13* 31:*22*
32:*6* 33:*3* 37:*3*
42:*17* 49:*8*
**coming** 22:*7*
41:*15*
**comments** 89:*11*
**commonly** 8:*6*
**Commonwealth**
93:*14*
**communicate**
29:*2*
**communicator**
85:*14, 17*
**companies**
91:*18*
**company** 12:*21*
16:*15* 18:*4*
29:*14* 31:*6*
45:*14* 46:*6, 19,*
*22, 23* 48:*10*
49:*8, 21* 50:*14*
91:*3, 8, 20, 25*
**company's**
45:*21*
**compelled** 8:*2*
**compress** 72:*18*
73:*1*
**computer**
44:*24* 87:*11*
**computer-based**
20:*6* 22:*1* 23:*2,*
*5*

**computerized**
20:*8*
**concluded** 92:*24*
**Condensation**
27:*5*
**condition** 9:*18*
41:*13*
**conduct** 48:*9*
**cone** 43:*13*
65:*12, 15* 69:*20*
70:*20*
**cones** 65:*5*
**connected** 94:*14*
**constitute** 95:*6*
**contact** 31:*21*
44:*19*
**container** 42:*18*
**conversation**
15:*11* 61:*25*
65:*24*
**convicted** 15:*3,*
*15*
**cooler** 27:*1, 2,*
*25* 28:*5* 31:*1,*
*10* 32:*7* 34:*14,*
*16, 18* 35:*4, 9,*
*14* 36:*25* 39:*9*
41:*13* 44:*7, 18*
47:*20* 48:*1*
49:*21* 50:*5*
65:*1* 91:*9*
**coolers** 31:*7*
**copy** 20:*5*
79:*20* 92:*17*
**corner** 54:*6*
60:*11, 16*
**Corporate**
25:*20* 29:*3*
30:*6* 33:*16*
75:*17, 19*
**correct** 12:*3*
23:*9, 16, 19, 22*
24:*6, 13, 23*
27:*19* 30:*24*
39:*9, 13* 41:*19*
44:*19* 47:*5*
48:*24, 25* 50:*17,*
*18, 20* 52:*1*
56:*7* 59:*21, 22*
64:*22* 65:*1, 2,*

*15, 20, 21* 66:*3*
67:*20, 24* 68:*25*
69:*22* 79:*23, 24*
80:*13* 81:*10, 24*
83:*7* 84:*16*
91:*3* 94:*8*
**correctly** 14:*9*
22:*4* 26:*8*
**Counsel** 2:*2, 10*
4:*3* 5:*19* 7:*3,*
*22* 10:*16, 23*
19:*19* 20:*7*
92:*8, 14* 94:*12,*
*14*
**counseling** 18:*7*
**County** 16:*6*
**couple** 28:*7*
**course** 66:*14*
**COURT** 1:*1,*
*14* 6:*14, 19, 20*
7:*18* 9:*24*
15:*18* 16:*8*
94:*4, 22*
**cover** 20:*6*
**covered** 28:*8*
**covering** 56:*22*
**crazy** 63:*14*
**create** 29:*24*
30:*6* 57:*10*
**creates** 57:*21*
**creating** 46:*10*
**crew** 49:*8*
**cried** 74:*5*
**crimes** 15:*3*
**crisping** 28:*12*
**curled** 32:*16*
**curling** 32:*25*
**currently** 42:*6*
**cursor** 54:*21*
**customer** 73:*2*
79:*16* 80:*10*
82:*15, 19, 21*
88:*5, 20, 22*
**customers** 14:*9*
19:*12, 22* 20:*2*
21:*19* 29:*1, 5*
47:*12*
**Customer's**
88:*14*

**cut** 36:*10* 66:*8,*
*10*
**cutoff** 80:*9*
**cuts** 64:*1*
**cutter** 22:*12*

**< D >**
**daily** 83:*5*
**damp** 35:*3*
**dampness** 34:*22*
**danger** 26:*10*
**dangerous**
33:*17* 71:*16*
**date** 10:*5, 8*
11:*18* 13:*16, 17,*
*20* 19:*2* 44:*3*
53:*10* 79:*15*
**DATED** 94:*17*
**DAVEY** 2:*11*
4:*19* 15:*14, 20*
16:*2* 17:*2, 17,*
*20* 19:*14* 20:*4,*
*9* 21:*20* 23:*23*
24:*7, 14, 24*
25:*7, 12, 22*
26:*4, 16* 27:*9*
29:*8, 17, 22*
30:*1, 11, 16, 25*
31:*13, 25* 32:*8,*
*23* 33:*20* 35:*23*
37:*7, 14, 18*
38:*4* 39:*11*
40:*1, 4, 8, 15, 18,*
*20* 41:*17* 42:*19,*
*25* 43:*15, 19, 25*
44:*10, 15, 20*
45:*17* 46:*21*
47:*21* 48:*5*
49:*3, 12, 23*
50:*7, 21* 51:*2, 7,*
*15, 21* 52:*16, 22*
54:*9, 15, 23*
55:*10, 21, 25*
56:*8, 18, 24*
57:*5, 12, 22*
58:*23* 59:*7*
60:*14, 17* 61:*4*
63:*2, 11, 20*
64:*11, 17* 65:*6*
66:*22* 67:*4, 7,*

*14* 68:*3, 20*
69:*23* 70:*8, 23*
71:*10, 18* 73:*7,*
*12, 16, 25* 74:*13,*
*23* 75:*2, 25*
76:*7, 14* 77:*11,*
*18* 78:*4, 11*
80:*14, 18* 81:*11*
82:*24* 83:*12, 24*
85:*7, 12, 21*
87:*8* 89:*24*
90:*12, 23* 91:*4,*
*10, 13* 92:*2, 12,*
*18, 20*
**day** 14:*3, 4*
23:*21* 24:*4*
28:*20* 39:*25*
40:*4, 8* 43:*23*
45:*15, 16* 49:*2*
50:*5* 53:*8*
83:*21, 22* 84:*4*
93:*8* 94:*17*
95:*7*
**days** 89:*19, 23*
**DC** 2:*14*
**deal** 46:*6*
**dealing** 28:*13*
**deals** 21:*16, 18*
**December** 1:*12*
6:*1* 93:*9* 95:*7*
**decent** 37:*23*
63:*13*
**decision** 39:*24*
40:*12, 14, 23*
50:*4*
**Defendant** 1:*8*
**Defendants** 2:*10*
**deli** 22:*16*
**department**
22:*14* 25:*21*
28:*5* 83:*6*
**Departments**
14:*8* 22:*15*
**deponent** 95:*3*
**Deposition** 1:*11,*
*13* 4:*4, 7, 8, 9*
5:*18, 25* 6:*9, 20*
7:*1* 10:*11, 17*
92:*24* 94:*6*

Deposition of Logan Fox

Jasmine Rittersbacher vs. Food Lion, LLC, et al.

95:*4, 7*
**describe**  81:*3*
**described**  19:*4*
30:*22*  50:*13*
**description**
80:*8, 22*
**designated**  28:*3*
71:*21*
**determination**
32:*21*  37:*5*
**determine**
36:*25*  37:*12*
**determining**
32:*3*
**differ**  14:*4*
**difference**  18:*20*
**different**  34:*16*
78:*9*  79:*6, 11,
13*
**differently**  77:*9*
79:*19*
**digital**  75:*7*
**directly**  43:*13*
**discovery**  17:*13*
**discussed**  21:*13*
**discussing**  78:*15*
**disperse**  36:*13*
**display**  59:*23*
71:*5*
**DISTRICT**  1:*1*
16:*7*
**document**  20:*1,
19, 24*  73:*2*
82:*23*
**documents**
10:*24*  11:*1*
16:*18*  18:*25*
20:*13*
**doing**  6:*24*
26:*7*  28:*19*
48:*10*  72:*2*
**Dorchester**  16:*6*
**drip**  43:*10*
**dropping**  34:*24*
**duly**  4:*23*  93:*5*
**duties**  14:*1, 7*
56:*6*
**duty**  19:*3*  26:*6*
29:*5*  37:*25*

71:*14*
**dying**  92:*4*

**< E >**
**easier**  20:*17*
**East**  2:*5*  6:*14*
**Easton**  12:*12*
**edge**  28:*25*
**edges**  32:*16*
**educate**  29:*20*
**educated**  30:*15*
**Education**
29:*15*
**EEA**  29:*14*
**eight**  48:*21*
**either**  8:*7*  9:*17*
27:*2, 3*  35:*20*
49:*17*  80:*16*
92:*12*
**electronic**  45:*4*
92:*16, 18, 22*
**ELH-20-2800**
1:*6*
**Elliot**  53:*21*
55:*7, 8, 13*
59:*25*  61:*14, 15*
62:*3*  67:*18*
68:*17*  70:*15*
71:*4*  72:*1*
**Elliott's**  70:*16*
**else's**  76:*19*
**E-mail**  2:*8, 16,
23*
**embarrassed**
73:*10*
**embarrassing**
73:*15*
**emotional**  9:*17*
**employed**
37:*11*  86:*23*
**employee**  18:*25*
49:*20*  75:*16, 17*
82:*21*  84:*12, 15*
94:*12, 13*
**employees**  25:*4,
10, 19, 24*  26:*10*
30:*7*  74:*9*  75:*1*
**employee's**  84:*8*
**employer**  78:*16*

