IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JASMINE RITTERSBACHER | * | |
|     Plaintiff, | * | |
| v. | * | Case no..:   1: 20-CV-02800-JMC |
| FOOD LION, LLC, et al. | * | |
|     Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**PLAINTIFF'S RESPONSE TO DEFENDANTS'**
**MOTIONS FOR SUMMARY JUDGMENT**

Now comes the Plaintiff, Jasmine Rittersbacher, by Lawrence S. Greenberg and the Greenberg Law Office, her attorneys, and hereby files this Response to Defendants Food Lion, LLC ("Food Lion") and Kellermeyer Bergenson Service, LLC's Services Cleaning, LLC, ("Bergenson"), and Vane Services Cleaning, LLC, ("Vane")'s Motion for Summary Judgement, and in support thereof states as follows:

**I.   INTRODUCTION**

As the Defendants filed Motions for Summary Judgment on the same date and concerning the same incident and allegations of negligence, the Plaintiff will consolidate her response and separate the individual Defendants issues where necessary.

This case arises from a slip and fall incident at a Food Lion store in Cambridge, Maryland where the Defendant Food Lion, LLC ("Food Lion") failed to properly fix a leaking floral display unit that caused water to leak onto the floor and get under the mat, failed to properly clean the area near the leak, failed to clean under the mats, and failed to replace the mat in front of the display unit when it was dirty. They further failed to hire a competent company,

Kellermeyer Bergenson Service, LLC's Services Cleaning, LLC[1] ("Bergensons"), which in turn hired Defendant Vane Services Cleaning, LLC, ("Vane") to perform cleaning services at the store. Throughout the discovery, the Defendants each claimed that it was not each Defendant's individual responsibility to clean the floor under the mat and that it was the other Defendants duty. The negligent acts described above caused the Plaintiff, Jasmine Rittersbacher, to slip and fall on the mat near the floral section of the produce area, and suffer serious, painful and permanent injuries.

As detailed below, Defendants Food Lion, Bergensons, and Vane should be held responsible for their negligence acts in light of their duty to the public and business invitees. Therefore, Defendants Motions for Summary Judgment should be denied.

## II. UNDISPUTED FACTS[2]

On June 18, 2019, Ms. Rittersbacher was shopping at the Food Lion Store located near her home in Cambridge, MD. As she walked past the floral section in the produce area, she stepped on a mat that was directly in front of the floral display, that abutted the unit and had a large wet slippery substance underneath of it. The assistant manager on duty the night of the incident, Logan Fox, was deposed and confirmed that there was a video of the incident and that it captured the event[3]. At the time, Ms. Rittersbacher was looking forward and she did not run or look down at the mat. Fox Pg. 60: 20-24. Ms. Rittersbacher was not aware of the wetness underneath of the mat, and she did not notice any discoloration of the mat. Rittersbacher Pgs. 32-33.

After Ms. Rittersbacher fell, Mr. Fox was the first person to approach her. Fox pg. 55: 8-

---

[1] Food Lion hired Bergensons, a "floor service crew" to hire subcontractors to clean the floor. Parlier, Pg 20, 13-20.
[2] During discovery, the Plaintiff deposed Food Lion Assistance Manager Logan Fox, Food Lion Corporate Designee and Store Manager Keith Parlier, Vane Service Cleaning, LLC's corporate designee, Maria Monsalve, and Defendants deposed the Plaintiff.
[3] See surveillance video

2

18; see also Rittersbacher pg. 39:11-12. He noticed that she seemed to be in pain. Fox pg. 74. Mr. Fox explained that the mats have holes, with a fiber-like material on the top to soak up wetness and have a rubber bottom. Fox pg. 50: 16-22; pg. 77:22. After she fell, Fox turned a portion of the mat over and they noticed that the mat and area under the mat were "shiny wet" and "soapy." Rittersbacher pg. 40: 7-9. Mr. Fox got a chair for Ms. Rittersbacher to sit on. Fox pg. 55: 8-18.

