## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JASMINE RITTERSBACHER**, | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. 1:20-02800-JMC |
| **FOOD LION LLC** *et al*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \*

## <u>MEMORANDUM AND ORDER</u>

Presently before the Court are motions for summary judgment filed by Defendants. (ECF Nos. 63 and 64). Plaintiff filed a combined opposition and Defendants have both filed replies. (ECF Nos. 67, 68, 70). The Court has reviewed the filings and finds that no hearing is necessary. Loc. R. 105.6 (D. Md. 2021). Plaintiff has offered evidence from which a reasonable juror could identify the source of the substance underneath the mat, conclude that Defendants were the potential source of the substance, and determine that each had sufficient actual or constructive notice of the hazard to make liability appropriate. As a result, and explained more fully below, the Court will DENY Defendants' motions.

### I.   BACKGROUND

This case arises from a slip and fall incident on a floor mat at a Food Lion store in Cambridge, Maryland, involving Plaintiff Jasmine Rittersbacher on June 18, 2019. (ECF No. 40). Plaintiff alleges that she fell because of a slippery substance underneath the mat. *Id.* Plaintiff suggests several potential sources for the substance that, either alone or in combination, contributed to her fall. *Id.* Defendants include Food Lion, LLC ("Food Lion"), its cleaning contractor Kellermeyer Bergensons Service, LLC ("Bergensons"), and Bergensons' subcontractor

Vane Services Cleaning, LLC ("Vane"), that performs cleaning services at the store, including in the area at issue. Plaintiff claims personal injuries secondary to her fall. (ECF No. 40).

Defendants Food Lion and Bergensons have moved for summary judgment, arguing that Plaintiff cannot identify the substance under the mat that caused her to fall and, relatedly, cannot demonstrate beyond conjecture that Food Lion or Bergensons had sufficient actual or constructive notice of the allegedly hazardous condition.  (ECF No. 63).  Defendant Vane also has moved for summary judgment, offering similar arguments.  (ECF No. 64).

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party can do so by demonstrating the absence of any genuine dispute of material fact or by showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A nonmoving party "opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)). The court is "required to view the facts and draw reasonable inferences in the light most favorable to" the nonmoving party. *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)). However, the Court must also "abide by the 'affirmative obligation of the trial judge to prevent

factually unsupported claims and defenses from proceeding to trial.'" *Heckman v. Ryder Truck Rental, Inc*., 962 F. Supp. 2d 792, 799–800 (D. Md. 2013) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). Consequently, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998).

## III.   ANALYSIS

In a premises liability case, the duty of care owed by a landowner is determined by the legal classification of the entrant. *See Deboy v. City of Crisfield*, 167 Md. App. 548, 555 (2006). That is, the duty of care varies according to whether the visitor is an invitee, licensee, or trespasser. *Id*. A business invitee is owed the highest duty of care. *See Deboy*, 167 Md. App. at 555. A store owner has a duty to exercise reasonable care to protect its invitees from injury caused by an unreasonable risk that the invitee would not be able to perceive in the exercise of ordinary care for his or her own safety. *Tennant v. Shoppers Food Warehouse Md. Corp*., 115 Md. App. 381, 388 (1997); *Casper v. Charles F. Smith & Son, Inc.*, 71 Md. App. 445 (1987). The evidence must also show that the knowledge of the hazard "was gained in sufficient time to give the owner the opportunity to remove it or to warn the invitee." *Id*. (citing *Keene v. Arlan's Dep't Store of Baltimore, Inc.*, 35 Md. App. 250, 256 (1977)). Moreover, where the alleged hazard could have been created by another customer passing through the aisle mere seconds before the incident, the proprietor is only liable "if it has actual [or constructive] notice and sufficient opportunity to either correct the problem or warn its other customers about it." *Id*. (citations omitted).