**employment**
14:*12, 16, 19*
**empty**  36:*19*
**EMT**  68:*7*
69:*18*
**EMTs**  67:*23*
68:*6, 22*  69:*17*
**EMT's**  72:*14*
**enclosed**  23:*18*
**ends**  72:*6*
89:*10*
**endurance**  8:*25*
**enforce**  56:*6*
**English**  22:*6*
**entire**  34:*11*
73:*4*
**equal**  18:*8*
**equipment**
28:*24*
**especially**  59:*11*
**Esquire**  2:*3, 11,
18*
**essentially**  7:*1*
18:*24*
**et**  1:*7*
**event**  8:*18*
**everybody's**
59:*21*
**everyone's**
24:*22*
**Everything's**
84:*20*
**exact**  39:*4*
**exactly**  39:*23*
**Examination**
3:*5*  4:*25*
**examine**  36:*24,
25*
**examined**  67:*25*
**example**  44:*18*
**excused**  92:*23*
**Exhibit**  19:*20*
38:*19*
**Exhibits**  3:*10*
**exit**  88:*22*
**expect**  8:*18*
**expectation**
29:*15, 24*
**expectations**
30:*6*

**expected**  29:*25*
30:*7*
**experience**
14:*10*  28:*19*
51:*5*
**experienced**
34:*22*
**expert**  51:*7*
56:*24*
**explain**  8:*22*
18:*20*  22:*5, 10*
28:*15*  87:*6*
**explained**  51:*25*
**explanation**
8:*23*
**exposure**  57:*20*
**expression**
25:*16*

**< F >**
**facts**  79:*14, 18*
**fail**  30:*9*
**fairly**  9:*19*
63:*13*
**fall**  10:*5*  11:*9,
15, 21, 23*  13:*21*
57:*25*  60:*5, 23*
78:*14, 16*  80:*12*
83:*9*
**fallen**  61:*3*
**falling**  73:*18*
**falls**  57:*9, 19*
90:*10*
**Family**  18:*9*
69:*14*
**far**  6:*24*
**fast**  8:*9*
**feel**  8:*2*
**fell**  5:*10*  11:*22*
13:*18*  23:*9*
33:*6*  43:*23*
44:*5*  48:*24*
50:*5, 6*  51:*25*
52:*15*  53:*9*
54:*5, 6*  55:*9*
59:*22*  60:*10, 16,
22*  61:*7*  62:*10*
63:*17*  64:*3*
90:*4, 21*
**fiber**  50:*17*

**figure**  37:*19*
42:*2*
**filed**  5:*9, 18*
**files**  80:*6*
**fill**  14:*22, 24*
35:*6*  78:*25*
82:*16*  86:*4, 7,
11*  87:*2*
**filled**  14:*12*
16:*12*  79:*4*
82:*9*  87:*17*
**filling**  35:*3*
84:*9*
**financially**
94:*15*
**find**  7:*2*  61:*3*
75:*11, 13, 15*
**fine**  8:*4, 14*
49:*7*  74:*7*
79:*21*  87:*16*
**finish**  8:*15*
**finisher**  46:*16*
**first**  4:*23*  9:*10*
32:*9*  42:*13*
44:*14*  55:*9*
56:*3*  61:*15, 16*
65:*12*
**five**  26:*13*
43:*18*
**fix**  26:*12*  41:*2*
44:*23*  45:*6, 9*
47:*20*  85:*4*
91:*8, 20, 25*
**fixed**  57:*21*
76:*5, 6*
**fixing**  23:*6*
45:*12*
**Floor**  2:*13*
22:*20*  27:*17, 19*
34:*22*  35:*17, 19,
25*  36:*14*  46:*15,
16, 24*  51:*13*
52:*7, 20*  55:*3*
56:*21, 22*  57:*8,
18*  71:*20*  77:*13*
81:*2, 5*  82:*16,
22*
**floors**  22:*21*
34:*5*  46:*1, 11*
47:*14*  56:*16*

Office (410) 821-4888
CRC Salomon, Inc.

2201 Old Court Road, Baltimore, MD 21208
www.crcsalomon.com - info@crcsalomon.com

Facsimile (410) 821-4889
Page: 4

Deposition of Logan Fox                                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

| | | | | |
|---|---|---|---|---|
| **floral** 28:*13* | 25 | 23 33:*20* 35:*23* | **GREENBERG** | **.....5** 3:*5* |
| 31:*10* 34:*14* | **fresh** 42:*15* | 37:*7, 14, 18* | 2:*3, 4, 25* 4:*18* | **greens** 42:*15* |
| 35:*14* 39:*5* | **front** 18:*23* | 38:*1, 5* 40:*15* | 5:*1, 2, 3, 6, 8* | **grocery** 13:*15* |
| 42:*11* 43:*8* | 22:*13* 23:*11* | 41:*17* 42:*9, 25* | 8:*9* 15:*5* 16:*4* | **ground** 6:*12,* |
| 59:*23* 65:*1* | 27:*24* 28:*4* | 43:*15, 19, 25* | 17:*4, 12, 18, 21,* | 24 7:*17* 36:*11* |
| 80:*10* | 32:*7* 34:*13* | 44:*15, 22* 46:*21* | 22 19:*16, 19, 24* | 67:*10* 83:*10, 23* |
| **Florida** 12:*19,* | 35:*4, 13* 36:*12* | 47:*21* 48:*2, 5,* | 20:*7, 10, 11* | **guess** 8:*1* 18:*1* |
| 25 | 42:*10* 43:*7* | 12 49:*3, 12, 23* | 21:*22* 23:*24* | 40:*6* 46:*4* 49:*1* |
| **flowers** 23:*12* | 50:*5* 58:*22* | 50:*2, 7, 21* 51:*3,* | 24:*8, 17* 25:*1, 9,* | 56:*5* 68:*15* |
| 34:*18, 25* 42:*23* | 59:*23* 61:*5, 6* | *8, 21, 23* 52:*16* | *14* 26:*1, 9, 18* | 72:*2* 76:*20* |
| 43:*2, 4, 9, 11* | 63:*1* 69:*2* | 54:*9, 15, 23* | 27:*10* 29:*10, 19,* | 81:*13* 82:*5, 13* |
| **follow** 25:*5* | 86:*12, 16, 25* | 55:*10, 21, 25* | 23 30:*2, 13, 17* | 88:*7* |
| **following** 21:*12* | **full** 6:*5* 62:*13* | 56:*8, 18* 57:*22* | 31:*2, 16* 32:*2,* | **guessing** 68:*7* |
| 46:*15* 86:*8* | 92:*20* | 58:*23* 59:*7* | *11* 33:*24* 36:*1* | **guilty** 15:*21, 22* |
| **follows** 4:*24* | **full-time** 13:*14,* | 60:*14, 17* 61:*4,* | 37:*10, 16, 21* | **gunk** 64:*16* |
| **FOOD** 1:*7* | *15* 70:*19* | *15* 63:*2, 11, 20* | 38:*9* 39:*12* | 77:*8* 78:*2* |
| 5:*10* 7:*6, 10* | **fully** 76:*6* | 64:*11* 65:*6* | 40:*2, 6, 10, 11,* | **gurney** 68:*2* |
| 10:*4, 20* 12:*13,* | **fun** 39:*8* | 66:*23* 67:*4, 14,* | *16, 21* 41:*20* | **guy** 24:*16* |
| 23 13:*6, 11* | **further** 4:*10,* | *16* 68:*3, 20* | 42:*21* 43:*3, 17* | 37:*23* |
| 14:*2* 16:*25* | *13* 8:*23* 94:*11* | 69:*23* 70:*23* | 44:*1, 12, 13, 16,* | |
| 17:*1* 18:*6, 11* | | 71:*19* 73:*7* | *21* 45:*18* 47:*2,* | **< H >** |
| 20:*3* 34:*6* | **< G >** | 74:*13, 20* 75:*21* | *23* 48:*7, 15* | **half** 33:*5* |
| 37:*12* 45:*15* | **gap** 12:*17* | 76:*7* 77:*11* | 49:*4, 18* 50:*1, 9,* | **hand** 89:*15* |
| 46:*13, 17* 48:*8* | **general** 34:*19* | 78:*4, 11* 82:*18,* | *23* 51:*4, 10, 16,* | 93:*8* |
| 49:*9, 20* 56:*7* | **gentleman** | *24* 83:*1, 20* | 22 52:*18, 24, 25* | **handle** 69:*17* |
| 59:*4* 72:*10* | 53:*17, 20* 54:*14* | 84:*1, 18, 19, 23* | 54:*10, 17, 25* | **handwrite** 79:*6* |
| 74:*9* 75:*1, 16* | **getting** 18:*12* | 85:*2, 21, 25* | 55:*12, 22* 56:*10,* | **hanging** 68:*19,* |
| 84:*15* 90:*11* | 44:*22* 63:*6* | 87:*2, 5, 6, 10, 11,* | 20 57:*1, 7, 15* | 21 |
| **foot** 52:*10* | 77:*1* | 13 89:*24* 90:*23* | 58:*2, 7, 11, 15,* | **happen** 15:*13* |
| **foregoing** 95:*4* | **gifts** 18:*5* | 91:*4* 92:*2, 9* | 20 59:*1, 9* | 26:*19, 21* 71:*23* |
| **foreign** 81:*2* | **give** 6:*12, 23* | **goes** 31:*10* | 60:*15, 19* 61:*9* | 77:*12* |
| **forget** 56:*11* | 8:*22* 9:*2* 12:*22* | 63:*25* 64:*1* | 63:*5, 15, 23* | **happened** |
| 89:*19* | 13:*10* 26:*8* | **going** 5:*21* 6:*4,* | 64:*13, 20* 65:*8* | 10:*13* 11:*8* |
| **forgot** 87:*5* | 46:*18* 56:*14* | *12* 9:*2* 10:*4* | 66:*25* 67:*5, 11,* | 41:*10* 44:*2* |
| **form** 26:*4* | 73:*1* 75:*18* | 12:*14* 15:*11, 12* | *15* 68:*5, 23* | 48:*20* 62:*17, 20* |
| 42:*19* 85:*21* | **given** 14:*18* | 17:*13* 18:*1* | 70:*1, 13, 25* | 64:*7* 67:*1, 2* |
| 86:*2* | 95:*7* | 20:*19* 21:*10* | 71:*13, 25* 72:*8* | 70:*12* 77:*6* |
| **found** 15:*21* | **GL** 79:*3* 86:*5* | 26:*24* 33:*16* | 73:*9, 13, 17, 21* | 78:*14* 90:*5* |
| 82:*11* | **gladly** 8:*22* | 36:*24* 47:*17* | 74:*4, 16, 24* | **hard** 51:*13* |
| **four** 41:*14* | **go** 6:*4, 23* 7:*17* | 53:*10* 58:*16* | 75:*5* 76:*1, 10,* | **hazards** 25:*11* |
| 66:*20* | 11:*2* 12:*18, 25* | 59:*16* 60:*2, 9* | *17* 77:*20* 78:*6,* | 83:*10* |
| **FOX** 1:*11* 3:*4* | 15:*4, 9, 18* 16:*2,* | 66:*11* 87:*4* | *13* 80:*17, 19, 21* | **Health** 55:*23* |
| 4:*22* 5:*2, 7, 21* | *10* 17:*10* 19:*6,* | 89:*3* | 81:*15* 82:*20* | **hear** 15:*6* |
| 6:*6* 15:*6* 17:*23* | *14* 21:*20, 24* | **good** 14:*9* | 83:*2, 14* 85:*9,* | **heard** 80:*20* |
| 20:*12* 30:*3, 18* | 23:*23* 24:*7, 14,* | 48:*11* 49:*10* | *16, 22* 87:*9* | **held** 30:*10* |
| 44:*14* 66:*13* | 25 25:*7, 12, 22* | 57:*19* 81:*17* | 90:*1, 15* 91:*6,* | **help** 12:*6* 22:*8,* |
| 69:*19* 80:*1* | 26:*4, 11, 16* | 84:*21* | *11, 14, 15* 92:*5,* | *13* 55:*13* 65:*20* |
| 83:*15* 92:*8* | 27:*9, 19, 23* | **gotcha** 87:*12* | *21, 22* | 73:*11* |
| 93:*5* 94:*6* 95:*3,* | 29:*8, 17* 30:*11,* | **gratuity** 18:*6* | **Greenberg**........... | **helps** 45:*5* |
| | *25* 31:*13* 32:*8,* | **great** 6:*24* | | |