During the entire time Ms. Ritterbacher was at the store before the Emergency Medical technicians placed her on a gurney and took her to the hospital, no Food Lion employees moved the mat or cleaned the area. In fact, the video shows that when Ms. Rittersbacher was transported out of the store, Fox left the area and did not secure the hazard. Fox testified that "if this were to happen now, I would probably roll the mat up, run the floor machine underneath of it, and put the mat back down." Id. at 77. Food Lion had previous knowledge of this faulty unit that leaked water. Fox testified that the store was aware that the display unit would often sweat in the summertime, leaking water onto the floor. Fox pg. 27:2-17. They were also aware that customer and employees would drip water onto the mat and ground in front of the floral display when people would pull flowers out of the bucket and water would drip out or when the Food Lion employees would physically change out the flowers. Id. at 43:7-11.

Before and after the fall, Food Lion did not attempt to repair this unit. After the fall, Food Lion does not recall putting in a work repair order for the leaking display, even though members of management were present and were responsible for putting in work orders for faulty equipment. Fox pgs. 75:6-76:3; pgs. 44:22-45:3. Furthermore, Mr. Parlier, the Store Manager, reviewed the work order log and did not find any work orders put in for that specific floral unit near where Ms. Rittersbacher fell. Parlier pg. 27: 7-15.

A.     **Food Lion's Policies**

Food Lion trains its employees that when a worker sees something that is unsafe and creates a potentially hazardous area or condition, that you should fix the area or condition. Parlier[4] pg. 20: 10-19. According to Food Lion policies, you should not leave the area or walk away from the area until the hazard is fixed. *Id*. Food Lion's primary obligation is to keep the store safe throughout the day. *Id*. pg. 73: 15- 74:10. Food Lion, as an organization, also has knowledge that there are certain areas inside of the store that have a higher probability of water build up. *Id*. pg. 79: 6-15. The employees strategically place mats in front of the floral units, the wet wall, or the wet vegetables that are sprayed or get wet throughout the day. *Id*. Any type of wetness under the mats could be from the floor service where the floor cleaners pull up the floor mat, run over the area with the cleaner, and put the mat back over top of the wet floor. *Id*. This type of action could create slipperiness underneath the rug. *Id*. At other times when the cooler leaked, they would only use paper towels to clean up the leak and to further "hold back the water in some capacity". Fox Depo., 38:1-13; see also Parlier pg. 44:9-16.

B. **Food Lion's Subcontractors**

Defendant Food Lion, hired Defendant Bergensons, which, in turn, subcontracted with Defendant Vane as the floor service crew so that they would provide floor service inside of the stores. Parlier Deposition., pg. 21: 13-18. Parlier testified that there are instances where Bergensons hires subcontractors to come into the stores to do the work. *Id*. at 40:2-5. Bergensons entered into a contract with Vane for Vane to provide custodial services at the Food Lion store in Cambridge, Maryland. Monsalve pg. 25:25-26: 10. The contract required Vane to perform janitorial services seven days per week, starting on July 1, 2018, without an end date. *Id*. at 26:11-27:10. As a part of this contract, generally and in all stores, Vane cleans the "entire sales floor"

---

[4] Keith Parlier was designated as Food Lion's Corporate Designee, and deposed January 21, 2022.

encompassing the "whole floor in the front, the produce area, the deli area," "everything," "the whole store." Monsalve pg. 30: 17- 31:2. Vane would not always clean under the mat nor remove the substance. In fact, Vane's employees would sometimes lift the mats up halfway and sometimes take off the whole mat to clean the floor. *Id*. at pg. 22: 2-14. When cleaning the area near the floral cooler, the area always gets wet and there was always "shiny-like liquidy stuff under the mat." *Id*. pg. 21:8-12. Vane's employees did not always make sure they would clean all the "stickie, slimy stuff" as they would generally "have the machine on top of [the mat]" or they would "fold [the mat] in half and do half]". *Id*. at 21:15-20. Vane often used a machine that sprayed water and soap down on the ground together to cleans the floor. *Id*. at 41:5-7.