The facts are undisputed that on June 18, 2019, Ms. Rittersbacher was a business invitee within the Food Lion store located in Cambridge, Maryland. (ECF No. 40). As such, Ms. Rittersbacher was owed the highest duty of care to protect her from unreasonable risks that she

3

would not be able to perceive in the exercise of ordinary care for her own safety. *Tennant*, 115 Md. App. at 388; *Casper*, 71 Md. App. 445. There is also no dispute that Plaintiff slipped on a mat that was directly in front of a floral display. (ECF No. 40). According to Plaintiff, after she fell, Food Lion's Assistant Manager, Logan Fox, turned a portion of the mat over and noticed that the mat and area under the mat were "shiny wet" and "soapy." (ECF No. 63, Ex. 5 at 41).

During discovery, the Plaintiff deposed Fox, Food Lion Corporate Designee and Store Manager Keith Parlier, and Vane's corporate designee, Maria Monsalve. (ECF No. 67, Exs. 1, 2, 3). Viewed in the light most favorable to Plaintiff as the nonmoving party, a reasonable juror could conclude from those depositions that Plaintiff slipped because of one or more recurring hazards in the area of the mat in question.

For example, Fox testified that the store was aware that units like the floral display unit adjacent to the mat could sweat in the summertime (Plaintiff's fall occurred on June 18), leaking water onto the floor. (ECF No. 63, Ex. 6 at 23-24, 27, 34-35). Fox confirmed that Food Lion was also aware that, because the flowers sit in water, customers and employees could drip water onto the mat and ground in front of the floral display when people would pull flowers out of the bucket or when the Food Lion employees would physically change out the flowers. *Id*. at 28, 34-35, 43. Fox completed an incident report that indicated the mat had water underneath it at the time of the fall. *Id*. at 81.

Per its corporate designee, Food Lion also had knowledge that there were certain areas inside of the store that have a higher probability of water build up. (ECF No. 67, Ex. 2 at 9). The employees strategically place mats in front of the floral units, the wet wall, or the wet vegetables that are sprayed or get wet throughout the day. *Id*. Thus, a reasonable juror could conclude that the very presence of a mat in the area is evidence that Food Lion was on notice of a hazard that could

4

account for Plaintiff's fall. Further, Food Lion posited that any type of wetness under the mats could be from the floor service where the floor cleaners pull up the floor mat, run over the area with the cleaner, and put the mat back over top of the wet floor. *Id.* at 8. This type of action could create slipperiness underneath the mat. *Id.*

As a part of its subcontract, generally and in all stores, Vane's designee testified that they cleaned the "entire sales floor" encompassing the "whole floor in the front, the produce area, the deli area," "everything," "the whole store." (ECF No. 67, Ex. 3 at 5). Vane often used a machine that sprayed water and soap on the ground together to clean the floor. *Id.* at 6. Vane would not always clean under the mat, but would sometimes lift the mat halfway or lift the whole mat to clean the floor. *Id.* at 3. When cleaning the area near the floral cooler, Vane acknowledged that the area was always wet and there was always "shiny-like liquidy stuff under the mat." *Id.* at 2. Vane's employees did not always make sure they would clean all the "stickie, slimy stuff" as they would generally "have the machine on top of [the mat]" or they would "fold [the mat] in half and do half." *Id.* Vane did not specifically tell Food Lion that Vane noticed water in that area even though Monsalve "always" saw the shiny-like liquidy stuff every time she went to the store, but posited as to Food Lion that "they've always known about it." *Id.*

Taken together, a reasonable juror could rely on such testimony to conclude that there were recurring conditions that created a hazard under the mat where Plaintiff fell, and there were one or more potential sources for the slippery substance detected underneath the mat at the time of the fall. To be sure, Defendants will be free to argue that the fall was caused by a "mystery substance" under the mat unrelated to pooling water or cleaning efforts, but this type of factual dispute should be resolved by the jury.