Deposition of Logan Fox                                          Jasmine Rittersbacher vs. Food Lion, LLC, et al.

**Hey** 17:*12*
26:*13* 49:*21*
71:*22* 90:*21*
**hire** 18:*19*
20:*24* 22:2
**hired** 18:*12*
22:*14* 91:8
**hiring** 18:*18,*
*21, 22*
**hit** 67:9
**hold** 30:*14*
38:7 52:5
66:*12* 78:*24*
**holes** 32:*19*
50:*16* 51:*13*
**honest** 15:*17*
21:*1* 37:8
40:*23* 44:*10*
**honestly** 9:*19*
**honesty** 16:*15,*
*20* 18:2
**hopefully** 7:*25*
9:2
**hoping** 9:*1*
57:*19*
**hose** 36:*15*
**hot** 27:6
**house** 90:*18*
**hurt** 26:6 29:5
65:*22* 66:*1*
74:*21* 89:7
**hurting** 25:*24*
**HVAC** 91:*19*
**hypothetical**
57:*13*
**hypothetically**
28:*24*

**< I >**
**ice** 72:*14, 16, 25*
**idea** 12:*22*
17:*15, 17* 22:*25*
40:*4*
**identical** 18:*1*
39:9
**identifying**
30:*21*
**imagine** 15:*1*
17:*24*

**immediately**
81:*1*
**important** 7:*23*
14:*21*
**incident** 10:*21*
11:*8* 13:*17, 20,*
*21* 19:*3* 34:*15*
48:*20, 23* 51:*24*
53:*11* 62:9
71:*23* 79:*15*
80:*3, 6, 7, 23*
84:*24* 85:*14*
86:*8* 89:*16*
**independent**
19:*25* 65:*18*
70:6 91:*23*
**indicate** 21:*24*
54:*19* 67:2
**indicated** 34:*4*
**indicating**
39:*15* 52:*10*
53:*17* 54:*7, 14*
59:*22* 65:*11*
67:*20* 71:6
80:*17*
**information**
56:*14* 79:*22*
**initial** 79:3
84:*11*
**initially** 11:8
**injuries** 5:9
20:2 56:*17*
**injury** 19:*13,*
*23* 80:7 86:8
**inspect** 84:*19*
**inspected** 81:*1*
**instructing** 18:3
**insurance** 85:*4*
**interested** 94:*15*
**interrogatories**
10:*25*
**interval** 12:*20*
31:*24*
**interview** 18:*22*
**involve** 19:*11*
34:8
**involves** 19:*21*
**iPad** 21:*5* 92:*4*

**issue** 28:*24*
44:*18* 57:*10, 20*
85:5
**issues** 22:*3, 23*
24:5 74:*20*
**items** 21:*12, 13*
83:9

**< J >**
**jacket** 22:*11*
**Jackson** 1:*14*
93:*13* 94:*4, 21*
**JAMES** 2:*18*
**January** 94:*17*
**JASMINE** 1:*4*
5:*8* 11:*11* 85:5
**Jay** 6:*14*
**job** 16:*19*
21:*17* 24:*22*
29:*1* 37:*12, 20*
48:*11* 49:*10*
76:*18* 77:5
84:*1*
**Johnson** 86:*22*
**June** 5:*13* 6:*17*
23:*21* 24:6
34:*18* 44:5
58:*21* 59:*12*
77:9 78:8
79:*15*

**< K >**
**keep** 13:*16, 19*
43:7 59:*5, 10*
**Keeping** 22:*21*
**keeps** 42:*23*
72:2
**Keith** 34:*3*
78:*22* 86:*14*
**Kellermeyer**
7:*6, 13* 16:*25*
46:3
**kept** 37:*6, 13*
72:*24*
**key** 29:*13*
**Kiara** 86:*17*
**KIERNAN** 2:*12*
**kind** 63:6
89:*10*

**knee** 65:*25*
66:*1, 8, 14, 19,*
*20* 67:*3, 9*
72:*17* 88:*14*
**kneecap** 88:*15*
**knew** 88:*13*
89:2
**know** 7:*2, 4, 10,*
*13* 8:*22, 25*
9:*10* 10:*13*
11:*14, 25* 12:*1,*
*8* 13:*21* 14:*15,*
*18* 15:*14* 17:*7,*
*8* 18:*16, 24*
19:*19* 22:*4, 8, 9,*
*21* 23:*8* 24:*1, 2*
25:*15, 16* 26:5
27:*6, 11, 12, 21*
28:*16, 17, 20, 24*
29:*24* 30:*7, 22*
32:*12, 18, 19*
33:*5, 22, 25*
34:*16, 24, 25*
37:*1, 2, 24* 38:7
39:*18, 23* 40:*3,*
*13, 23* 41:*24*
43:*13* 44:*4, 11*
45:*7, 19, 21, 23,*
*24* 46:*1, 5, 20*
47:*16, 17, 19, 24*
48:*13* 49:*5, 21*
50:*10* 52:*12, 14*
53:*22, 25* 56:2
57:*2, 3, 23* 58:*3,*
*24* 59:*4, 8*
61:*15, 17* 62:*3,*
*8* 63:*8, 13, 17*
64:9 65:*4, 25*
67:8 68:*17*
69:*6, 11, 13*
70:*11, 21* 72:*2,*
*20* 73:*4* 74:*14,*
*17, 20, 25* 76:*4,*
*5, 11* 77:*4* 78:*8,*
*9* 80:*16, 20*
82:*10* 83:*18*
84:*23* 85:*15*
86:*13, 20* 87:*3,*
*6, 7, 11, 15, 16*