When cleaning the floor according to Vane, "it is not our responsibility to lift up the map. It is to clean around." Monsalve pg. 14:16-15:5. However, Vane never explained who told the company it was not their job to clean the mat or that its employees were not responsible to lift the mat off the floor. *Id*. Vane did not specifically tell Food Lion that Vane noticed water in that area even though she "always" saw the shiny-like liquidy stuff every time she went to the store. See Monsalve pg. 21:4-11.

As a subcontractor doing work for Food Lion, the Food Lion employees would clock them in. Fox pg. 49: 14-17. When it was time to leave, the Food Lion employees were supposed to inspect the store to determine if Vane performed the work satisfactorily or unsatisfactorily, and then would clock the Vane employees out. *Id*. The quality assurance associates at Food Lion also had a duty to go through a pre-existing checklist multiple times per day to make sure all areas are clean, especially in the event of a spill. Fox pg. 84:1 - 85:2. There were no documents provided showing any of the Defendants performed the inspection or determined the area was safe for their customers.

5

Further, when Food Lion knew a cooler was leaking or had problems, Food Lion management had a duty to report to corporate or management and put in a work order for maintenance. Fox pg. 28:23-29:7; 24:11-16. Fox agreed that Food Lion management had a duty to communicate any issues with the machines or equipment to the customers so the customers would be safe and mindful so as not to hurt themselves. *Id*. at 28:23-29:7. Despite this duty, Food Lion employees did not conduct safety checks on coolers or units they knew were leaking in order to ensure a safer store. Fox pg. 74:7-75:4.

### III.     LEGAL STANDARD

Pursuant to Rule 56, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file and any affidavits show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56; *see also Catawba Indian Tribe of S.C. v. City of Rock Hall*, 501 F.3d 368, 370–71 (4th Cir. 2007). A primary purpose of summary judgment "is to isolate and dispose of factually unsupported claims" and Rule 56 must be interpreted and applied "in a way that allows it to accomplish this purpose." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25 (1986).

To overcome a summary judgment motion, the non-moving party must offer admissible evidence from which a fair-minded jury could return a verdict for the party. FED. R. CIV. P. 56(c); *see Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 252 (1986); *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof in the form of admissible evidence that could carry the burden of proof in his claim at trial.").

When a plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . Rule 56(c) mandates the entry of summary judgment." *Celotex Corp.*, 477 U.S. at 322.

## IV.  ARGUMENT

In this case, there is clear evidence of negligence on behalf of the Defendants. In the alternative, in the light most favorable to the Defendants, there are clear material facts in dispute. For this reason alone, the Court should deny Defendants' motions for summary judgment and have let the case be decided by a jury.

Since the alleged tort and resulting injury occurred in Maryland, Maryland substantive law determines Plaintiff's burden of proof and what constitutes a "material fact." *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Branhaven, LLC v. BeefTek, Inc.*, 965 F. Supp. 2d 650, 664 (D. Md. 2013) ("When a claim is based on state law, the choice of law rules are those of the state in which the district court sits."). Under Maryland negligence jurisprudence, a Plaintiff must show 1) the Defendant was under a duty to protect Plaintiff from injury, (2) that the Defendant breached that duty, (3) that Defendant's breach of the duty proximately caused the loss or injury suffered by Plaintiff, and (4) that Plaintiff suffered actual loss or injury. *See Troxel v. Iguana Cantina*, 201 Md. App. 476, 495 (2011).

### A.  DUTY

To recover in an action for damages, the plaintiff must show that the defendant was negligence, which ultimately caused Plaintiff's injuries. *Moulden v. Greenbelt Consumer Servs., Inc.*, 239 Md. 229, 232 (1965). "The evidence is legally sufficient to warrant submission of a case to the jury if it rises above speculation or conjecture, and so affords the rational basis needed for a determination that the defendant was guilty of negligence which produced the

accident. A mere surmise that there may have been negligence will not justify the court in permitting the case to go to the jury." *Id*.