In its Motion for Summary Judgment, Defendant Vane argues "there is no evidence as to where the substance came from; whether the substance was a cleaning solution left by Vane; or how long it had been underneath the mat where she slipped and fell," "no evidence… that Vane created the allegedly dangerous condition which caused Plaintiff to slip and fall," and "no evidence … that Vane created a condition 18 hours prior to the accident which somehow harmed Plaintiff." (ECF No. 64 at 6). While it is true that Plaintiff herself did not know where the slippery substance came from, how long it was there, whether it came from one of the Defendants or if someone placed the mat over the wet substance, the evidence from the Defendants themselves is sufficient to render Vane's alleged negligence a jury question. First, the Plaintiff is not required to prove with certainty where the substance came from or the content of the substance, only that (1) the substance was there and (2) the Defendants had timely knowledge of the hazard actually or constructively so as to give rise to a duty to do something about it. Further, Plaintiff has pointed to evidence of potential sources for the substance. Vane's representative testified that she "always" saw the shiny-like liquidy stuff every time she went to the store. (ECF No. 67, Ex. 3 at 2). Additionally, Vane's employees did not always make sure to clean all the "stickie, slimy stuff" as they would generally "have the machine on top of [the mat]" or they would "fold [the mat] in half and do half." *Id*. Defendant Vane often used a machine that put water and soap down together and cleaned the floor. *Id*. at 6.

In Parlier's deposition, he suggested that Vane might have created the hazard when cleaning the floors in that "the leak could be from the floor service with the floor mat, pulling up the floor mat, running over it and then putting the mat back over top of wet floor. That would create the slipperiness underneath the rug." (ECF No. 67, Ex. 2 at 8). Vane confirmed that its employees would sometimes lift the mat all the way up and use a machine that "puts water and

soap down on the floor in order to clean the floor." (ECF No. 67, Ex. 3 at 3, 6). If Vane caused the slippery substance, if their cleaning added to the water generated from the floral display, or if they did not completely dry the floor before putting the mat back, a reasonable person could likely conclude that moisture would stay locked under a rubber mat. While a juror could conclude that the 18 hours between Vane's last cleaning and Plaintiff's fall was too long for Vane to be a source of the substance, a reasonable juror could well conclude the opposite and/or could conclude that subsequent water (which Vane established was frequently there) acted upon Vane's prior cleaning so as to combine and create the hazard.

In their Motion for Summary Judgment, Defendants Food Lion and Bergensons argue that "none [of the witnesses] could identify the source of any such substance [underneath the mat]." (ECF No. 63 at 10). However, as discussed in detail above, the evidence provides several reasonable candidates for the source of the substance, and Food Lion and Bergensons had notice of prior occurrences of the same conditions that could cause the fall at issue. Parlier, Fox, and Monsalve all verified that the area could become wet due to potential "sweating" or the actions of those taking flowers in and out of the case. If the water leaked onto the floor, the water could likely disperse underneath the rubber on the bottom of the mat, causing a serious hazard for anyone who may step on the mat. Fox further testified that there was a substance present underneath the mat after Ms. Rittersbacher fell. (ECF No. 67, Ex. 1 at 7). Fox found water underneath the mat at the time of the fall. *Id.* In fact, the very reason there was a mat in the area was because of the propensity of wetness to occur there. *Id.* at 4. Parlier also suggested that "the leak could be from the floor service with the floor mat, pulling up the floor mat, running over it and then putting the mat back over top of wet floor. That would create the slipperiness underneath the rug." (ECF No. 67, Ex. 2 at 8). Monsalve verified that Vane employees would sometimes lift the mat all the way up and that

the employees used a machine that "puts water and soap down on the floor in order to clean the floor." (ECF No. 67, Ex. 3 at 3, 6). She also testified that she "always" saw the shiny-like liquidy stuff every time she went to the store. *Id*. at 2. Plaintiff also offers the photos of the soapy area underneath of the rug to show the suds that built up.

In short, Plaintiff has presented evidence that both Food Lion and Bergensons had both actual and constructive knowledge of a recurring potential hazard from one or more substances regularly found in the area, and a reasonable juror could conclude that was the source of the slippery substance found under the mat and was the cause of Plaintiff's fall.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment (ECF Nos. 63 and 64) are DENIED.


July 18, 2022_____                                              _____/s/_____
Date                                                           J. Mark Coulson
                                                               United States Magistrate Judge