88:6 90:9
91:*17*
**knowledge**
49:*25* 82:*1, 4*
91:*24*
**knows** 8:*20*
40:9

**< L >**
**lady** 61:*7*
**Lakesha** 1:*14*
93:*13* 94:*4, 21*
**Large** 1:*15*
21:*7, 9*
**larger** 21:8
**Larry** 8:*10*
17:2 44:*10*
80:*14* 91:*10*
**Larry@greenber
glawyers.com**
2:8
**Late** 47:8
48:*18*
**LAW** 2:*4, 25*
34:*17*
**LAWRENCE**
2:3 5:*2, 7*
**laws** 56:*6, 16*
**lawsuit** 5:9
**lawyer** 9:*10, 11*
10:*19* 15:8
90:3
**lawyers** 8:*20*
**laying** 69:*21*
81:5
**layout** 42:3
58:*1* 79:*13*
**lead** 13:*14*
**leak** 37:2
**leaked** 74:*10*
**leaking** 22:*23*
23:6, 22 24:6
27:3 31:*11*
34:*24* 36:*25*
37:6, *13, 25*
39:*19* 40:*13*
43:*14, 21* 48:*1*
49:*22* 75:6
**learn** 17:*7, 8*

Deposition of Logan Fox                                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

55:*20*
**learned** 34:*5*
**Leave** 18:*9*
38:*3, 6* 47:*1*
49:*16* 56:*13*
**left** 12:*18* 47:*3*
55:*14* 60:*11, 16*
70:*11* 88:*14*
**lie** 65:*10*
**lieu** 4:*10*
**life** 8:*6*
**likewise** 46:*9*
53:*25* 63:*16*
64:*21* 71:*1*
**LION** 1:*7* 5:*10*
7:*6, 10* 10:*4, 20*
12:*13, 23* 13:*6,*
*11* 14:*2* 16:*25*
17:*1* 18:*11*
20:*3* 34:*6*
37:*12* 45:*15*
46:*13* 49:*20*
56:*7* 59:*4*
72:*10* 74:*9*
75:*1, 16* 84:*16*
90:*11*
**Lion's** 46:*18*
48:*8* 49:*9, 10*
**list** 12:*5* 19:*20*
84:*2, 6*
**listen** 8:*3*
26:*13* 77:*3*
**literally** 64:*24*
70:*3* 89:*14*
**little** 43:*10*
65:*16* 67:*1*
74:*3* 79:*5*
85:*18*
**live** 6:*13*
**lived** 12:*18*
**living** 6:*16*
**LLC** 1:*7*
**log** 82:*17*
**LOGAN** 1:*11*
3:*4* 4:*22* 6:*6*
80:*1* 93:*5* 94:*6*
95:*3, 25*
**long** 8:*13*
12:*13* 28:*6*

58:*21* 59:*2*
83:*19*
**look** 33:*17*
41:*13* 48:*9*
49:*10* 61:*11*
66:*2* 70:*4, 24*
84:*20*
**looked** 33:*9*
53:*8, 14* 67:*9,*
*17* 82:*13*
**looking** 7:*4*
14:*20* 52:*22*
62:*8* 82:*1*
**looks** 39:*6*
52:*17* 54:*19*
60:*24* 69:*1, 25*
79:*10, 17* 90:*18*
**Lord** 8:*20*
**lot** 9:*3*
**love** 52:*24*
**lying** 32:*7*

**< M >**
**machine** 23:*12*
24:*5* 35:*25*
36:*3, 18* 37:*6,*
*25* 42:*16* 46:*24*
77:*14*
**machines** 12:*3*
22:*23* 23:*6, 7*
37:*2*
**Madame** 92:*13*
**maintenance**
24:*16*
**making** 36:*16*
**man** 90:*21*
**manage** 14:*8*
17:*9*
**management**
29:*2* 33:*1* 45:*1*
46:*9* 49:*9*
76:*21, 23, 25*
86:*9*
**manager** 13:*15,*
*24* 14:*1, 6* 17:*9*
18:*17, 23* 19:*2*
20:*22* 21:*13*
24:*21* 25:*20, 24*
26:*6, 12* 30:*5*
33:*16, 21* 34:*2*

37:*17* 56:*5*
59:*4* 61:*7*
78:*17, 20* 86:*12,*
*16, 25* 90:*9*
91:*1*
**managers**
30:*20* 35:*7, 8*
**manager's**
24:*22*
**manner** 4:*17*
22:*10* 85:*1*
**manual** 20:*8*
**marked** 3:*10*
38:*18* 52:*6*
**Market** 6:*14*
22:*16*
**MARYLAND**
1:*1, 15* 2:*6, 21*
6:*14* 12:*12*
**mat** 13:*18*
24:*13* 28:*21*
31:*12, 17, 19*
32:*7, 16, 17, 18,*
*22, 24* 33:*10, 23*
35:*20, 21* 39:*13,*
*25* 40:*12, 14, 17*
41:*1, 6, 22, 25*
42:*1, 5* 43:*7*
50:*5, 8, 10, 17*
52:*3* 53:*3, 14*
56:*21* 57:*21*
58:*4, 22* 59:*2,*
*22* 60:*11* 62:*10,*
*25* 63:*17* 64:*4,*
*8* 69:*21* 70:*4,*
*22* 71:*9, 15*
77:*5, 8, 13, 14,*
*17* 80:*11* 81:*4,*
*24* 91:*3*
**material** 50:*17*
77:*25*
**mats** 22:*18*
27:*24* 28:*4, 6,*
*11* 31:*14, 20*
32:*19* 47:*25*
48:*2* 50:*14*
51:*6* 57:*8, 18,*
*24* 59:*10* 76:*12*
77:*1, 2* 78:*9*

88:*3* 91:*5, 7*
**mat's** 40:*9*
**Mats/rugs** 80:*3*
**Matt** 10:*22*
17:*12* 44:*12*
**matter** 33:*10*
35:*24*
**MATTHEW**
2:*11*
**MDavey@Kiern**
**anTrebach** 2:*16*
**mean** 17:*9*
26:*3, 15* 27:*4*
36:*9* 40:*3* 41:*3*
42:*13* 43:*21*
51:*20* 57:*24*
62:*14* 64:*24*
71:*1, 20, 22*
73:*6* 74:*6* 75:*3,*
*11* 78:*17* 79:*10*
81:*13, 14* 84:*1,*
*2* 85:*13* 86:*5*
87:*6* 88:*18*
89:*10* 90:*13, 14,*
*24*
**meaning** 74:*9*
**meant** 77:*25*
87:*12*
**mechanism**
90:*16*
**Medical** 18:*9*
62:*17* 65:*20*
88:*21*
**member** 33:*1*
45:*1* 69:*14*
76:*20, 23, 24*
86:*9*
**members** 20:*2*
**memory** 63:*14*
**mental** 9:*18*
**mentally** 10:*12*
**mentioned** 91:*2*
**messes** 22:*9*
**Michele** 2:*25*
5:*4*
**mind** 13:*19*
61:*14*
**mindful** 25:*5*
29:*5*

**mini** 92:*20*
**minute** 64:*2*
**minutes** 60:*25*
64:*2* 65:*11, 13*
66:*14* 67:*12, 17*
70:*3* 71:*3*
73:*15* 81:*17*
**missed** 67:*18*
**misstates** 38:*4*
**mister** 42:*16,*
*23* 43:*1*
**moment** 68:*14*
**month** 41:*10*
**months** 12:*20*
41:*11*
**mop** 46:*16*
**mopped** 87:*24*
**mouse** 54:*3, 12*
**mouth** 8:*2*
37:*23* 38:*24*
77:*16*
**move** 5:*24* 52:*3*
**moved** 64:*8, 10*
**moving** 36:*23*
**Multiple** 17:*7,*
*10* 22:*2, 3*
83:*22* 84:*2, 3*
91:*18*

**< N >**
**name** 5:*2, 7*
6:*5* 34:*3* 45:*21,*
*23* 46:*1* 47:*18*
55:*6* 72:*11*
84:*7, 11* 86:*17,*
*20*
**names** 14:*20*
**narrow** 37:*20*
**Nature** 80:*3*
**near** 65:*1*
**necessarily**
15:*14* 26:*2*
28:*17*
**need** 8:*24* 9:*7*
19:*19* 31:*20*
56:*14* 57:*21*
62:*17* 65:*20*
**needs** 21:*14*
32:*22, 24* 33:*10*
**neither** 14:*19*

Office (410) 821-4888
CRC Salomon, Inc.

2201 Old Court Road, Baltimore, MD 21208
www.crcsalomon.com - info@crcsalomon.com

Facsimile (410) 821-4889
Page: 7

Deposition of Logan Fox                                      Jasmine Rittersbacher vs. Food Lion, LLC, et al.