In a premises liability case, the duty of care owed by a landowner is determined by the legal classification of the entrant. *See Deboy v. City of Crisfield*, 167 Md. App. 548, 555 (2006). That is, the duty of care varies according to whether the visitor is an invitee, licensee, or trespasser. *Id*. A business invitee is owed the highest duty of care. *See Deboy*, 167 Md. App. at 555. A store owner has a duty to exercise reasonable care to protect its invitees from injury caused by an unreasonable risk that the invitee would not be able to perceive in the exercise of ordinary care for his or her own safety. *Tennant v. Shoppers Food Warehouse Md. Corp.*, 115 Md. App. 381, 388 (1997); *Casper v. Charles F. Smith & Son, Inc.*, 71 Md. App. 445 (1987).

The evidence must also show that the knowledge of the hazard "was gained in sufficient time to give the owner the opportunity to remove it or to warn the invitee." *Id*. (*citing Keene v. Arlan's Dep't Store of Baltimore, Inc.*, 35 Md. App. 250, 256 (1977)). Moreover, where the alleged hazard could have been created by another customer passing through the aisle mere seconds before the incident, the proprietor is only liable "if it has actual [or constructive] notice and sufficient opportunity to either correct the problem or warn its other customers about it." *Id*. (citations omitted). Ultimately, "where the plaintiff has not shown by any evidence that the injuries sustained to him were a direct consequence of negligence on the part of the defendant, and there is no rational ground upon which a verdict for the plaintiff could be based, the trial judge should direct a verdict in favor of the defendant." *Moulden*, 239 Md. at 232 (*citing Rawls v. Hochschild, Kohn & Co.*, 207 Md. 113 (1955)).

The facts are undisputed that on June 18, 2019, Ms. Rittersbacher was a business invitee within the Food Lion store located in Cambridge, Maryland. As such, Ms. Rittersbacher was

owed the highest duty of care to protect her from unreasonable risks that she would not be able to perceive in the exercise of ordinary care for her own safety. *Tennant*, 115 Md. App. at 388; *Casper*, 71 Md. App. 445.

Based on deposition testimony and existing contracts, the Food Lion store contracted with Bergensons as the floor service crew so that they would provide floor service inside of the stores. Parlier pg. 21: 13-18. Mr. Parlier testified that there are instances where Bergensons hires subcontractors to come into the stores to do the work, and Bergensons contracted with Vane to provide custodial services at the Food Lion store in Cambridge, Maryland. Parlier pg. 40:2-5; Monsalve pg. 25:25-26: 10. Furthermore, the contract between Bergensons and Vane says that the parties contracted for Vane "to perform janitorial and maintenance services." See Contract between Bergensons and Vane.

### B.  BREACH OF DUTY

While Plaintiff has ample evidence to show that the Defendants had actual and constructive knowledge of the hazard and that they failed to exercise their duty of care despite this knowledge, if Defendants wish this court to question whether there was a breach of their duty, that alone raises a dispute of fact and that this case should be decided by a jury.

### VANE'S BREACH

In its Motion for Summary Judgment, Defendant Vane argues "there is no evidence as to where the substance came from; whether the substance was a cleaning solution left by Vane; or how long it had been underneath the mat where she slipped and fell," "no evidence… that Vane created the allegedly dangerous condition which caused Plaintiff to slip and fall," and "no evidence … that Vane created a condition 18 hours prior to the accident which somehow harmed Plaintiff." See Defendant Vane's Memorandum.  Defendants offered Ms. Rittersbacher's

deposition testimony as evidence that she did not know where the slippery substance came from, how long it was there, whether it came from one of the Defendants or if someone placed the mat over the wet substance. *Id*; Monsalve pg. 86:6–11; 100:22–101:10.