**Never** 61:*14*
65:*9*
**new** 6:*7, 14, 25*
11:*6* 22:*2, 13*
31:*20* 33:*23*
**night** 47:*8*
48:*17, 18, 23*
49:*2*
**nine** 47:*8*
48:*17, 19* 65:*13*
**normally** 26:*19,*
*20, 21* 75:*13*
**Notary** 4:*14, 16*
93:*14*
**noted** 95:*5*
**notes** 94:*9*
**Notice** 1:*13*
5:*17, 25* 35:*3*
**noticed** 69:*6*
**notices** 32:*25*
**notified** 85:*1*
**number** 38:*19*
64:*14* 82:*14, 15*
**numbered** 95:*4*
**NW** 2:*13*

**< O >**
**oath** 4:*11, 12*
9:*25* 93:*1*
**object** 49:*24*
83:*13*
**objected** 83:*16*
86:*1*
**objecting** 58:*9*
**objection** 4:*16,*
*18, 19, 20* 15:*4,*
*12* 16:*2* 19:*14*
20:*4* 21:*20*
23:*23* 24:*7, 14,*
*24* 25:*7, 12, 22*
26:*4, 16* 27:*9*
29:*8, 17, 22*
30:*1, 11, 16, 25*
31:*13, 25* 32:*8,*
*23* 33:*20* 35:*23*
37:*7, 14, 18*
38:*4* 39:*11*
40:*1, 15, 18*
41:*17* 42:*19, 25*
43:*15, 19, 25*

44:*10, 15, 20*
45:*17* 46:*21*
47:*21* 48:*4, 5,*
*12* 49:*3, 12, 13,*
*23* 50:*7, 21*
51:*2, 7, 15, 21*
52:*16* 54:*9, 15,*
*23* 55:*10, 21, 25*
56:*8, 18, 24*
57:*5, 12, 14, 22*
58:*5, 13, 18, 23*
59:*7* 60:*14, 17*
61:*4* 63:*2, 10,*
*11, 20* 64:*11, 17,*
*18* 65:*6* 66:*22*
67:*4, 7, 14* 68:*3,*
*20* 69:*23, 24*
70:*8, 9, 23*
71:*10, 11, 17, 18*
73:*7, 12, 16, 19,*
*25* 74:*1, 13, 23*
75:*2, 25* 76:*7, 8,*
*14, 15* 77:*10, 11,*
*18* 78:*3, 4, 11*
81:*11, 12* 82:*18,*
*24* 83:*12, 24, 25*
85:*7, 12, 21*
87:*8* 89:*24*
90:*12, 23* 91:*4*
92:*2*
**objections** 9:*3*
**objects** 15:*8, 9*
**O'BRIEN** 2:*18*
4:*20* 48:*4, 12*
49:*13, 24* 57:*14*
58:*5, 7, 9, 13, 18*
63:*10* 64:*18*
69:*24* 70:*9*
71:*11, 17* 73:*19*
74:*1* 76:*8, 15*
77:*10* 78:*3*
80:*16* 81:*12*
82:*18* 83:*13, 25*
92:*11, 16*
**obrien@acklaw.**
**com** 2:*23*
**observe** 25:*11*
**obviously** 7:*10*
41:*10* 81:*8*
**occasions** 35:*2*

**Occupational**
55:*23*
**occur** 48:*23*
90:*10, 13*
**occurred** 5:*13*
33:*14* 70:*7*
83:*7*
**o'clock** 47:*8, 11*
48:*17, 19, 22*
**October** 40:*7*
**offer** 72:*14*
**offered** 72:*16*
**OFFICE** 2:*4, 25*
**official** 93:*8*
**Oh** 14:*6* 15:*20,*
*23* 28:*15* 31:*22*
32:*12* 44:*25*
69:*16* 79:*14*
81:*20* 87:*12, 14*
92:*7*
**Okay** 5:*21, 24*
6:*4, 8, 12, 16, 23*
7:*15* 8:*6* 10:*15*
11:*4, 7, 9, 24*
12:*1, 8, 15, 22*
13:*2, 5, 10, 16,*
*18, 23* 14:*6, 15,*
*18* 15:*1, 8, 14,*
*18, 23* 16:*10, 17,*
*23* 17:*11, 18*
18:*16, 20* 19:*1,*
*6* 20:*7, 22* 21:*4,*
*10, 16* 22:*23, 25*
23:*8, 11, 15, 19,*
*21* 24:*11, 18*
25:*19* 26:*3, 21*
27:*7, 18* 28:*4, 9,*
*19* 29:*13, 20*
31:*6* 32:*3* 33:*4,*
*13* 34:*4, 8, 12*
35:*7, 11, 17*
36:*2, 4, 17, 21,*
*23* 37:*11* 38:*14,*
*18* 39:*1, 4, 9, 24*
40:*25* 41:*7, 22*
42:*4, 7, 16, 22*
43:*4, 7, 12*
44:*17, 22* 45:*4,*
*12, 21, 24* 46:*3,*
*9* 47:*12* 48:*8,*

*16, 23* 49:*1, 7,*
*19* 50:*2, 19, 24*
51:*11* 52:*4, 14,*
*19* 53:*3, 8, 16,*
*20* 54:*5, 18*
55:*1, 16, 19*
56:*21* 57:*4, 8*
58:*3, 21* 59:*10,*
*16* 60:*2, 4*
61:*10, 20* 62:*3,*
*12, 16, 19, 22*
64:*6, 14, 21*
65:*3, 9* 66:*2, 5,*
*11, 19* 67:*1*
68:*6, 19, 24*
69:*2, 5, 16, 19*
70:*2, 14, 20*
71:*1, 7, 14* 72:*1,*
*6* 73:*4, 10* 74:*5,*
*19* 75:*6, 18*
76:*3, 4, 24* 77:*3,*
*6, 15* 78:*7, 14,*
*24* 79:*2, 9, 12,*
*14, 18, 21, 25*
80:*3, 25* 81:*8,*
*22* 82:*6, 11, 14*
83:*3, 6, 18*
84:*12, 14, 18*
85:*19, 25* 86:*7,*
*10, 25* 87:*15, 16,*
*20* 88:*1, 9, 25*
89:*4, 18* 90:*2, 8*
91:*2, 7, 23*
**onboard** 18:*19,*
*23*
**Onboarding**
18:*15, 21* 21:*2*
**once** 45:*15*
83:*21*
**ones** 59:*11*
**online** 75:*7*
**open** 8:*2* 56:*13*
74:*11*
**Open-door** 18:*6*
**operator's**
29:*14*
**opinion** 16:*20*
24:*24* 51:*8*
56:*25*

**opportunity**
18:*8*
**oral** 90:*4*
**order** 24:*15*
29:*4* 30:*22*
31:*4* 33:*15*
41:*4* 44:*24, 25*
45:*4* 75:*8, 14,*
*19, 23*
**ordering** 92:*14*
**originally** 14:*11*
**OSHA** 55:*20*
56:*2, 6, 16*
**out-of-state**
4:*15*
**outside** 81:*24*
**overheard** 61:*6*
**overnight** 47:*4*
**ownership**
25:*16*

**< P >**
**p.m** 1:*12* 6:*1*
84:*21* 92:*24*
**pack** 72:*14, 16,*
*25*
**pads** 36:*12*
46:*16*
**PAGE** 3:*3*
82:*6* 89:*10*
95:*10*
**pages** 95:*4*
**pain** 73:*5* 74:*3*
**pallet** 22:*11*
**paper** 38:*12*
39:*16, 18* 41:*14*
48:*3*
**Paralegal** 2:*25*
**paramedics**
89:*2*
**Parlier** 34:*3, 4*
78:*22* 86:*14*
**part** 10:*23*
21:*2* 34:*8* 45:*2*
56:*6* 57:*4* 83:*3*
**partake** 18:*18*
**participating**
4:*6*
**particular** 20:*1*
24:*4, 10* 33:*4*

Case 1:20-cv-02800-JMC   Document 63-6   Filed 04/28/22   Page 104 of 108

Deposition of Logan Fox                                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

34:*9*, *12*  37:6
39:*24*  44:*7*
50:*4*  74:*20*
**particularly**
45:*7*
**parties**  4:*3*, *13*
94:*12*, *13*
**part-time**  70:*19*
**party**  4:*16*
45:*14*
**Paul**  2:*20*
**paused**  80:*19*
**pay**  18:*22*
**pending**  9:*9*
**people**  14:*19*
16:*18*  17:*25*
18:*18*, *19*  19:*18*
20:*14*, *25*  21:*24*
29:*20*  30:*14*
34:*24*  35:*12*
46:*22*  64:*21*, *25*
70:*21*  71:*9*
72:*3*  74:*21*, *25*
84:*19*
**people's**  17:*15*
**percent**  75:*20*
**perfect**  51:*18*,
*20*
**performance**
18:*7*
**period**  7:*3*
41:*25*  42:*1*
67:*22*  76:*4*, *6*
83:*4*
**permission**
47:*20*, *24*  48:*2*
**person**  4:*11*
84:*15*
**personal**  18:*8*
69:*9*
**personally**
75:*16*  76:*11*
93:*5*
**personnel**  80:*6*
**ph**  36:*15*
**phone**  90:*2*
**photo**  52:*7*, *20*,
*22*  66:*19*, *20*
**photographs**

89:*5*, *6*
**photos**  55:*3*
**phrase**  8:*19*
**physical**  9:*17*
15:*15*  20:*5*
**physically**  4:*7*
87:*12*
**pick**  43:*9*  50:*4*,
*8*
**picked**  62:*9*
64:*9*
**picking**  64:*4*
**pickup**  38:*2*
**picture**  7:*18*
38:*14*, *16*  43:*22*
44:*3*  55:*2*
60:*12*  66:*6*, *12*
**pictures**  27:*22*,
*23*  53:*23*
**piece**  28:*23*
**place**  69:*22*
77:*3*  87:*13*
95:*8*
**placed**  9:*24*
59:*11*
**placement**
22:*17*  42:*1*, *5*
**Plaintiff**  1:*5*, *12*
2:*2*
**plastic**  50:*16*,
*20*  77:*17*, *23*
**play**  30:*23*
60:*8*  63:*25*
**playing**  59:*19*
67:*18*
**pleaded**  15:*22*
**please**  4:*17*
6:*5*  8:*22*, *24*
19:*15*  20:*8*
37:*24*  54:*18*
57:*17*  81:*3*
92:*17*
**pledge**  16:*14*,
*19*  18:*2*
**plus**  41:*10*
64:*7*  65:*13*
74:*7*
**pocketbook**
69:*10*