The facts offered by Defendants are in clear conflict with testimony from the deponents, specifically Parlier and Maria Monsalve, as discussed below. This court is also aware that the Plaintiff is not required to prove where the substance came from or the content of the substance, only that (1) the substance was there and (2) the Defendants had knowledge of the hazard. While it is possible that Vane created the hazardous condition while cleaning the floor the night before, the Plaintiff is not required to prove that.

The evidence is clear that the Defendants entered into a contract where Vane was required to perform janitorial services in the store. While Vane was required to clean the entire floor, Vane's corporate designee's testimony was that "it is not Vane's responsibility to lift up the map. It is to clean around." Monsalve 14:16-15:5. This testimony will likely be disputed by Food Lion and Bergensons, but it is for the jury to resolve this dispute. Likewise, Vane's representative testified that she "always" saw the shiny-like liquidy stuff every time she went to the store. Monsalve pg. 21:4-11. Again, Food Lion and Bergensons will likely dispute this testimony.

In Parlier's deposition, he suggested that Defendant Vane might have created the hazard when cleaning the floors in that "the leak could be from the floor service with the floor mat, pulling up the floor mat, running over it and then putting the mat back over top of wet floor. That would create the slipperiness underneath the rug." Parlier pg. 75:3-8. Yet this fact will be disputed by Vane in that Ms. Monsalve testified that Vane employees would sometimes lift the mat all the way up and use a machine that "puts water and soap down on the floor in order to clean the floor." Monsalve pg. 22: 2-14; pg. 41:5-7. Ms. Monsalve further stated that "there

10

wasn't enough space to run the cleaning machine and the shining machine in that area, so that's why we lifted up the mats." Monsalve pg. 32:12-15.

When looking at the photographs of the substance on the floor and underneath the mat and the video of the incident, it is clear that Ms. Rittersbacher fell on the mat without any negligence on her behalf. She also slipped as she stepped onto the mat and it slid underneath her. If Vane caused the slippery substance or if their cleaning added to the water generated from the floral display, or if Vane did not completely dry the floor before putting the mat back, a reasonable person could likely conclude that moisture would stay locked under a rubber mat. However, these are all jury issues.

Even though Defendant Vane suggests that Plaintiff presents "no evidence" based on Plaintiff's testimony, Plaintiff presents facts, based on the deponents' testimony, about the Defendants' knowledge of the wetness under the mat which rebuts Defendants' suggestions.

Defendant Vane ultimately breached its contractual obligation when it failed to fulfill the service as determined by the contract with Bergensons, leading to Ms. Rittersbacher's injuries. Defendant Vane breached its duty to keep and maintain the floors when it failed to report to Food Lion the continuous existence of the liquid substance that was often there. See Monsalve pg. 44:12-45:3. (Vane's employees did not always make sure to clean all the "stickie, slimy stuff" as they would generally "have the machine on top of [the mat]" or they would "fold [the mat] in half and do half]". *Id*. at 21:15-20. Defendant Vane often used a machine that put water and soap down together and cleans the floor. *Id*. at 41:5-7.).

Plaintiff clearly posits a reasonable possibility suggesting Defendant Vane's negligence, disputing Defendant's contention that there are no facts to support her theory of negligence. For

this reason, this matter should be put before a jury, and this Honorable Court should deny Defendant's motion.

Defendant Vane had actual knowledge that water frequently spilled on the floor in the area in front of the floral display. Defendant Vane's employees knew of the leak and failed to report it, even though a reasonable person would understand that loose water on a floor is a safety hazard. Based on Ms. Monsalve's deposition, Defendant Vane was on actual notice of this water leakage and its presence under the mats in the produce area. See Monsalve pg. 44:12-45:3. (Ms. Monsalve says "I don't recall how many times I've seen this material, but I had seen it before," " I always thought it was the water they used to water the plants and to keep the products fresh," "when we've been there, we analyzed that area, and we know that it's water that comes from there.";  "When cleaning the area near the floral cooler, the area always gets wet and there was always "shiny-like liquidy stuff under the mat." pg. 21:8-12; Vane's employees did not always make sure to clean all the "stickie, slimy stuff" as they would generally "have the machine on top of [the mat]" or they would "fold [the mat] in half and do half]" pg. 21:15-20.) Defendant Vane, despite this knowledge, never reported it to Defendants Food Lion or Kellermeyer Bergensons LLC. Defendant Vane's failure to report this reoccurring issue demonstrates negligence because Defendant Vane's sole duty within the store was to keep and maintain the floors, as per its contract with Defendant Bergensons.