**point**  35:*1*, *12*
61:*20*  62:*12*, *13*
66:*18*  68:*24*
70:*4*, *11*  88:*23*
**points**  12:6
**policy**  18:*7*
**pop**  68:*16*
**poses**  28:25
**position**  70:*16*
**positions**  13:*11*
**possible**  30:*23*
**possibly**  29:*3*
**prepare**  10:*11*,
*12*  12:5
**PRESENT**
2:*24*  4:8  88:*2*
**presuming**  7:*24*
**pretty**  62:*14*
66:*21*  89:*3*
**prevent**  9:*14*
20:*2*  57:*19*
**preventing**  57:*9*
**principle**  29:*13*
**prints**  79:*19*
**prior**  24:6  38:*4*
**probably**  35:*1*
50:*15*  56:*2*
63:*8*, *21*  77:*13*
82:*14*  92:*9*
**problem**  29:*2*
**problems**  24:*12*
30:*21*  43:*14*
44:*7*
**process**  6:*25*
18:*15*  21:*2*
28:*12*  31:*9*, *11*
32:*15*  33:*14*
**produce**  22:*16*
28:*3*, *5*, *13*
32:*25*  34:*13*
39:*21*  61:*8*
70:*17*  72:*3*
80:*11*  83:*6*, *21*
84:*20*
**produced**  4:*23*
**product**  30:*24*
**production**  11:*1*
**Professional**
1:*14*  94:*4*, *22*
**prohibit**  9:*18*

**proper**  22:*11*,
*12*
**protecting**
19:*12*, *22*
**provide**  7:*22*
10:*24*  46:*14*
**public**  71:*14*
74:*12*  75:*1*
93:*14*
**pull**  20:*15*
**pulled**  53:*14*
60:*11*  70:*4*
**pulling**  34:*25*
**pullup**  36:*11*
**punctuality**
18:*9*
**purse**  88:*8*, *10*
**pursuant**  1:*13*
**push**  36:*3*
**put**  18:*24*
24:*12*, *15*  28:*21*
31:*15*  37:*22*
38:*12*, *23*, *24*
39:*18*, *25*  40:*12*,
*14*, *17*  41:*4*
49:*17*  65:*3*, *12*
68:*1*, *11*  72:*17*
75:*8*, *14*, *19*
77:*14*  79:*18*, *22*
81:*1*, *2*  89:*11*
**putdown**  47:*25*
48:*2*
**puts**  31:*17*, *19*
**putting**  31:*3*,
*12*  75:*23*  77:*15*

< Q >
**QA**  39:*22*
85:*11*
**QAs**  82:*25*
**quality**  82:*25*
84:*6*, *13*, *15*
85:*4*
**question**  7:*2*,
*24*  8:*15*  9:*9*
15:*9*  19:*1*
37:*24*  41:*10*
56:*15*  57:*17*
64:*7*  65:*19*
69:*19*  85:*23*

88:*1*  89:*20*
92:*4*
**questions**  9:*2*
10:*3*  92:*9*, *11*,
*12*
**quick**  9:*1*
**quickly**  59:*17*

< R >
**race**  8:*25*
**radio**  85:*17*
**ran**  14:*9*
**ranks**  34:*5*
**rate**  18:*23*
**read**  19:*10*, *17*,
*21*  92:*13*  95:*4*
**reading**  4:*4*
**ready**  9:*22*
**real**  59:*16*
**really**  11:*23*
27:*12*  29:*18*
37:*20*  48:*13*
71:*22*  74:*14*
81:*14*
**reason**  8:*11*, *13*,
*20*  9:*21*  17:*23*
21:*10*  52:*5*
80:*20*
**recall**  5:*11*
10:*8*  16:*16*, *23*
17:*6*, *12*  31:*8*
33:*6*, *8*  35:*2*, *7*,
*10*, *16*  37:*8*
41:*8*  43:*21*
58:*19*  59:*15*
61:*23*, *25*  63:*4*
64:*5*  67:*6*
72:*15*  73:*10*
74:*5*, *6*  75:*23*
76:*3*, *9*  77:*1*
78:*7*, *15*  87:*19*,
*21*, *23*, *25*  89:*17*,
*22*  90:*7*  91:*25*
92:*3*
**receive**  56:*2*
**received**  16:*18*,
*24*, *25*
**recognize**  39:*2*
**recollection**
16:*21*, *22*  19:*25*

Case 1:20-cv-02800-JMC    Document 63-6    Filed 04/28/22    Page 105 of 108

Deposition of Logan Fox

Jasmine Rittersbacher vs. Food Lion, LLC, et al.

53:*13*  55:*5*
64:*15, 19*  65:*7,*
*19*  66:*7*  70:*6*
85:*4*
**record**  5:*4, 13*
6:*5*  7:*21*  52:*20*
59:*2*  60:*25*
62:*1*  94:*8*
**recorded**  62:*3*
**recorder**  62:*4, 5*
**recording**  7:*20*
12:*3*
**recreate**  52:*2*
**red**  66:*16*
88:*15*
**referring**  10:*22*
**refrigerated**
23:*13*  26:*24*
**refrigeration**
91:*20*
**regarding**  10:*4*
21:*24*  22:*3, 17*
23:*5*  56:*16*
89:*15*
**regular**  31:*23*
83:*4*
**relative**  94:*11,*
*13*
**relatively**  9:*1*
**REMARKS**
95:*10*
**remember**
15:*16*  35:*11*
43:*20*  56:*1, 3*
62:*20*  64:*3*
65:*22, 23, 24*
66:*4, 14, 16, 18*
68:*4, 13, 18, 21*
70:*17, 18*  72:*22*
75:*9*  78:*20*
88:*16, 18*  89:*9,*
*13, 18, 21*
**remembered**
63:*22*
**remotely**  4:*9, 12*
**removed**  78:*15*
**removing**  64:*4*
**rep**  33:*3, 22, 25*
**repair**  24:*12*

31:*1, 3, 7*  75:*8*
**repaired**  57:*11*
**repairing**  30:*23*
**repeat**  8:*10, 14*
19:*15*  57:*17*
**repeating**  13:*20*
**rephrase**  10:*18*
**replace**  32:*7*
76:*12*
**replaced**  32:*22,*
*24*
**report**  75:*6*
78:*25*  79:*3, 4, 6,*
*9*  80:*6*  84:*19*
85:*19*  86:*8*
87:*3*  89:*21*
94:*6*
**reported**  79:*16*
80:*1*
**Reporter**  1:*14*
4:*6*  7:*18*  9:*24*
92:*13, 14, 18, 21*
94:*4, 22*
**reporting**  4:*9,*
*17*  22:*23*
**represent**  5:*8*
**representing**
10:*3, 20*
**represents**  7:*5,*
*7*
**requested**
18:*11*  76:*11*
78:*9*  94:*7*
**requests**  11:*1*
**required**  14:*22*
16:*14*  46:*14*
72:*25*  73:*2*
78:*25*  82:*16, 22*
84:*18*  86:*4*
90:*25*
**requirement**
89:*8*
**research**  30:*23*
**respecting**  18:*3*
**respective**  4:*3*
**respond**  7:*25*
**response**  5:*17*
11:*1*
**responsibility**
46:*18*  47:*25*

48:*9*  83:*20*
85:*10*  86:*7*
**resting**  27:*16*
**returned**  13:*2*
14:*23, 24*
**review**  10:*24*
11:*4*  94:*7*
**reviewed**  11:*6*
21:*13*
**right**  5:*7, 15*
6:*19*  7:*17*  9:*15*
10:*2, 19, 23*
11:*20*  12:*11*
14:*11*  16:*10, 17*
18:*13*  21:*23*
23:*11*  24:*3*
26:*19, 24*  27:*15,*
*21*  28:*14*  29:*20*
33:*10*  36:*14*
39:*13*  41:*24*
42:*5*  44:*17*
45:*2*  46:*3, 5, 13*
47:*16*  50:*11*
52:*10, 17*  53:*22,*
*25*  54:*6, 12, 13*
55:*8*  60:*7, 9, 22*
61:*11, 20*  62:*8*
63:*9, 19*  64:*10*
65:*11, 15, 18*
67:*20*  68:*17*
69:*20, 21*  70:*15,*
*20*  71:*5*  72:*18,*
*24*  74:*17*  75:*10,*
*21*  76:*25*  77:*6,*
*7, 12*  79:*17, 25*
80:*17*  81:*23*
86:*3*  87:*18*
88:*7*  89:*9*
90:*16, 17*
**risk**  25:*24*
26:*3*  28:*25*
**RITTERSBACH**
**ER**  1:*4*  5:*8*
11:*12, 14*  23:*8*
33:*6*  43:*23*
44:*5*  48:*24*
50:*6*  51:*24*
52:*15*  53:*9*
54:*5, 11*  55:*8,*