All the evidence offered in this Motion suggest that Defendant Vane created the substance under the mat or knew about the substance and failed to report it. This is not just a "mere surmise" or "speculation" as Defendant Vane contends, but clear and concreate negligence since Defendant Vane had knowledge of the leaks and *never reported it*.. The parties

in this case are clearly not in agreement upon the facts they learned through the discovery and deposition process, and this matter should be decided before a jury.

## **DEFENDANTS' FOOD LION AND BERGENSONS BREACH**

In their Motion for Summary Judgment, Defendants Food Lion and Bergensons argue that "none [of the witnesses] could identify the source of any such substance [underneath the mat]." See Defendants' Motion pg. 10. Defendants Food Lion and Bergensons further argue that "Plaintiff cannot offer any evidence as to a source of the substance, discovered after Plaintiff's fall, underneath the mat." However, the evidence gathered during the discovery period, specifically obtained from the depositions that Plaintiff conduct suggested otherwise. As discussed infra, the depositions of Keith Parlier, Logan Fox, and Maria Monsalve demonstrate the likeliness and preexisting leaks that were seen in this area. (See Fox Depo., pg. 27:1-20.

Fox, the Assistant Manager in the store at the time of the incident, stated that when a cooler would sweat, "[water] would come from the bottom sometimes" and it would come out onto the floor."; See also Maria Monsalve Depo., pg. 20:11-15. When Ms. Monsalve was asked if she had seen the area in front of the floral display before June of 2019, she responded, "That area always gets wet. That's why somebody covered it with a mat." Defendants' arguments are in clear dispute with Plaintiff's allegations in her Complaint. Defendants fail to include specific language from the deposition transcripts that rebuts their statements that the Plaintiff has "no evidence" or that none of the witnesses, including Ms. Rittersbacher, have identified a source of the water.

After conducting the deposition, the jury could determine, although not necessary, that the wet floor came from multiple different sources. First, Fox testified that water from a cooler can leak out onto the floor in a process called "sweating." Fox pg. 27:1-20. Fox suggested that

when a cooler would sweat, "[water] would come from the bottom sometimes" and it would come out onto the floor." *Id*. As the Assistant Store Manager and someone who has been with the company for nearly fourteen years (Fox page 12:14), Fox referenced that the cooler, on June 18, 2019, could have been sweating since it was summertime. *Id*. 24:1-2. Fox's indication and knowledge of these cooler devices show that Fox, and therefore Food Lion, was on alert that these devices often "sweat" during the summertime months.

Second, both the Manager and Assistant Manager at the store suggested that the mats are placed near the floral cooler due to the water that the flowers soak in. Parlier stated that the mats were placed in front of the floral bouquets so that "when a customer pulls floral bouquets out of the bucket which is filled with water, it provides an area for the water to drip and not onto a tile." Parlier pg. 34:20-35:3. Fox also testified that the mats are kept in front of the floral cooler "in case someone body would pick flowers out and a little bit of water would drip out, or when we change out the flowers themselves." *Id*. at 43: 7-11. The presence of the mat itself, suggests that Defendants were aware of the presence of moisture or possible leaks that could occur in the produce area. *Id*. at pg. 27:24-28:3. Fox acknowledge the presence of water on a regular basis, "Yes." The amount of drippage from the flowers could be minimal or substantial, and it might not be likely that the mat was perfectly positioned to catch all the drippings that fell off of the bottom of the flowers when picked up."