*17*  60:*4, 10*
73:*5, 14*  85:*6*
**role**  30:*23*  84:*8*
**roll**  41:*5*  77:*13*
**rolled**  41:*1*
53:*3*
**room**  4:*8*
**rotate**  36:*13*
**rubber**  77:*22,*
*25*  78:*1, 10*
**rug**  80:*11*  81:*4*
**rules**  6:*12, 24*
7:*18*  9:*8*  25:*5*
55:*24*
**run**  77:*13*
**running**  60:*20*
**Ryan**  53:*21*
55:*6*  90:*6*

**< S >**
**safe**  19:*12, 22*
56:*16*
**safety**  18:*6*
20:*8*  21:*17, 18,*
*24*  22:*20*  24:*21*
25:*20, 21*  29:*14*
30:*15*  55:*23*
74:*8, 11, 17, 19*
75:*3*
**Saint**  2:*20*
**salad**  23:*18*
**sales**  81:*5*
**sat**  55:*17*  67:*22*
**satisfactory**
49:*17*
**saw**  11:*9, 23*
19:*17*  20:*13*
48:*1*  50:*13*
59:*14*  65:*16*
72:*1*  77:*7*
81:*25*
**saying**  13:*16*
26:*2*  33:*17*
34:*17*  61:*6, 23*
63:*16*  79:*22*
**says**  15:*8, 10*
21:*17*  79:*25*
80:*10*  81:*23*
88:*1, 2, 3, 7, 14*

89:*4, 11*
**schedule**  45:*5*
**schedules**  45:*10*
**scrapers**  46:*17,*
*24*
**screen**  6:*5*
7:*19*  21:*7*
38:*16*  80:*5, 15*
**scrubber**  46:*15*
**seal**  93:*8*
**second**  11:*24*
27:*23*  66:*11, 12*
78:*24*  82:*6*
**seconds**  61:*1*
64:*2*  65:*12*
67:*17*  71:*3*
**section**  34:*13*
80:*11*  83:*21*
**sections**  28:*7*
**see**  5:*22*  6:*2*
7:*4*  17:*13*  19:*7*
20:*20*  21:*7, 12,*
*16*  31:*10*  32:*16,*
*17*  33:*22*  37:*25*
38:*16*  39:*5*
52:*8, 10, 20*
53:*1, 3, 17*  54:*3*
59:*18*  60:*4, 10*
61:*11, 13*  64:*24*
66:*2*  68:*8, 13,*
*15*  69:*5*  70:*15*
77:*5*  80:*9, 14,*
*16, 17, 18*  81:*9*
**seeing**  51:*5*
88:*17, 18*  91:*25*
**seen**  5:*19*  11:*7,*
*17, 21*  14:*15*
27:*22*  33:*17*
41:*12, 13*  56:*13*
59:*6*  60:*7*  66:*9*
71:*4*
**sees**  26:*10*  33:*2*
**sense**  25:*23*
**sent**  17:*15*
**separate**  45:*14*
**setting**  30:*22*
**seven**  12:*20*
**sharp**  28:*25*
**Sheet**  20:*23*

Office (410) 821-4888
CRC Salomon, Inc.

2201 Old Court Road, Baltimore, MD 21208
www.crcsalomon.com - info@crcsalomon.com

Facsimile (410) 821-4889
Page: 10

Deposition of Logan Fox                                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

shirt  61:*13*
shirts  68:*8*
shoplifting
18:*10*
shopping  14:*9*
88:*8*
short  76:*4*
shorts  66:*3, 6,*
*7*  69:*6*
show  5:*21*
20:*19*  38:*14*
52:*4, 6, 19*
53:*16*  59:*16*
64:*8*  66:*12*
78:*19*  79:*2*
81:*16*
showed  59:*12*
showing  38:*18*
shows  66:*5, 6*
side  61:*11*
65:*25*  66:*20*
69:*20*  78:*2*
sign  16:*14*
18:*12, 25*  19:*18*
38:*23*  65:*4*
71:*20*  92:*13*
signed  16:*19*
18:*1*
signing  4:*4*
Signoff  20:*23*
21:*14*  49:*11*
signs  88:*2*
sill  20:*24*
similar  17:*24*
41:*13*  42:*22*
single  27:*24*
28:*5*
sir  6:*11*  8:*12,*
*17*  16:*3*  90:*19*
sit  28:*14*  69:*20*
70:*3*  88:*16*
sitting  10:*2*
20:*18*  43:*4*
54:*12*  62:*24*
66:*13*  67:*13, 20*
72:*13*  73:*11, 15*
91:*24*
situation  57:*11*
69:*17*
situations  22:*4*

six  12:*20*
20:*14*  55:*4*
slid  13:*18*  63:*1*
slide  33:*18*
51:*14*
sliding  32:*17*
63:*18*
slip  32:*20*  57:*9,*
*19*  83:*23*  90:*10*
slipped  80:*12*
slippery  50:*25*
57:*10*
slipping  83:*10*
slips  57:*25*
small  28:*7*
smell  58:*12*
soak  38:*13*
soapy  51:*12*
sodas  23:*16*
solid  78:*10*
solutions  30:*23*
somebody
15:*16*  33:*16*
39:*15*  43:*9*
44:*23*  45:*10*
49:*20*  61:*13*
65:*12*  71:*24*
76:*18*  82:*13*
83:*20, 23*  88:*10,*
*17*  89:*7*  90:*14,*
*20, 21*
something's
77:*5*
somewhat  36:*10*
soon  67:*9*
sorry  23:*5*
28:*11*  29:*11*
30:*7*  32:*12*
41:*11*  42:*9*
58:*7*  76:*22*
81:*20*  82:*3*
85:*11*  87:*10*
91:*11*
sort  18:*2*
sought  88:*21*
sound  5:*15*  8:*4*
18:*13*  64:*10*
sounds  18:*14*
source  57:*9*

speak  8:*2, 9, 14,*
*21*  11:*20*  25:*10*
speaks  81:*18*
specific  17:*3*
26:*22*  58:*24*
64:*15*
specifically
11:*4*  19:*21*
24:*11*  35:*19*
speculation
29:*8*  51:*2*
57:*12*  66:*22*
71:*18*  73:*12*
spill  22:*22*
26:*13*  84:*24*
85:*14*
spilled  81:*9, 20*
spoke  5:*19*
sprays  42:*17*
squigi  36:*14*
staff  18:*11*
19:*12, 22*  20:*2*
21:*18*  29:*3, 25*
49:*10*  74:*25*
stand  68:*1*
71:*21*
standing  53:*17*
71:*8, 24*  90:*6*
start  12:*23*
17:*1*  62:*19*
started  13:*11*
50:*15*  56:*3*
88:*15*
State  1:*15*
4:*14, 17*  6:*5*
stated  95:*8*
statement  18:*4,*
*5*  90:*4*
STATES  1:*1*
stay  70:*21*
stayed  70:*15*
stenographic
94:*9*
stenographically
94:*6*
step  24:*3*
71:*22*  75:*18*
92:*5*
stepped  80:*11*

stick  17:*5*
stipulated  4:*2*
stock  17:*9*
22:*12*
stocker  13:*13,*
*14*  17:*8*
stop  8:*9*  39:*19*
41:*15*
stopped  72:*7*
storage  78:*15*
store  5:*10*
11:*17*  12:*2*
14:*8*  21:*19, 25*
25:*11*  27:*25*
29:*1*  33:*21*
34:*9, 10, 11*
35:*12, 13*  41:*19*
45:*16*  46:*25*
47:*1, 5, 10*  58:*1*
64:*22*  69:*3, 23*
74:*12*  78:*17, 20*
84:*3*  89:*1, 7*
90:*11*
story  63:*7*
straight  50:*19*
60:*23*  80:*13*
Street  2:*5, 13,*
*20*
stretch  28:*6, 7*
stretcher  68:*9,*
*12*
strike  20:*15*
24:*19*  72:*9*
81:*18*  86:*3*
stripper  46:*16*
structure  29:*14*
30:*6*  31:*9*
stuff  39:*8, 16*
44:*8*  59:*5*
submit  29:*4*
44:*24*  45:*4*
submits  44:*25*
submitted  79:*11*
substance
51:*12*  53:*6*
58:*3*  81:*2*
suck  36:*15*
sucks  36:*3*
suggest  9:*7*
16:*17*  18:*22*

suggesting
81:*20*
suggestions  95:*5*
Suite  2:*20*
summertime
24:*2*  27:*5*
superior  26:*7*
supervisor  26:*7*
supposed  25:*4*
89:*6*
sure  14:*8, 9*
19:*17*  20:*9*
21:*1*  26:*2, 7, 23*
29:*18*  35:*1*
38:*10*  39:*1*
40:*10*  41:*9*
48:*10*  49:*6*
50:*16*  53:*12*
56:*5*  57:*18*
59:*21*  61:*11*
63:*16*  68:*19*
71:*2*  74:*21*
75:*20*  81:*16*
83:*22*  84:*14*
85:*8*  89:*3*  91:*7,*
*14*
sustained  5:*10*
sweat  27:*6*
28:*9*  74:*10*
sweating  24:*2,*
*5*  27:*3, 4*  31:*10*
34:*24*  37:*1*
38:*1*  44:*8*
49:*22*  54:*20*
sweats  27:*8*
sweeps  82:*16,*
*22*
swelling  66:*15*
88:*15*
swept  82:*8*
87:*20, 22*
swollen  66:*21*
sworn  4:*15, 23*
93:*6*
system  18:*25*
systems  11:*6*

< T >
take  9:*8, 11*
20:*5*  24:*3*

Deposition of Logan Fox                                     Jasmine Rittersbacher vs. Food Lion, LLC, et al.