Fox also testified that, "The mats have holes, with a fiber-like material on the top to soak up wetness and a rubber bottom. Fox pg. 50: 16-22; pg. 77:22. If the water leaked out onto the floor, the water would likely disperse underneath of the rubber on the bottom of the mat, causing a serious hazard for anyone who may step on the mat. Mr. Fox further testified that there was a substance present underneath of the mat after Ms. Rittersbacher fell. *Id*. pg. 53:6-7. The

Defendants clearly had knowledge that water could permeate through the mat, could leak underneath the mat, or that the cleaners could have placed the mat down on a wet floor, thereby creating a safety hazard for customers.

Third, Parlier also suggested that "the leak could be from the floor service with the floor mat, pulling up the floor mat, running over it and then putting the mat back over top of wet floor. That would create the slipperiness underneath the rug." Parlier pg. 75:3-8. We are aware that from Maria Monsalve's deposition that the Vane employees would sometimes lift the mat all the way up and that the employees used a machine that "puts water and soap down on the floor in order to clean the floor." Monsalve pg. 22: 2-14; pg. 41:5-7.

Ultimately, Plaintiff presents possibilities about the wetness to rebut Defendants suggestion that Ms. Rittersbacher offered "no evidence" showing where the water and soapy substance could have come from. Plaintiff suggests multiple possible sources of how the soapy water appeared under the mat, which ultimately shows Defendants' knowledge of the possibility of wetness on the floors and underneath the mats. Plaintiff also offers the photos of the soapy area underneath of the rug to show the suds that built up as well.

Defendants had both actual and constructive knowledge of the hazard, and specifically used mats to try to prevent leaks and spills. ("We know as an organization that there's certain areas inside of the store that there is the probability of water buildup on a floor. So we strategically place our mats in front of floral units. We strategically put some in front of what we call our wet wall or wet vegetables which are sprayed or get wet throughout the day where customers pick them up, and we also place mats in front of the ice chest due to a possible broken ice bag or something similar to that.'"" Parlier pg. 79: 6-15). Ms. Rittersbacher is able to demonstrate her claim of negligence based on the admissible evidence that Defendants Food

15

Lion and Bergensons had both actual and constructive notice of the alleged hazard. Furthermore, there is a clear dispute of material facts, and this matter should be decided before the jury. Therefore, the Court should deny Defendants' motion for summary judgment.

## V. CONCLUSION

For the foregoing reasons, the Plaintiff respectfully request that this Honorable Court deny Defendants Food Lion, LLC, and Kellermeyer Bergenson Service, LLC's and Vane Cleaning Services LLC's Motions for Summary Judgment.

### CONDITIONAL REQUEST FOR HEARING

To whatever extent the Court is not inclined to deny the Defendant's motion on the papers alone, the Plaintiff requests a hearing.

GREENBERG LAW OFFICE


   /s/ Lawrence S. Greenberg  
LAWRENCE S. GREENBERG  
Federal Bar #: 9506210161  
6 E. Biddle Street  
Baltimore, Maryland 21202  
410-539-5250  
410-625-7891 (fax)  
Larry@greenberglawyers.com  
Attorney for Plaintiff

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of May 2022, a copy of Plaintiff's Response to Defendant's Motion for Summary Judgment were served via the Court's electronic service system upon:

Matthew T. Angotti

James P. O'Brien
Anderson Coe & King, LLP
Seven St. Paul Street, Suite 1600
Baltimore, Maryland 21202
*Counsel for Vane Services Cleaning, LLC*

Matthew M. Davey
Jeremy C. Huang
Kiernan Trebach LLP
1233 20th Street, NW, Suite 800
Washington, DC 20036
*Counsel for Food Lion, LLC & Kellermeyer Bergenson Services, LLC*

                                                            /s/ Lawrence S. Greenberg
                                                         LAWRENCE S. GREENBERG