25:16  28:12
36:19  44:4
60:2  61:11
65:10  68:24
69:5  89:3, 6
taken  1:11  6:9
53:23  89:5
talk  8:20  9:10,
11  10:16, 20
11:24  12:9
33:2  45:12
56:15
talked  50:2
61:24
talking  12:5
13:17  36:10
38:21  43:12
44:2  50:11
74:9  89:14
90:3
talks  20:1
tasted  58:17
technology
23:2  52:24
Telephone  2:7,
15, 22  18:10
tell  5:18  10:10,
15  20:16  21:23
22:6  31:9, 11
32:15  33:1
35:12  41:19, 22
44:22  63:7, 25
66:5  71:2
72:20  75:12
79:12  87:2
90:5, 14, 25
telling  35:7
71:9
tells  64:12
temporary
56:22
test  22:6
testified  4:24
6:19, 21
testify  9:22
testifying  4:14
9:15, 19
testimony  38:5

thank  6:7
17:21  20:10
52:19
thanks  55:16
thing  18:2
21:17  33:18
39:20  65:24
79:2  89:4
things  17:11
18:11  19:9, 17,
21  23:16
think  9:22
10:13  16:1
19:8, 9  51:13
55:1  62:24
65:15  68:16
69:15  80:6
88:8  89:25
thinking  22:7
third  89:10
third-party
31:22
thought  87:12
three  41:14
52:21
time  8:24  9:7
11:5  13:24
23:12  31:6
33:4, 8  34:2, 14,
15, 23  35:8, 21
43:21  46:10
47:10  49:16
56:23  58:25
59:14  60:8
61:2, 7  64:3
65:12  67:3, 22
69:15  70:7, 16,
18  72:9  73:4
75:22  76:5, 6,
22, 24  79:15
82:8  83:19
87:20, 24  91:12
95:8
times  38:12
44:6  68:18
71:4  83:22
84:4
title  40:7  82:8
titled  20:22

today  5:17, 25
9:15  10:2, 16
12:6  62:24
75:14  90:17
91:24
today's  10:11
Tofu  39:8
told  7:20
65:22, 24  78:17,
20  88:17, 20
tomorrow  90:20
tons  27:22
top  50:17
60:16
touch  58:16
towels  38:12
39:16, 18  41:15
48:2, 3
track  59:5, 10
72:24
trained  55:19,
20
training  16:23,
24  17:2, 5  20:8
21:23  23:4, 5
25:5, 6  56:3
trainings  20:6
22:1
transcript
92:15  94:7, 8
transcription
95:6
treatment  88:21
TREBACH
2:12
trick  64:6
tried  52:2
63:16  67:25
tripping  83:10
troubled  30:24
true  94:8  95:6
truth  64:12
truthfully  9:15
try  10:12
26:11  37:19
38:7  39:19
47:20, 24  79:5
trying  42:2
61:18  77:3

turnoff  5:4
twice  45:16
two  7:5  14:18,
19  20:12, 14
33:5  36:12
41:11  64:7, 14
66:20  74:7
82:7, 15
Tylenol  72:15
73:1
type  23:20
34:16  35:3
42:16  50:10
71:23  79:6
80:7
Typed  79:8
80:22  82:2, 5
89:15, 21
types  25:6  51:5
typical  49:19
typically  47:4

< U >
U-boat  22:12
Uh-huh  84:25
underlying
57:10, 20
underneath
32:20  41:6
43:24  50:24
53:6  54:22
70:5  77:8, 14
78:10  81:4
undersigned
93:4  95:3
understand  7:8,
24  8:8, 10, 19
9:5, 24  10:6
22:7  27:3
37:24  39:1
77:4  84:14
85:23
Uni  32:9
Uni-First  31:21
32:5, 10, 12
33:2, 22, 25
44:19  50:3
59:3  91:2
U-N-I-F-I-R-S-T
32:10

unintelligible
8:8
union  18:4
unit  23:13, 19,
20, 21  24:12
26:23, 24, 25
27:7  39:5
40:13  41:12, 16
43:12  54:22
58:22  71:5
74:10, 20  75:7,
24  76:5  81:9
91:19, 20, 25
92:1
UNITED  1:1
units  28:9
Universal  32:4
Universe  32:6
unknown  88:23
unsafe  20:16
unsatisfactory
49:17
upset  73:24
use  8:18  18:7,
10  20:24  22:12
31:7  35:25
36:18  38:1
73:1
uses  45:15

< V >
vac  38:2
vacs  36:6
vacuum  36:10,
15
Vane  7:7, 15
45:22, 25  46:7,
14
V-A-N-E  45:22
vegetables
42:15
vendor  31:22
45:5
video  11:2, 5, 7
12:3  27:22
59:14, 19  62:4
64:1, 6, 8, 12
66:5  67:16
72:6, 7  81:9, 16,
18  88:11

Deposition of Logan Fox                                    Jasmine Rittersbacher vs. Food Lion, LLC, et al.

videos  22:3
23:1
videotaping
7:21
view  66:20
82:7
violence  18:5
Virginia  93:14
visible  81:5

< W >
Wait  8:3  58:7
waiting  73:11
waived  4:5
walk  32:15
72:1  77:5
walked  13:17
61:13  71:5
84:20
walkie-talkie
85:18
walking  61:12
62:25  64:25
72:3  80:10
walks  68:18
wall  28:13
42:12, 14
want  5:5  7:25
8:1  9:9  10:15
22:3  25:24
26:11  37:22
38:14  47:8
50:2  53:12
61:10  65:9
77:4  81:17
92:9
wants  92:8
warn  71:14
warning  88:1
Washington
2:14
watch  35:13
61:10  71:9
Water  27:13,
18  28:14, 16
32:20  34:24
35:9, 15, 20
36:3, 11, 13, 15
37:3  38:2, 7, 13
39:19  41:15

42:17  43:5, 10
44:8  51:11
54:20  81:4, 8,
13, 24  82:4
way  8:21
16:20, 24  17:19
22:11, 12  27:3
32:20  34:5
52:3  84:3
86:21
ways  56:16
wearing  66:3, 6,
7  69:6
week  33:8
weeks  33:9
weird  63:7
well  7:22  9:9
10:19  14:4, 20
15:10, 20  16:25
17:5  20:15
21:11  24:18
25:25  26:2, 3,
23  29:20  32:9
38:19  40:10
41:9  43:23
45:10  48:16
49:24  51:19
55:1  56:11
61:1  70:17
72:9, 16  75:18
76:5  79:13
81:17  85:3
86:10, 12  88:7
89:2, 19  92:19,
22
went  12:19
13:5  16:7
61:24  67:3, 19
75:14  90:20
we're  5:17
7:20  9:3  28:13
52:22  62:7, 24
64:2  67:16
wet  28:13  35:4
36:6  38:2
42:12, 13, 24
43:24  50:24
71:20
white  39:16

Whoop  60:8
wider  80:9
wiped  77:16, 21
78:1
WITNESS  3:3
4:3, 4, 13, 15, 23
16:3  19:15
20:5  21:21
24:15  25:8, 13,
23  26:5, 17
29:18  30:12
31:1, 14  32:1, 9,
24  33:21  35:24
37:8, 15, 19
38:6  40:19
41:18  42:20
43:1, 16, 20
46:22  47:22
48:6, 13  49:14,
25  50:8, 22
51:9  52:17
54:16, 24  55:11
56:1, 9, 19  57:6,
23  58:6, 10, 14,
19, 24  59:8
60:18  61:5
63:3, 12, 21
64:12, 19  65:7
66:24  67:8
68:4, 21  69:25
70:10, 24  71:12,
20  73:8, 20
74:2, 14  75:3
76:9, 16  77:12,
19  78:5, 12
81:13  82:19, 25
84:1  85:8, 13
89:25  90:13, 24
91:5  92:3, 7, 23
93:8
witnesses  11:21
72:11
woman  69:8, 11
wondering
88:12
word  7:20
8:19  22:4
38:24
words  37:22
77:16

work  7:10
22:10, 11  24:15
29:4  30:22
33:19  38:13
41:4  44:24
48:18  75:8, 14,
19, 23  77:7
91:8  92:1
worked  12:13
16:24  34:23
workers  28:25
35:12
working  10:4
12:23  13:5
17:6  18:3
50:15  52:5
90:17
workplace  18:4,
5  19:12, 22
works  69:13
72:10
worry  15:23
would've  63:18
Wow  66:16
write  62:22
written  33:15
63:8, 18, 21
wrong  32:22
wrote  81:3, 4, 6
88:18  89:14, 15

< Y >
yeah  13:1
15:23  17:20
29:21  34:4
35:8, 13  40:6,
20, 22  42:9
50:10  51:23
57:18  59:20
61:18, 22  66:17,
24  80:5, 19
88:12  89:25
90:5  91:14, 16,
19, 22  92:9
year  12:18, 19,
23  33:5
years  12:14
20:14  33:6
34:19, 23  41:14

43:14, 18  64:7
74:8
yellow  43:13
65:5  69:20
70:20
yesterday  90:22

< Z >
ZAI  20:15
ZAI0001  80:6
ZAI0109  19:20
Zoom  1:13